# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERALD RABY, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EVOLV TECHNOLOGIES HOLDINGS, INC. F/K/A NEWHOLD INVESTMENT CORP., PETER GEORGE, MARIO RAMOS, MARK DONOHUE, KEVIN CHARLTON, and ADAM DEUTSCH <br><br> Defendants. | Case No. 1:24-cv-10761 (ADB) <br><br> Hon. Allison D. Burroughs <br><br> **CLASS ACTION** |

**MEMORANDUM OF LAW OF OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

I.     PRELIMINARY STATEMENT .................................................................................1

II.    ARGUMENT ........................................................................................................4

    A.    Oklahoma Police is the Presumptive "Most Adequate Plaintiff"...........................4

        1.    Falk Is Not A Putative Class Member .......................................................5

        2.    Falk's Acquisition of New Evolv Common Stock Does Not Satisfy the "Purchase" Requirement of the Exchange Act .........................................7

            a.    Falk Did Not Make an Investment Decision .................................7

            b.    Exchanging Shares with a Shell Company Is Not a "Purchase" .....8

    B.    Falk Does Not Satisfy the Adequacy or Typicality Requirements of Rule 23........9

        1.    Falk Is Subject to Unique Defenses Concerning Reliance ......................10

        2.    Falk Is Subject to Unique Defenses from His Employment with Legacy Evolv, Potential Relationships with Senior Officers, and His Public Statements Concerning Matters Underlying the Claims in This Action ...13

    C.    Oklahoma Police Satisfies the Requirements of Rule 23.....................................17

III.    CONCLUSION ..................................................................................................18

## **<u>TABLE OF AUTHORITIES</u>**

<u>**PAGE(S)**</u>

**Cases**

*Arnesen v. Shawmut Cnty. Bank, N. A.*,
  504 F. Supp. 1077 (D. Mass. 1980) ..........................................................................7

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ..................................................................................... 11, 12

*Blue Chip Stamps Co. v. Manor Drug Co.*,
  421 U.S. 723 (1975) ........................................................................................7

*Bowers v. Tesaro Inc.*,
  No. 18-CV-10086-ADB, 2018 WL 2089358 (D. Mass. May 4, 2018) ....................................4

*Carr v. Analogic Corp.*,
  No. 18-CV-11301-ADB, 2018 WL 4932858 (D. Mass. Oct. 10, 2018)............................1, 17

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
  No. 23 CIV. 1769 (LGS), 2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023) ...............................7

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ..........................................................................17

*Dura Pharm., Inc. v. Broudo,*
  544 U.S. 336 (2005)......................................................................................11

*FMC Corp. v. Boesky*,
  727 F. Supp. 1182 (N.D. Ill. 1989) .......................................................................9

*Gelles v. TDA Indus., Inc.*,
  No. 90-cv-5133, 1993 WL 275216 (S.D.N.Y. 1993) *aff'd*, 44 F.3d 102 (2d Cir. 1994) ...........9

*Goldberg v. Hankin*,
  835 F. Supp. 815 (E.D. Pa.1993) .........................................................................8

*Greebel v. FTP Software, Inc.*,
  939 F. Supp. 57 (D. Mass. 1996) .........................................................................1

*Hackel v. AVEO Pharms., Inc.*,
  No. 19-CV-10783-ADB, 2019 WL 1992556 (D. Mass. May 6, 2019) ....................................4

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  398 F. Supp. 2d 244 (S.D.N.Y. 2005)..................................................................7, 8

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011) ..................................................................................13

*In re HealthSouth Sec. Litig.*,
    213 F.R.D. 447 (N.D. Ala. 2003) ........................................................................... 13, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ..............................................................................17

*In re MetLife Demutualization Litig.*,
    624 F. Supp. 2d 232 (E.D.N.Y. 2009) .........................................................................9

*In re Michaels Stores, Inc. Sec. Litig.*,
    No. 3:03-CV-0246-M, 2003 WL 27391238 (N.D. Tex. Oct. 24, 2003) ..................15

*In re Mirant Corp. Sec. Litig.*,
    No. 1:02-cv-1467-RWS, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) ..................7

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .....................................................................13

*In re Penn Cent. Sec. Litig.*,
    494 F.2d 528 (3d Cir. 1974) ........................................................................................9

*In re PolyMedica Corp. Sec. Litig.*,
    453 F. Supp. 2d 260 (D. Mass. 2006) .......................................................................11

*Int'l Controls Corp. v. Vesco*,
    490 F.2d 1334 (2d Cir. 1974) ......................................................................................9

*Isquith by Isquith v. Caremark Int'l, Inc.*,
    136 F.3d 531 (7th Cir. 1998) .......................................................................................8

