# EXHIBIT 3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL J. BUTALA,

Plaintiff,

v.

OWLET, INC., et al.,

Defendants.

Case No. 2:21-cv-09016-FLA (JEMx)
Case No. 2:21-cv-09293-FLA (JEMx)

**ORDER APPOINTING LEAD PLAINTIFFS AND APPROVING THEIR SELECTIONS OF LEAD COUNSEL [DKTS. 10, 13, 17, 21, 55]**

## RULING

Before the court are Movants Thomas E. Tweito ("Tweito"), Christopher J. Simmons ("Simmons"), Drew Conant ("Conant"), and Casey McIntosh's ("McIntosh") (collectively, "Movants") Motions for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Motions"). Dkt. 10, 13, 17, 21. On September 29, 2022, the court GRANTED the Motions and allowed the parties leave to file supplemental briefing regarding Movants' requests to be appointed Lead Plaintiff. Dkt. 55.

For the reasons stated herein, the court (1) APPOINTS Conant Lead Plaintiff and APPROVES his selection of Lead Counsel for the Section 14(a) Class, and (2) APPOINTS Tweito Lead Plaintiff and APPROVES his selection of Lead Counsel for

1

the Section 10(b) Class. McIntosh and Simmons' requests to be appointed Lead Plaintiff are DENIED.

**BACKGROUND**

The subject action is a putative securities class action against Defendant Owlet, Inc. ("Owlet"), Defendants Kurt Workman ("Workman") and Kate Scolnick ("Scolnick") (the "Individual Defendants"), and Defendants Ken Suslow ("Suslow"), Domenico De Sole ("De Sole"), Ramez Toubassy ("Toubassy"), Jamie Weinstein ("Weinstein"), Krystal Kahler ("Kahler"), and Michael F. Goss ("Goss") (collectively, the "Sandbridge Defendants") (all together "Defendants") for violation of the Securities Exchange Act of 1934 (the "Exchange Act").

On September 29, 2022, the court consolidated the subject action, styled *Michael J. Butala v. Owlet, Inc.*, Case No. 2:21-cv-09016-FLA (JEMx) ("Case 21-9016"), with the action styled *Jones Cherian v. Owlet, Inc.*, Case No. 2:21-cv-9293-FLA (JEMx) ("Case 21-9293"), designating this action the Lead Case. Dkt. 55. Although these two actions were brought by different Plaintiffs, the Complaints in each case are substantially identical (with the same typographical errors), and assert the same claims against the same Defendants, on behalf of the same putative classes. *See* Dkt. 55 at 2. The court includes the following allegations from the Complaint in this action (Case 21-9016) to provide context for the Movants' arguments only and does not make any findings of fact regarding the truth of these allegations.

"Sandbridge was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses." Dkt. 1 ("Compl.") ¶ 2. On July 15, 2021, Sandbridge completed a business combination with Owlet Baby Care Inc. ("OBC"), a company that designed and sold products and services for parents to monitor the health and wellness of their children, and the combined company became Owlet. *Id.* ¶ 3. Owlet's flagship product was a baby monitor called Smart Sock, which allowed parents to track an infant's oxygen levels,

2

heart rate, and sleep trends using an application. *Id.* ¶ 4.

On March 31, 2021, Owlet[1] filed its Registration Statement on Form S-1, stating its revenues for the period that ended on December 31, 2020. *Id.* ¶ 29. The Registration Statement warned, in relevant part, that the United States Food and Drug Administration ("FDA") "'***may not agree*** with that conclusion [that the Smart Sock is not a medical device] and ***could*** require us to obtain marketing authorization' to sell Smart Sock." *Id.* (emphasis and brackets in original). On June 21, 2021, Owlet filed its proxy statement on Form 424b3 soliciting votes in favor of the business combination. *Id.* ¶ 30. The Proxy Statement stated Owlet's revenues for the period that ended on March 31, 2021, and warned, in relevant part, that "'the FDA … ha[s] expressed they do not agree with that conclusion [that the Smart Sock is not a medical device] and ***could*** require us to obtain marketing authorization' to sell the Smart Sock." *Id.* (emphasis and brackets in original). On August 12, 2021, Owlet announced its second quarter and full year 2021 financial results in a press release. *Id.* ¶ 31. Plaintiffs contend these statements were materially false and/or misleading and failed to disclose material, adverse facts about Owlet's business, operations, and prospects. *Id.* ¶ 32.

