# EXHIBIT 4

## Investor Alerts and Bulletins

# What You Need to Know About SPACs – Updated Investor Bulletin

**May 25, 2021**

*The SEC's Office of Investor Education and Advocacy (OIEA) wants to educate investors about investing in SPACs.*

You may have heard the term SPAC recently referred to in the financial or other news.

This bulletin provides a brief overview for investors of important concepts when considering investing in a SPAC, both (1) when the SPAC is in its *shell company* stage and (2) at the time of and following the initial business combination (i.e., when the SPAC acquires or merges with an operating company). It is important to understand how to evaluate an investment in a SPAC as it moves through these stages, including the financial interests and motivations of the SPAC sponsors and related persons.

## What's a SPAC?

"SPAC" stands for *special purpose acquisition company*—what are also commonly referred to as blank check companies. SPACs have become a popular vehicle for various transactions, including transitioning a company from a private company to a publicly traded company. Certain market participants believe that, through a SPAC transaction, a private company can become a publicly traded company with more certainty as to pricing and control over deal terms as compared to traditional initial public offerings, or IPOs.

These types of transactions, most commonly where a SPAC acquires or merges with a private company, occur after, often many months or more than a year after, the SPAC has completed its own IPO. Unlike an operating company that becomes public through a traditional IPO, however, a SPAC is a *shell company* when it becomes public. This means that it does not have an underlying operating business and does not have assets other than cash and limited investments, including the proceeds from the IPO.

> **Traditional IPO.** Traditionally, a company starts and develops a business. Eventually, that company may grow to a scale that it determines that it has the resources and structures in place for the IPO process as well as the subsequent SEC reporting requirements and elects to seek to raise capital in the public markets, thereby becoming a public company. Public companies may list their securities on an exchange.

If you invest in a SPAC at the IPO stage, you are relying on the management team that formed the SPAC, often referred to as the *sponsor(s)*, as the SPAC looks to acquire or combine with an operating company. That acquisition or combination is known as the *initial business combination*. A SPAC may identify in its IPO *prospectus* a specific industry or business that it will target as it seeks to combine with an operating company, but it is not obligated to pursue a target in the identified industry.

Once the SPAC has identified an *initial business combination* opportunity, its management negotiates with the operating company and, if approved by SPAC shareholders (if a shareholder vote is required), executes the business combination. This transaction is often structured as a reverse merger in which the operating company

merges with and into the SPAC or a subsidiary of the SPAC. While there are various ways to structure the initial business combination, the combined company following the transaction is a publicly traded company and carries on the target operating company's business.

In evaluating an investment in a SPAC, there are a number of issues to consider.

## What do I need to know before the initial business combination?

***Prospectus and reports. Whether you are investing in a SPAC by participating in its IPO or by purchasing its securities on the open market following an IPO, you should carefully read the SPAC's IPO prospectus as well as its** periodic **and** current reports **filed with the SEC pursuant to its ongoing reporting obligations.*** It is important to understand the terms of your investment. While SPACs often are structured similarly and may be subject to certain minimum exchange listing requirements, it is important to understand the specific features of an individual SPAC, including the equity interests held by the sponsor, which may have been obtained for nominal consideration. In addition, given that the SPAC does not have an operating history to evaluate, it is important to review the business background of SPAC management and its sponsors. You can review a SPAC's IPO prospectus and periodic and current reports in the SEC's EDGAR database.

***Trust account.*** Typically, SPAC IPO proceeds, less proceeds used for certain fees and expenses, are held in a *trust account*. Similar to an escrow arrangement when buying a house, this money is held by a third party until the transaction is consummated—in the case of a SPAC, the initial business combination—or the SPAC is liquidated for not having completed an initial business combination within a certain period of time. ***SPACs generally invest the proceeds in relatively safe, interest-bearing instruments, but you should carefully review the specific terms of an offering as there is no rule requiring that the proceeds only be invested in those types of instruments.*** SPACs often use the interest on trust account investments to pay taxes.

In connection with a business combination, a SPAC provides its investors with the opportunity to redeem their shares rather than become a shareholder of the combined company. If the SPAC does not complete a business combination, shareholders are beneficiaries of the trust and entitled to their *pro rata* share of the aggregate amount then on deposit in the trust account.

> ***Pro rata share of trust account.*** One thing to keep in mind is that if you purchased your shares on the open market, you are only entitled to your *pro rata* share of the trust account and not the price at which you bought the SPAC shares on the market. For example, if a SPAC had an IPO at $10 per share, but you bought 100 SPAC shares on the open market at $12 per share, the shares you purchased are associated with a trust account balance of about $10 per share, so your share of the trust account would be worth about $1,000 (not the $1,200 you paid for your shares).

You should review the IPO prospectus of the SPAC to understand the terms of the trust account, including your redemption rights and the circumstances in which cash may be released from the account.

***Trading price.*** In the IPO, SPACs are typically priced at a nominal $10 per unit. Unlike a traditional IPO of an operating company, the SPAC IPO price is not based on a valuation of an existing business. When the units, common stock and warrants (more below) begin trading, their market prices may fluctuate, and these fluctuations may bear little relationship to the ultimate economic success of the SPAC.

***Period to consummate the initial business combination.*** A SPAC will typically provide for a two-year period to identify and complete an initial business combination transaction. However, some SPACs have opted for shorter periods, such as 18 months. The SPAC's governing instruments may permit it to extend that time period. If a SPAC seeks to extend the time period, it may be required to seek shareholder approval. If a SPAC lists its securities on an exchange, it is required to complete an initial business combination within three years of its IPO. IPO proceeds are held in the trust account until a SPAC consummates a business combination or liquidates. If the SPAC is liquidated, shareholders at the time of the liquidation will be entitled to their *pro rata* share of the aggregate amount then on deposit in the trust account.

