# EXHIBIT 8

EX-2.1 2 ea137148ex2-1_newholdinves.htm AGREEMENT AND PLAN OF MERGER DATED AS OF MARCH 5, 2021, BY AND AMONG NEWHOLD INVESTMENT CORP., NHIC SUB INC. AND EVOLV TECHNOLOGIES, INC

**Exhibit 2.1**

*Execution Version*

AGREEMENT AND PLAN OF MERGER

by and among

EVOLV TECHNOLOGIES, INC.,

NEWHOLD INVESTMENT CORP.

and

NHIC SUB INC.

Dated as of March 5, 2021

1.3  <u>Effective Time</u>. As soon as practicable following the Closing but on the Closing Date, the Company and Parent will cause a certificate of merger relating to the Merger (the "**Certificate of Merger**") to be executed, acknowledged and filed with the Secretary of State of the State of Delaware as provided in Section 251 of the DGCL. The Merger shall become effective at the time when the Certificate of Merger has been duly filed with and accepted by the Secretary of State of the State of Delaware or at such later date and time as may be agreed by the Parties in writing and specified in the Certificate of Merger (such date and time, the "**Effective Time**").

1.4  <u>The Certificate of Incorporation of the Surviving Company</u>. At the Effective Time, the certificate of incorporation of the Company, as in effect immediately prior to the Effective Time, shall be amended and restated in its entirety as set forth on <u>Exhibit B</u> attached hereto, and as so amended, shall be the certificate of incorporation of the Surviving Company, until thereafter supplemented or amended in accordance with its terms and the DGCL (the "**Surviving Company Certificate of Incorporation**").

1.5  <u>The Bylaws of the Surviving Company</u>. At the Effective Time, the bylaws of the Company, as in effect immediately prior to the Effective Time, shall be the bylaws of the Surviving Company until thereafter supplemented or amended in accordance with its terms, the Surviving Company Certificate of Incorporation and applicable Law (the "**Surviving Company Bylaws**").

1.6  <u>Directors of the Surviving Company</u>. The Parties shall take all necessary action prior to the Effective Time such that (a) each director of the Company in office immediately prior to the Effective Time shall cease to be a director immediately following the Effective Time (including by causing each such director to tender an irrevocable resignation as a director effective as of the Effective Time) and (b) each person set forth in Section 1.6 of the Company Disclosure Letter shall be appointed to the board of directors of the Surviving Company, effective as of immediately following the Effective Time, and as of such time, shall be the only directors of the Surviving Company (including by causing the Company Board to adopt resolutions prior to the Effective Time that expand or decrease the size of the Company Board, as necessary, and appoint such persons to the vacancies resulting from the incumbent directors' respective resignations, or if applicable, the newly created directorships upon any expansion of the size of the Company Board). Each person appointed as a director of the Surviving Company pursuant to the preceding sentence shall remain in office as a director of the Surviving Company until his or her successor is elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the Surviving Company Certificate of Incorporation and the Surviving Company Bylaws.

1.7  <u>Officers of the Surviving Company</u>. The Parties shall take all necessary actions so that the officers of the Company at the Effective Time shall, from and after the Effective Time, be the officers of the Surviving Company until their successors have been duly elected or appointed and qualified or until their earlier death, resignation or removal in accordance with the Surviving Company Certificate of Incorporation and the Surviving Company Bylaws.

(b)  Treatment of Company Stock. At the Effective Time (and, for the avoidance of doubt, following the Convertible Notes Conversion, the Preferred Stock Conversion and the Company Warrant Settlement), by virtue of the Merger and without any action on the part of any holder thereof:

(i)  Company Common Stock. Each share of Company Common Stock (including Company Common Stock resulting from the Convertible Notes Conversion, the Preferred Stock Conversion and the Company Warrant Settlement) that is issued and outstanding immediately prior to the Effective Time, other than the Company Dissenting Shares, shall thereupon be converted into the right to receive, and the holder of such share of Company Stock shall be entitled to receive, (i) a number of shares of Parent Common Stock equal to the Exchange Ratio, subject to rounding pursuant to Section 2.2(f) (the "**Per Share Merger Consideration**") and (ii) a number of Earn-Out Shares in accordance with Section 2.8;