*Leavitt v. Alnylam Pharms., Inc.*,
    378 F. Supp. 3d 60 (D. Mass. 2019) .........................................................................10

*Randall v. Fifth St. Fin. Corp.*,
    No. 15-cv-7759(LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) .........................1

*Rathborne v. Rathborne*,
    683 F.2d 914 (5th Cir. 1982) .......................................................................................8

*Rodriguez v. DraftKings Inc.*,
    No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ...............10

**Statutes**

15 U.S.C. § 78j(b) .........................................................................................................7

15 U.S.C. § 78u-1(a)(3)(B)(iii)(I)(aa)-(cc)...................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(i) ...................................................................................2, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).........................................................................4, 17

17 C.F.R. § 240.106-5 ..................................................................................................7

**Other Authorities**

Brooke Reichardt, *SPACs Are Not That Special Under the Investment Company Act of 1940*, 50 No. 3 Securities Regulation Law Journal ART 2 (Fall 2022)...................................5

Nasdaq Trader, *Equity Corporate Actions Alert #2021–138 Information Regarding the Business Combination of NewHold Investment Corp. (NHIC/W/U) and Evolv Technologies, Inc.* (July 16, 2021) ...............................................................................5

Thomas Lee Hazen, *Treatise on the Law of Securities Regulation*, 3 Law Sec. Reg. § 12:38 (May 2024 Update) ........................................................................................8, 9

U.S. Securities and Exchange Commission, *What You Need to Know About SPACs— Updated Investor Bulletin*, (May 25, 2021)..............................................................5

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 1, 4, 10, 17

Fed. R. Civ. P. 23(b)(3) ..........................................................................................11

Lead Plaintiff Movant Oklahoma Police Pension and Retirement System ("Oklahoma Police") respectfully submits this memorandum of law in opposition to the motions for appointment as Lead Plaintiff filed by Douglas Buchan ("Buchan") (ECF No. 8) and Robert Falk ("Falk") (ECF No. 17), and in further support of its own motion (ECF No. 14).[1]  For the following reasons, the Court should deny the motions by Buchan and Falk, and appoint Oklahoma Police as Lead Plaintiff and approve its selected counsel, Berman Tabacco, as Lead Counsel.

## I.    PRELIMINARY STATEMENT

Oklahoma Police is the movant with the largest financial interest that is also capable of satisfying the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure as required under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, Oklahoma Police, with a loss of $224,389, has the largest financial interest in this case of any lead plaintiff movant.  These losses significantly exceed the loss of Buchan, who claims a loss of $63,689, ECF No. 10-2.  For a variety of reasons, they also exceed the claimed loss of Falk.

Falk's claimed "loss" of $675,707, ECF No. 19, at 12,[2] is without foundation in law or fact and cannot support his appointment as lead plaintiff in this matter.  *All* of Falk's shares were received in an exchange of Legacy Evolv[3] common stock for New Evolv common stock on

---

[1] Gerald Raby withdrew his motion on June 7, 2024.  ECF No. 21.  On June 7, 2024, Buchan filed a ***non-opposition*** to the competing lead plaintiff motions.  ECF No. 22.

[2] Page references for all ECF filed documents are to the ECF page numbers referenced in the ECF headers.  According to his papers, Falk is currently a resident of Sweden.  ECF No. 18, at 9.

[3] NewHold Investment Corp. n/k/a Evolv Technologies Holdings, Inc. ("NewHold," "New Evolv" or the "Company") was created as a special purchase acquisition company ("SPAC") or "blank check" company.  NewHold entered into an Agreement and Plan of Merger, dated March 5, 2021 (the "Merger Agreement"), with privately held Evolv Technologies, Inc. ("Legacy Evolv"), to bring Legacy Evolv public through a SPAC merger (the "SPAC Combination").  *See* Declaration of Patrick T. Egan ("Egan Decl."), submitted concurrently herewith, Ex. 1 (Newhold, Current

July 16, 2021, **before** New Evolv shares began trading on the NASDAQ on July 19, 2021.  Thus, Falk's sole acquisition of New Evolv shares fall outside the class definition: "persons other than defendants who acquired Evolv securities ***publicly traded on the NASDAQ*** during the Class Period, and were damaged thereby." [4]  Accordingly, Falk is not a member of the putative class can cannot be appointed Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (requiring a court to appoint a "member … of the purported plaintiff class" as lead plaintiff).

Furthermore, because Falk received his shares without making any investment decision, he cannot be deemed to have been a "purchaser" for the purposes of the PSRLA. [5]  Consequently, Falk has no cognizable losses or damages recoverable under the Securities Exchange Act of 1934 ("Exchange Act") for any New Evolv shares he may have held during the Class Period.