On October 4, 2021, Owlet revealed it had received a warning letter from the FDA, which stated "the Company's marketing of its Owlet Smart Sock product … renders [it] a medical device requiring premarket clearance or approval from the FDA." *Id.* ¶ 34. On this news, Owlet's stock price fell by $1.29, or 23%, to close at $4.19 per share on October 4, 2021, on unusually heavy trading volume. *Id.* ¶ 35.

/ / /

---

[1] It is unclear whether Plaintiffs allege these statements were made by Owlet, OBC, or Sandbridge. Although the Complaints state these statements were made by "Owlet," Compl. ¶¶ 29-31, Plaintiffs allege Owlet was formed by the completion of the business combination on July 15, 2021, *id.* ¶ 3. The timing and contents of these statements suggest Plaintiffs intended to plead they were made by OBC or Sandbridge, rather than by Owlet. *See id.*

3

On November 17, 2021, Plaintiffs filed the Complaint on behalf of the following classes: "persons and entities: (a) that purchased or otherwise acquired Owlet securities between March 31, 2021 and October 4, 2021, inclusive (the 'Class Period'); and/or (b) held Sandbridge common stock … as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021." *Id*. ¶ 1. Plaintiffs assert three causes of action for: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all Defendants ("Section 10(b)"); (2) violation of Section 20(a) of the Exchange Act against the Individual Defendants; and (3) violation of Section 14(a) of the Exchange Act ("Section 14(a)") against all Defendants. *Id*. ¶¶ 58–76.

## DISCUSSION

### I. Legal Standard

The Private Securities Litigation Reform Act (the "PSLRA") sets forth the requirements of securities class actions brought pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(1). In particular, subdivision (a)(3) outlines the statutory requirements for a district court's appointment of lead plaintiff. "The Act instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). "The 'most capable' plaintiff — and hence the lead plaintiff — is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Fed. R. Civ. P. 23 ('Rule 23')]." *Id*. The court should follow a "three-step process for identifying the lead plaintiff pursuant to these criteria." *Id*.

First, the first plaintiff to file the lawsuit must cause notice of the lawsuit to be published in a widely circulated national business-oriented publication or wire service, advising members of the purported plaintiff class of the pendency of the action, the claims asserted therein, the purported class period, and that "any member of the purported class may move the court to serve as lead plaintiff of the purported class."

*Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)). Second, the court must consider any motion made by a class member in response to the notice requirement and appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). Third, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfied Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

## II. Analysis

### A. Published Notice

On November 17, 2021, counsel for Plaintiff Butala published a notice in *Business Wire* announcing that a securities class action had been filed against Defendants and advising purchasers of Owlet securities that they had 60 days from the date of publication of the notice to file a motion to be appointed lead plaintiff. *E.g.*, Dkt. 10-6 (Joost Decl. Ex. D). This publication was sufficient to satisfy the notice requirement. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

### B. Most Capable Plaintiff

On the second step, the court must evaluate the Motions to determine the member(s) of the putative classes that are most capable of representing the interests of class members. *Id.* § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that "[t]he 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d at 729; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

> In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy provides information that

5

> satisfies these requirements, he becomes the presumptively most adequate plaintiff. If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.

*Id.* at 730, 732.

To make a prima facie showing of typicality, a movant need only establish that his or her claims are substantially similar, rather than substantially identical, to all class members' claims. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (explaining only a preliminary showing of typicality is needed for appointment of a lead plaintiff because a wide-ranging analysis will take place during the class certification process). To determine whether a movant will fairly and adequately protect the interests of all class members, the court should inquire about the movant's interests in the outcome of the case, and his or her willingness to represent vigorously the class' claims. *See id.* "In assessing whether the choice of lead counsel casts doubt on the fitness of a presumptive lead plaintiff, the court determines 'whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff.'" *Id.* at 671 n. 44 (quoting *Cavanaugh*, 306 F.3d at 733).

Plaintiffs bring the subject action on behalf of two distinct groups: (a) persons and entities "that purchased or otherwise acquired Owlet securities between March 31, 2021 and October 4, 2021, inclusive (the 'Class Period')," who seek recovery under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (the "Section 10(b) Class"); and/or (b) persons and entities that "held Sandbridge common stock … as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021," who seek recovery under Section 14(a) of the Exchange Act (the "Section 14(a) Class"). Compl. ¶ 1.