*With an increasing number of SPACs seeking to acquire operating businesses, it is important to consider whether attractive initial business combinations will become scarcer.*

*Warrants.*  A SPAC IPO is often structured to offer investors a unit of securities consisting of (1) shares of common stock and (2) *warrants*.  A warrant is a contract that gives the holder the right to purchase from the company a certain number of additional shares of common stock in the future at a certain price, often a premium to the current stock price at the time the warrant is issued.

The SPAC unit will trade for some time after the IPO.  Sometime after the IPO, the SPAC common stock and warrants may begin trading on an exchange separately with their own unique trading symbols.  Often, the SPAC will file a current report on Form 8-K and issue a press release letting investors know when separate trading may commence.  Investors who purchase SPAC securities after the IPO on the open market should be aware of whether they are purchasing units, common stock or warrants.

*The terms of warrants may vary greatly across different SPACs, and it is important to understand the terms when investing.  Terms of the warrants can include how many shares the investor has the right to purchase, the price at which and period during which shares may be purchased, the circumstances under which the SPAC may be able to redeem the warrants, and when the warrants will expire.  To learn more about the specific terms, investors should review the IPO prospectus of the particular SPAC.*

> *Warrant redemptions.*  A SPAC can redeem warrants pursuant to their terms.  Warrant terms can vary greatly among different SPACs.  Knowing when your warrants can be redeemed and whether they are being redeemed can be the difference between a worthwhile and a worthless investment.  *If you miss the notice of redemption and fail to exercise within the given period, your warrants can become essentially worthless. You may not in all cases directly receive timely notice of warrant redemptions and should consult your financial professional and the SPAC's filings to find out how such notices can be obtained.  You should also regularly review the SPAC's filings in the SEC's EDGAR database to stay well-informed about warrant redemptions.*

## What do I need to know at the time of the initial business combination?

*Share redemption and vote.* Once the SPAC has identified an initial business combination opportunity, the shareholders of the SPAC will have the opportunity to redeem their shares and, in many cases, vote on the initial business combination transaction.  Each SPAC shareholder can either remain a shareholder of the company after the initial business combination or redeem and receive its pro rata amount of the funds held in the trust account.

*This is an important investor consideration as the SPAC changes from essentially a trust account into an operating company.*  As an investor, depending on how you view the prospective initial business combination and its valuation, you can decide whether to redeem your shares for a pro rata share of the aggregate amount then on deposit in the trust account or remain an investor in the combined company going forward.

*Proxy, information or tender offer statement.*  If the SPAC seeks shareholder approval of the initial business combination, it will provide shareholders with a proxy statement in advance of the shareholder vote.  In cases where the SPAC does not solicit the approval of public shareholders, because certain shareholders, such as the sponsor and its affiliates, hold enough votes to approve the transaction, it will provide shareholders with an *information statement* in advance of the completion of the initial business combination.

The proxy or information statement will contain important information about the business of the company that the SPAC wants to acquire, the financial statements of the company, interests of the parties to the transaction, including the sponsor of the SPAC, and the terms of the initial business combination transaction, including the capital structure of the combined entity.

If the transaction is completed and you decide that you do not want to remain a shareholder, you will be provided with the opportunity to redeem your shares of common stock for your pro rata share of the aggregate amount then

on deposit in the trust account by taking the steps outlined in the proxy or information statement.

If a SPAC is not required to provide shareholders with a proxy or information statement (for example, when a SPAC is not required to obtain shareholder approval of the transaction), you will receive a *tender offer statement* that contains information about the target business and your redemption rights.

**You can review a SPAC's proxy, information or tender offer statement in the SEC's EDGAR database.**

**The interests of the sponsor.**   SPAC sponsors generally purchase equity in the SPAC at more favorable terms than investors in the IPO or subsequent investors on the open market.  As a result, investors should be aware that although most of the SPAC's capital has been provided by IPO investors, the sponsors and potentially other initial investors will benefit more than investors from the SPAC's completion of an initial business combination and may have an incentive to complete a transaction on terms that may be less favorable to you.

In addition, the SPAC may require additional financings to fund the initial business combination, and those financings often involve the sponsors.  As a result, the interests of the sponsors may further diverge from your interests.  For example, additional funding from the sponsors may dilute your interest in the combined company or may be provided in the form of a loan or security that has different rights from your investments.

To learn more about a sponsor's interests in a SPAC, you should review the "Principal Stockholders" and "Certain Relationships and Related Party Transactions" sections of a SPAC's IPO prospectus.  You can learn more about an initial business combination and the sponsor's interest in it from the proxy statement, information statement or tender offer statement.

## Additional Resources

To better understand celebrity involvement in SPACs, see our Investor Alert.

To learn more about initial public offerings, see our Investor Bulletin.

For additional investor educational information, see the SEC's website for individual investors, Investor.gov.

Call OIEA at 1-800-732-0330, ask a question using this online form, or email us at Help@SEC.gov.

Receive Investor Alerts and Bulletins from OIEA email or RSS feed.  Follow OIEA on Twitter.  Like OIEA on Facebook.

This bulletin represents the views of the staff of the Office of Investor Education and Advocacy.  It is not a rule, regulation, or statement of the Securities and Exchange Commission (the "Commission").  The Commission has neither approved nor disapproved its content.  This bulletin, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or additional obligations for any person.

*Modified: May 25, 2021*