(ii)  Company Treasury Stock. Each share of Company Stock held in the treasury of the Company ("**Treasury Shares**") immediately prior to the Effective Time shall be cancelled without any conversion thereof and no payment or distribution shall be made with respect thereto; and

(iii)  Company Dissenting Share. Each of the Company Dissenting Shares issued and outstanding immediately prior to the Effective Time shall be cancelled and cease to exist in accordance with Section 2.6(a) and shall thereafter represent only the right to receive the applicable payments set forth in Section 2.6(a).

For the avoidance of doubt, the number of shares of Parent Common Stock issued in accordance with this Section 2.1 shall not exceed 125,000,000 (which number shall exclude any Earn-Out Shares issued in accordance with Section 2.8).

(c)  Treatment of Company Options.

(i)  Company Options. At the Effective Time, each outstanding option to purchase shares of Company Common Stock (a "**Company Option**") under the Stock Plan, whether vested or unvested, shall, automatically and without any required action on the part of the holder thereof, cease to represent an option to purchase shares of Company Common Stock and shall be converted into (i) an option to purchase such number of shares of Parent Common Stock determined in accordance with this Section 2.1(c) (each, an "**Assumed Option**"), and (ii) the right to receive a number of Earn-Out Shares in accordance with Section 2.8. Each Assumed Option shall represent an option to purchase a number of shares of Parent Common Stock at such exercise price, in each case, determined as follows and as set forth in the Allocation Statement:

(A)  The number of shares of Parent Common Stock eligible for purchase under the Assumed Option shall be equal to (rounded down to the nearest whole number): (I) the number of shares of Company Common Stock subject to such Company Option immediately prior to the Effective Time, *multiplied by* (II) the Exchange Ratio.

5

"**Parent Class B Common Stock**" means Parent's Class B Common Stock, par value $0.0001 per share.

"**Parent Common Share Price**" has the meaning set forth in Section 2.8(d).

"**Parent Common Stock**" means Parent Class A Common Stock and Parent Class B Common Stock.

"**Parent Disclosure Letter**" has the meaning set forth in ARTICLE IV.

"**Parent ESPP**" has the meaning specified in the Recitals.

"**Parent Financial Statements**" has the meaning set forth in Section 4.5(i).

"**Parent Incentive Plan**" has the meaning specified in the Recitals.

"**Parent Incentive Plan Proposal**" has the meaning set forth in Section 7.1(c).

"**Parent Organizational Documents**" means the Parent Certificate of Incorporation and Parent's bylaws, in each case as may be amended from time to time in accordance with the terms of this Agreement.

"**Parent Preferred Stock**" has the meaning set forth in Section 4.2(a).

"**Parent Private Placement Warrant**" has the meaning set forth in Section 4.2(b).

"**Parent Public Warrant**" has the meaning set forth in Section 4.2(b).

"**Parent Reports**" has the meaning set forth in Section 4.2(a).

"**Parent Restated Bylaws**" means that certain second amended and restated bylaws of Parent, in form and substance reasonably acceptable to Parent and the Company, which shall in include customary lock-up restrictions for a period of 180 days following the Closing on those shares of Parent Common Stock issued at or in connection with Closing (i) which constitute Per Share Merger Consideration or (ii) which are issued to directors, officers and employees of Parent upon the settlement or exercise of stock options or other equity awards outstanding as of immediately following the Closing in respect of awards of Company equity interests outstanding as of immediately prior to the Closing.

"**Parent Restated Charter**" means that certain second amended and restated certificate of incorporation of Parent, in form and substance reasonably acceptable to Parent and the Company.

"**Parent Stock**" means Parent Common Stock or Parent Preferred Stock.

"**Parent Stockholder**" means a holder of shares of Parent Stock.

"**Parent Stockholder Approval**" has the meaning set forth in Section 4.3(b).