Were the Court to credit Falk's claimed loss of $675,707, Falk still cannot satisfy the typicality and adequacy requirements that the PSRLA imposes on lead plaintiff applicants as a safeguard of the interests of the proposed class.  Significantly, and fatally, to his motion here.

Falk was a corporate insider, having served as Director of International Sales at Legacy Evolv from 2016 to 2019. [6]  Thus, it appears Falk acquired Legacy Evolv shares years before the Class Period through his employment and then received all of his New Evolv shares pursuant to a privately negotiated agreement between Legacy Evolv and NewHold that resulted in the SPAC

---

[4] *See* Complaint for Violations of the Federal Securities Laws (Mar. 25, 2024), ECF No. 1 (the "Complaint"), ¶ 100 (class of persons "who acquired Evolv securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby").  Indeed, pursuant to the Merger Agreement at A-10 (*see* Egan Decl. Ex. 8), Legacy Evolv shareholders who exchanged their shares for New Evolv shares were subject to "customary lock-up restrictions for a period of 180 days," and shares could not be immediately sold.

Report (Form 8-K) (July 22, 2021)), at 2-3. The SPAC Combination was approved by NewHold shareholders on July 15, 2021, and only began to be publicly traded on July 19, 2021.  *Id.*

[5] *See* Complaint ¶ 100.

[6] *See* Egan Decl. Ex. 2 (Falk Profile, LinkedIn.com).

Combination.[7]  Pursuant to the Merger Agreement, the stock of Legacy Evolv shareholders—including Falk—were converted, by reference to a formula negotiated in the Merger Agreement which contained no reference to the market price of publicly traded NewHold or New Evolv shares. This conversion was *automatic* and thus could not have occurred in reliance on any public statements by the Defendants, or even in reliance on the market price for the securities paid for NewHold of New Evolv shares by other investors in the proposed Class.  Accordingly, even if Falk's claimed "loss" was accepted by the Court, Falk is atypical of other member of the Class, subject to unique defenses and would be an inadequate representative for the Class.  *See* Egan Decl. Ex. 3 (Order Appointing Lead Plaintiffs, *Butala v. Owlet, Inc.*, No. 2:21-cv-09016-FLA (JEMx) (C.D. Cal. Sep. 8, 2023)), ECF No. 63, at 8, n.2 (movant who acquired all of his shares from an exchange of shares in the privately held target for SPAC combination shares, was "subject to unique defenses that render him incapable of adequately representing the class").

By contrast, as an institutional investor providing pension and other specified benefits for members who are qualified police officers and/or their beneficiaries, Oklahoma Police is the preferred type of lead plaintiff by Congress.  *See Greebel v. FTP Software, Inc*., 939 F. Supp. 57, 63 (D. Mass. 1996) (observing PSLRA's "presumption that institutional investors be appointed lead plaintiff"); *Carr v. Analogic Corp*., No. 18-CV-11301-ADB, 2018 WL 4932858, at *4 (D. Mass. Oct. 10, 2018) (Burroughs, J.) (recognizing "Congressional preference for institutional lead plaintiffs in private securities class actions" (quoting *Randall v. Fifth St. Fin. Corp*., No. 15-cv-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016))).  The same cannot be said of any of the competing movants, and each of their motions should be denied.

---

[7] Falk's PSLRA Certification, ECF No. 19 at 10.

Because Oklahoma Police has the largest financial interest in this litigation, is the preferred type of lead plaintiff and has made a *prima facie* showing of typicality and adequacy, it is the presumptive most adequate lead plaintiff, and there has been no "proof" presented to rebut the presumption.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, Oklahoma Police should be appointed Lead Plaintiff and its selection of Berman Tabacco as Lead Counsel should be approved.

## II.    ARGUMENT

### A.    Oklahoma Police is the Presumptive "Most Adequate Plaintiff"

The PSLRA directs a Court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA creates a "rebuttable presumption" that the "most adequate plaintiff" possesses the "largest financial interest in the relief sought by the class," so long as the typicality and adequacy requirements of Rule 23 are met.  15 U.S.C. § 78u-1(a)(3)(B)(iii)(I)(aa)-(cc); *Bowers v. Tesaro Inc.*, No. 18-CV-10086-ADB, 2018 WL 2089358, at *1 (D. Mass. May 4, 2018) (Burroughs, J.).  Although the PSLRA does not define the term "largest financial interest," most courts appoint "whichever potential lead plaintiff has suffered the largest total loss" from the acquisition of shares during the class period.  *Hackel v. AVEO Pharms., Inc.*, No. 19-CV-10783-ADB, 2019 WL 1992556, at *1 (D. Mass. May 6, 2019) (Burroughs, J.).