///

On September 29, 2022, the court requested additional briefing on the following questions:

1. What were the circumstances by which McIntosh acquired shares of OBC and those shares were converted into shares of Owlet?

2. For Movants who claim membership in the Section 10(b) Class, were any of the Movants' shares of Owlet subject to terms, conditions, and/or restrictions that differed from those of an investor who purchased Owlet securities after the completion of the business combination?

3. Do putative Section 10(b) Class members, who obtained shares of Owlet through converted shares of OBC, constitute a separate class or sub-class from members who purchased or otherwise acquired shares of Owlet after the business combination?

4. Do the Section 10(b) and 14(a) Classes constitute separate classes under Rule 23, or do they constitute a single class? Do Plaintiffs intend to seek certification of these two groups as a single class, with all putative members considered together for purposes of Rule 23?

5. Can McIntosh, Tweito, or Simmons satisfy the requirements of Rule 23 as to the Section 14(a) Class, given that they do not allege they held Sandbridge common stock as of June 1, 2021, or were eligible to vote at Sandbridge's special meeting on July 14, 2021?

6. Given Conant's admission that he is not a member of the Section 10(b) Class, can he satisfy the requirements of Rule 23 as to that putative class?

Dkt. 55 at 12.

Having reviewed the parties' responses (Dkts. 56–61), the court finds the Section 10(b) and Section 14(a) Classes constitute distinct and separate classes for purposes of Rule 23. While both Classes' claims are based on many of the same representations alleged, the Section 14(a) Class members also assert claims against the Sandbridge Defendants, and their theory of damages is based on their decision to vote

in favor of the business combination instead of redeeming their Sandbridge shares at $10.00 per share. *See* Compl. ¶¶ 6, 35, 48–49. In contrast, the Section 10(b) Class members' claims are based on a broader set of representations alleged, including Owlet's July 15, 2021, announcement that it had completed the business combination with Sandbridge, and these class members seek damages based on their alleged acquisition of Owlet securities at artificially inflated prices. *See id.* ¶¶ 33, 45, 47, 52–53, 65. Based on the factual and legal differences between the two proposed classes' claims, the court finds they cannot be adequately represented by the same Lead Plaintiff and Lead Counsel. *See* Dkt. 55 at 10–12.

Conant admits he is not a member of the Section 10(b) Class, and requests to represent the Section 14(a) Class only. Dkt. 56 at 2. While Tweito, McIntosh, and Simmons seek to represent both Classes, they each admit they do not have standing to assert a Section 14(a) claim. Dkt. 58 at 6; Dkt. 59 at 3; Dkt. 61 at 4.

As Conant is the only Movant who is a member of the Section 14(a) Class, the court APPOINTS Conant Lead Plaintiff for the Section 14(a) Class and APPROVES his selection of Pomerantz LLP to serve as Lead Counsel for this class.

As Tweito has a greater financial interest in this litigation than Simmons, the court APPOINTS Tweito Lead Plaintiff for the Section 10(b) Class and APPROVES his selection of Kessler Topaz Meltzer & Check, LLP to serve as Lead Counsel for this class. McIntosh's request to serve as Lead Plaintiff is DENIED, as he is subject to unique defenses that render him incapable of adequately representing the class.[2]

---

[2] McIntosh admits he purchased his shares in OBC in 2019 and 2020, prior to when the representations pleaded were made (beginning in March 2021, Compl. ¶ 29), and that he tried to sell the majority of his OBC shares (approximately 30,303 out of 51,776 shares) in December 2020, but the transaction was blocked by OBC's board. Dkt. 59 at 1. He additionally admits that, pursuant to the terms of the conversion of his OBC shares to Owlet shares, he was blocked from selling the converted shares for a period of 18 months beginning on July 15, 2021. *Id.* at 1–2. Based on these admissions alone, McIntosh "is subject to unique defenses that render him incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

8

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Simmons' request to serve as co-Lead Plaintiff is DENIED.

### CONCLUSION

For the foregoing reasons, the court: (1) APPOINTS Conant Lead Plaintiff for the Section 14(a) Class and APPROVES his selection of Pomerantz LLP to serve as Lead Counsel, and (2) APPOINTS Tweito Lead Plaintiff for the Section 10(b) Class and APPROVES his selection of Kessler Topaz Meltzer & Check, LLP to serve as Lead Counsel.  McIntosh and Simmons' requests to be appointed Lead Plaintiff are DENIED.

IT IS SO ORDERED.

Dated: September 8, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

9