Here, Oklahoma Police, with a loss of $224,389, has a financial interest in this litigation that significantly exceeds the loss of Buchan.  While Falk claims a "loss" of $675,707, ECF No. 19, at 12, that "loss" is without any support and should be rejected.

4

### 1.    Falk Is Not A Putative Class Member

In its initial stage, a SPAC such as NewHold, is a shell company with no assets (besides cash and investments) and no underlying business operations.[8]   The purpose of the SPAC is to simply serve as a vehicle to "acquire or combine with" an already existing "operating company."[9] A SPAC is simply a vehicle used to convert a private company into a public company without undergoing the complex, time-consuming traditional IPO process.[10]

On March 5, 2021, NewHold entered into the Merger Agreement to bring Legacy Evolv public.  On July 15, 2021, the SPAC Combination was approved by NewHold shareholders.  On July 16, 2021 (the "Closing Date"), SPAC Combination was consummated (the "Closing").[11]   In connection with the Closing, the Company changed its name from NewHold Investment Corp. to Evolv Technologies Holdings, Inc.[12]  On July 19, 2021, New Evolv's common stock commenced trading on the NASDAQ Stock Market under the symbol "EVLV."[13]   The Company's common stock CUSIP number changed from 651448102 to 30049H102.[14]

---

[8] Brooke Reichardt, *SPACs Are Not That Special Under the Investment Company Act of 1940*, 50 No. 3 Securities Regulation Law Journal ART 2 (Fall 2022) (citing U.S. Securities and Exchange Commission ("SEC"), *What You Need to Know About SPACs—Updated Investor Bulletin*, (May 25, 2021), a true and correct copy of which is attached as Egan Decl. Ex. 4).

[9] *Id. See also* Egan Decl. Ex. 5 (NewHold, Annual Report (Form 10-K) (Mar. 25, 2021)), at 1 ("We are a blank check company incorporated … for the purpose of entering into a merger, share exchange, asset acquisition, stock purchase, recapitalization, reorganization or other similar business combination, with one or more target businesses.").

[10] SEC, *What You Need to Know About SPACs—Updated Investor Bulletin*, *supra* note 7.

[11] Egan Decl. Ex. 6 (NewHold, Press Release)

[12] *Id.*

[13] *Id*.

[14] *See* Egan Decl. Ex. 7 (NASDAQ Trader, *Equity Corporate Actions Alert #2021–138 Information Regarding the Business Combination of NewHold Investment Corp. (NHIC/W/U) and Evolv Technologies, Inc.* (July 16, 2021)).

Legacy Evolv's common stock was exchanged[15] for New Evolv common stock at the "Effective Time," *i.e.*, the time when the Certificate of Merger was filed with the Delaware Secretary of State on the Closing Date (July 16, 2021).[16]

The combination was accounted for by the Company as a "reverse capitalization" because Legacy Evolv shareholders were expected to have a majority of the voting power; comprise all of the ongoing operations; comprise a majority of the governing body; and Legacy Evolv's senior management was to comprise all of the senior management.[17]

As detailed in his papers, Falk received New Evolv common shares on ***July 16, 2021***:

**Robert Falk's Transactions in Evolv Technologies Holdings, Inc. (EVLV)**
**Account 1**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|-----------|
| 7/16/2021 | Received [1] | 116,877 | $9.5500 |

* * *

[1] Mr. Falk was a shareholder of Evolv Technologies, Inc. prior to the merger agreement with NewHold Investment Corp.  On July 16, 2021, he received 116,877 EVLV shares pursuant to the merger agreement.  The acquisition price per share, $9.55, was the closing price on July 16, 2021.

ECF No. 19, at 10.

Since New Evolv shares did not become publicly traded on NASDAQ until ***July 19, 2021***, Falk's shares received on July 16, 2021 do not fall within the class definition, which includes only "persons other than defendants who acquired Evolv securities ***publicly traded on the NASDAQ***

---

[15] "As a result of the Business Combination, each share of Legacy Evolv preferred stock and common stock was converted into the right to receive approximately 0.378 shares of the [New Evolv] common stock." Egan Decl. Ex. 1, at 2.

[16] *See* Egan Decl. Ex. 8 (Merger Agreement), at 3 and 5.

[17] *See* Egan Decl. Ex. 9 (NewHold, Prospectus (June 28, 2021)), at 19.

during the Class Period, and were damaged thereby." Complaint ¶ 100. Accordingly, Falk's shares received on July 16, 2021 cannot be included in his loss calculation for purposes of the appointment of the lead plaintiff in this action. And, Falk does not purport to have purchased any other shares.

### 2. Falk's Acquisition of New Evolv Common Stock Does Not Satisfy the "Purchase" Requirement of the Exchange Act

Even if Falk had an acquisition within the class definition, it is well-established that, in order to pursue a private claim under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.106-5, one must be a "purchaser" or "seller" of securities. *Arnesen v. Shawmut Cnty. Bank, N. A.*, 504 F. Supp. 1077, 1081 (D. Mass. 1980) (citing *Blue Chip Stamps Co. v. Manor Drug Co*., 421 U.S. 723 (1975)). While a share exchange accompanying the merger of two separate and distinct corporations *can* constitute a "purchase or sale" for purposes of bringing a Rule 10b-5 action, the circumstances of Falk's acquisition of New Evolv shares do not meet the criteria for such a claim.

### a. Falk Did Not Make an Investment Decision

Courts have found that the receipt of shares in a spin-off is not a "purchase" within the scope of Section 10(b) when "plaintiffs did not participate in any sort of **investment decision**" and "made no election whether or not to receive [the stock] (instead of a cash dividend), nor had any choice as to how much [of the stock] to receive in the dividend." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005).[18] One reason for excluding

---

[18] *See also City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23 CIV. 1769 (LGS), 2023 WL 6458930, at *4 (S.D.N.Y. Oct. 4, 2023) (shares in a spin-off distributed as a pro rata dividend were not a purchase because there was no investment decision to acquire the shares); *In re Mirant Corp. Sec. Litig.*, No. 1:02-cv-1467-RWS, 2008 WL 11334395, at *9 n.15 (N.D. Ga. Aug. 5, 2008) (plaintiffs conceding that individuals who received shares of stock as part

such transactions is that they are not "meant to be governed by § 10(b)," which "seeks to ensure that ***investors make decisions based on honest information*** and to prevent fraudulent information from impacting securities investment decisions." *Adelphia*, 398 F. Supp. 2d at 260.

Here, Falk made no investment decision.  Instead, he automatically received his New Evolv common stock in exchange for his Legacy Evolv common stock pursuant to the terms of the Merger Agreement.  Since there was no investment decision, this is not a "purchase" within the scope of Section 10(b).

> **b.     Exchanging Shares with a Shell Company Is Not a "Purchase"**

Moreover, while some mergers may result in an exchange of shares qualifying for the protections of the securities laws, courts routinely hold that there is no "purchase" under Section 10(b) when there is "no significant change in the investment represented by the stock."  *See* Thomas Lee Hazen, *Treatise on the Law of Securities Regulation*, 3 Law Sec. Reg. § 12:38 (May 2024 Update) (citing *Goldberg v. Hankin*, 835 F. Supp. 815, 817-18 (E.D. Pa.1993)) (shareholder of bank that was transformed into bank holding company was not a purchaser as a result of the exchange of shares pursuant to the bank holding company's formation).[19]  Thus, "***an exchange of shares or merger with a shell company*** that is undertaken merely for 'corporate restructuring' has been held not to constitute a purchase or sale under Rule 10b-5."  Hazen, *Treatise on the Law of*

---

of a dividend could not be class members because they "did not make an affirmative investment decision").

[19] *See also Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 534-36 (7th Cir. 1998) (distribution of shares in spin-off of a former wholly owned subsidiary was not a purchase as "[o]nly the form in which the members of the class owned [its] assets was changed; it was changed from stock in one corporation to stock in two corporations" and "[a]fter the change the class members owned the same proportion, carrying the same rights, of the same pool of assets"); *Rathborne v. Rathborne*, 683 F.2d 914, 921 (5th Cir. 1982) (plaintiff may only be considered a purchaser or seller "where a securities transaction results in a fundamental change in the nature of a shareholder's investment, leaving the plaintiff with shares that represent a participation in wholly new and different enterprise").

*Securities Regulation*, 3 Law Sec. Reg. § 12:38 (citing *In re Penn Cent. Sec. Litig.*, 494 F.2d 528 (3d Cir. 1974)).

This is precisely the situation here, which involves a target private company being taken public through a SPAC combination.   There was no significant change in the investment represented by the stock.  Legacy Evolv would have a majority of the voting power; comprised all of the ongoing operations; comprised a majority of the governing body; and Legacy Evolv's senior management was to comprise all of the senior management.   The situation at hand is vastly different from the merger of two separate companies with distinct assets and business operations. Accordingly, Falk's receipt of New Evolv shares for his Legacy Evolv shares is not a "purchase" under the Exchange Act.  *See Gelles v. TDA Indus., Inc.*, No. 90-cv-5133, 1993 WL 275216, at *5-6 (S.D.N.Y. 1993) ("a one-for-one transfer of shares into a shell corporation, not a purchase or sale"), *aff'd*, 44 F.3d 102 (2d Cir. 1994); *see also Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1343 (2d Cir. 1974) (exchange of shares for stock of wholly-owned subsidiary not a sale under the Exchange Act because investor retained ownership, retained "complete control" and relinquished nothing in exchange); *In re MetLife Demutualization Litig.*, 624 F. Supp. 2d 232, 246 (E.D.N.Y. 2009) ("[t]ransfer of ownership to a newly formed holding company is a corporate reorganization, not the sale of a company or an acquisition") (citations omitted); *FMC Corp. v. Boesky*, 727 F. Supp. 1182, 1198-99 (N.D. Ill. 1989) (recapitalization which rearranged control among the owners did not render the corporation a purchaser or seller).

Because the exchange of shares pursuant to the merger at issue in this case cannot constitute "purchases" under the Exchange Act, they should not be included in Falk's loss calculations.

### B.      Falk Does Not Satisfy the Adequacy or Typicality Requirements of Rule 23

Even if Falk had put forth evidence demonstrating a cognizable loss, he is unable to meet the Rule 23 typicality and adequacy requirements of the PSRLA.   For the purposes of a lead

plaintiff motion, a movant must "make a *prima facie* showing that he or she satisfies the typicality and adequacy requirements" of Rule 23.  *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 65 (D. Mass. 2019).  Pursuant to the PSLRA, a lead plaintiff applicant's claim  is typical, "if it arises from the same events or course of conduct and involves the same legal theory as the claims of the rest of the class members, [while an applicant] is adequate if 1) he or she has common interests and an absence of conflict with the other class members and 2) his or her attorneys are qualified, experienced and able vigorously to conduct the litigation."  *Id.* (internal citation and quotation marks omitted).

### 1.   Falk Is Subject to Unique Defenses Concerning Reliance

Because Falk did not purchase Evolv securities in reliance on open market prices for the Company's stock, and because he has not otherwise submitted any evidence that he relied on *any* false statements alleged in the pending action (a necessary element of the claims in this action), he is both atypical of other class members and a wholly inadequate steward of the interests of the proposed Class. This infirmity is only compounded by the fact that Falk appears to be a former executive of the Company during the period when the Evolv Express[20] device was being developed for market, and thus had access to information that is likely to provide Defendants with ample bases to attack his reliance on the alleged false and misleading statements and material omissions regarding the product's capabilities made during the Class Period.[21]

---

[20] During the Class Period, the Company touted Evolv Expresss as its "flagship product". Complaint ¶ 24.

[21] Falk's lead plaintiff papers contain the demonstrably false statement that "Falk ***purchased*** Evolv securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions."  ECF No. 18, at 6 (emphasis added).  Despite claiming that he "bought" 116,877 shares at $9.55 per share for $1,116,175.35, ECF No. 19, at 12, there is no evidence that he paid anything for these shares.  *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("significant errors and inconsistencies" in lead plaintiff submissions rendered movant inadequate).

Any would-be plaintiff in a securities fraud case brought under federal laws must demonstrate his or her reliance on the alleged false statements of defendants to have a successful claim. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 341–42 (2005).  As this Court has observed, "[w]hile reliance is typically demonstrated on an individual basis, the Supreme Court has noted that such a rule would effectively foreclose securities fraud class actions because individual questions of reliance would inevitably overwhelm the common ones under Rule 23(b)(3)." *In re PolyMedica Corp. Sec. Litig.,* 453 F. Supp. 2d 260, 264–65 (D. Mass. 2006).  Instead, securities fraud class action plaintiffs rely on the fraud-on-the-market theory, which creates a rebuttable presumption that the plaintiff relied on the "integrity of the market price" which reflected the alleged misstatement. *Id.*

The premise of the fraud-on-the-market theory is that, in an efficient securities market, the price of a company's stock is determined by the available material information regarding the company and its business, including any available material misstatements. *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988).  Under this theory, since investors who purchase or sell stock on the open market rely on the integrity of the market price, they indirectly rely on such misstatements because they purchase or sell stock at a price which necessarily reflects that misrepresentation. *Id.* at 248.  Moreover, "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id.*

**By Falk's own admission, he is not eligible to demonstrate reliance by invoking the fraud-on-the-market theory**.  As he sets out in a footnote to his declaration in support of his motion and discussed above, Falk received his shares not as a result of a purchase on an open and efficient

market for the Company's shares, but as a product of terms privately negotiated between NewHold and Legacy Evolv during the merger process:

> Mr. Falk was a shareholder of Evolv Technologies, Inc. prior to the merger agreement with NewHold Investment Corp.  On July 16, 2021, he received 116,877 EVLV shares pursuant to the merger agreement.

ECF No. 19, at 12 n.1.  Falk provides no detail regarding the circumstances by which he acquired his Legacy Evolv shares which were exchanged for New Evolv shares, including when the Legacy Evolv shares were acquired, what he paid for those shares, and any terms concerning his acquisition of those shares.

The formula for calculating the number of shares to be given to Falk depended not on the market price of the Company's stock, but on a negotiated private exchange between NewHold and Legacy Evolv.  Indeed, the exchange ratio has no purported relation to NewHold's market price:

> Common Stock. At the Effective Time, each share of Evolv Common Stock … will be converted into the right to receive such number of shares of NewHold Common Stock equal to the Exchange Ratio and a number of Earn-Out Shares (as defined below). ***The Exchange Ratio is defined in the Merger Agreement to be 125,000,000 divided by the number of outstanding shares of Evolv Common Stock*** and options to purchase shares of Evolv Common Stock as of immediately prior to the Effective Time, after giving effect to the conversion of the Evolv Preferred Stock, Evolv Convertible Notes and Evolv Warrants and as further adjusted pursuant to the Merger Agreement.[22]

Because he did not make any "decision to trade" in Evolv securities based on a fair market price, *Basic*, 485 U.S. at 248, Falk is not entitled to the fraud on the market presumption of reliance on the false statements alleged in this case, unlike the rest of the putative class who relied on market pricing for their purchases.  This disability must end his application to be appointed lead plaintiff in this matter.

---

[22] Egan Decl. Ex. 10 (NewHold, Current Report (Form 8-K) (Mar. 5, 2021)), at 1. Notably, because this formula was not tethered to any open market price for Evolv stock, the number of shares received by Falk could not reflect any inflation from the false statements alleged in the Complaint.

This Court has previously acknowledged the existence of this potential bar in *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 389-90 (D. Mass. 2011), which cited *In re HealthSouth Sec. Litig.*, 213 F.R.D. 447, 459–60 (N.D. Ala. 2003), for the proposition that lead plaintiff applicants in *securities fraud* cases who acquired shares without making any purchase decisions may not be permitted to invoke the presumption of reliance.  In *HealthSouth*, the court rejected claims of former employee/shareholders of the defendant corporation as not typical of the class because they

> had no choice but to acquire HealthSouth stock through HealthSouth's acquisition of their employer. The alleged misrepresentations or omissions by the defendants then did not influence their decisions to acquire HealthSouth stock. Their claims, thus, do not rest on the fraud-in-the-market theory that underlies the claims of the purported class.

213 F.R.D. at 459; *see also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029–30 (N.D. Cal. 1999) (denying application for lead plaintiff because movant "would be encumbered with the unique question whether it acquired its Network shares on better terms than the investing public and not fully in reliance on the market price").

      **2.**      **Falk Is Subject to Unique Defenses from His Employment with Legacy Evolv, Potential Relationships with Senior Officers, and His Public Statements Concerning Matters Underlying the Claims in This Action**

Questions regarding Falk's reliance on the false and misleading statements alleged in this case are even more concerning given Falk's history with the Company and prior public statements regarding Evolv Express.  According to his profile on the professional social networking site LinkedIn, Falk was a Director of International Sales for Legacy Evolv from January 2016 to April 2019:[23]

---

[23] According to the Wayback Machine, Bob Falk was listed as an employee on Legacy Evolv's website on January 21, 2019.  *See* Egan Decl. Ex. 11.  Interestingly, Falk's Twitter n/k/a X, @falkro, follows and is followed by Evolv Founders Michael Ellenbogen and Anil Chitkara, and Evolv Technology.  *See id.* Ex. 12. Anil Chikara currently serves as the Company's Chief Growth



*See* Egan Decl. Ex. 2 (Robert Falk Profile, LinkedIn.com).

Since Evolv Express was introduced in October 2019, Falk would have had ample access to non-public information regarding the device's actual capabilities.  Indeed, six years ago, in 2018, when he was employed by Legacy Evolv, Falk publicly touted the Evolv system over the capabilities of metal detectors, stating "You can choose to EVOLV or just get another metal detector that won't find non metallic threats":

---

Officer, *see id.* Ex. 13, and Mike Ellenbogen currently serves as the Company's Chief Innovation Officer, *see id.* Ex. 14.



*See* Egan Decl. Ex. 15 (Robert Falk Posts, LinkedIn.com).

This access to material non-public information about Evolv Express provides an independent basis for concluding that Falk is atypical of the proposed Class. *See HealthSouth*, 213 F.R.D. at 459-60 (holding that "[t]hese employee/shareholders had knowledge and information not available to the open market purchasers. This knowledge and information of these shareholder/employees may provide distinct defenses to their claims"). The court in *In re Michaels Stores, Inc. Sec. Litig.*, No. 3:03-CV-0246-M, 2003 WL 27391238 (N.D. Tex. Oct. 24, 2003) came

to a similar result in rejecting the lead plaintiff application of a movant with potential non-public

knowledge of the events at issue in the litigation, concluding:

> The lack of care of Ms. Olague and her counsel in fully describing her access to non-public
> information and in certifying facts relating to her ownership of Michael's stock, along with
> the potential conflict of interest which arises from her working for Michael's, and
> particularly in areas such as inventory control, that may very well be a subject of this
> litigation, cause the Court to conclude that Ms. Olague is subject to unique defenses that
> render her incapable of adequately representing the class, and that her claims are not typical
> and that she is not an adequate representative of the class.

*Id.* at *2.

The challenges to typicality and adequacy represented by Falk's access to information

regarding the development of Evolv Express are made manifest in other public statements by Falk

defending the Company's claims about the machine.

In a posting on LinkedIn during the Class Period, in 2023, Falk defended the failures of the

Evolv Express device by claiming that "100% security does not exist," and asking "[w]hy bother

finding small items that won't cause mass casualties[?]"—a remark at odds with the central

allegations of the Complaint:



*See* Egan Decl. Ex. 16 (Robert Falk Posts, LinkedIn.com).  This statement implies that he did not

rely or care about the alleged misrepresentations.  *See* Complaint ¶ 63 (alleging that the Company

"materially overstated the efficacy of its products" and misled investors concerning "the lack of

effectiveness of Evolv's products with regard to detecting knives and guns led to an increased risk of undetected weapons entering locations such as schools").

Falk's non-public knowledge of the Evolv Express system, his public statements touting Evolv Express, and his potential relationships with current officers of the Company would significantly interfere with Falk's ability to prosecute this case on behalf of the Class. Accordingly, the Court should reject Falk as atypical and inadequate. *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) ("When a defense that is unique to a class representative threatens to dominate or even interfere with that plaintiff's ability to press the claims common to the class, then that threat must be analyzed with care."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481-82 (S.D.N.Y. 2002) ("Courts have routinely found a disqualifying unique defense where the potential named plaintiff has had a direct or personal relationship with a board member or officer of the issuing company").

### C.      Oklahoma Police Satisfies the Requirements of Rule 23

Because Oklahoma Police has the largest financial interest in this litigation and has made a *prima facie* showing of typicality and adequacy, ECF No. 15, at 10-12; ECF 16-2 (Oklahoma Police Certification); ECF No. 16-4 (Berman Tabacco Firm Resume), it the presumptive most adequate lead plaintiff, and there has been no "proof" presented to rebut the presumption. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).   Accordingly, Oklahoma Police should be appointed Lead Plaintiff and its selection of Berman Tabacco as Lead Counsel should be approved.

As an institutional investor with significant experience serving as a lead plaintiff, Oklahoma Police's appointment will ensure that the interests of the Class are fully protected and satisfy the "Congressional preference for institutional lead plaintiffs in private securities class actions." *See Analogic*, 2018 WL 4932858, at *4.

## III.    CONCLUSION

For the foregoing reasons, Oklahoma Police respectfully requests that the Court grant its motion and enter an Order appointing it to serve as Lead Plaintiff in this Action and approving its selection of Berman Tabacco as Lead Counsel for the Class; and deny each of the competing motions.

DATED: June 7, 2024                    **BERMAN TABACCO**

*/s/ Patrick T. Egan*
                    Patrick T. Egan (BBO #637477)

Steven J. Buttacavoli (BBO #651440)
Jay Eng (BBO #569562)
Christina L. Gregg (BBO #709220)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com
        sbuttacavoli@bermantabacco.com
        jeng@bermantabacco.com
        cgregg@bermantabacco.com

Michael Dark (*pro hac vice to be filed*)
425 California St., Ste 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Email:  mdark@bermantabacco.com


*Counsel for Movant Oklahoma Police Pension and Retirement System and Proposed Lead Counsel for the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants on the Notice of Electronic Filing (NEF).


<u>*/s/ Patrick T. Egan*</u>
Patrick T. Egan

19