# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GERALD RABY, Individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>EVOLV TECHNOLOGIES HOLDINGS, INC. F/K/A NEWHOLD INVESTMENT CORP., PETER GEORGE, MARIO RAMOS, MARK DONOHUE, KEVIN CHARLTON, and ADAM DEUTSCH,<br><br>　　　　　　　　　Defendants. | Case No. 1:24-cv-10761-ADB |

**ROBERT FALK'S [PROPOSED] REPLY MEMORANDUM OF LAW IN RESPONSE TO THE OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM'S <u>OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF</u>**

Lead Plaintiff Movant Robert Falk ("Falk") submits this reply in further support of his motion for appointment as lead plaintiff and approval of counsel (Dkt. No. 17) and in response to the opposition to his motion filed by the Oklahoma Police Pension and Retirement System (the "Retirement System") (Dkt. No. 24) (hereinafter the "RS Opp."). Falk has the largest financial interest and is the presumptively most adequate plaintiff to be appointed as lead plaintiff. The Retirement System attempts to rebut the presumption by leveling several specious and speculative attacks on Falk's adequacy to represent the class. The attacks should be rejected, Falk should be appointed as lead plaintiff, and his selection of counsel should be approved.

## I.      FALK IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

As demonstrated in Falk's opposition to the competing lead plaintiff motions (Dkt. No. 23), Falk has the largest financial interest, claiming a loss of $675,707—which is more than triple the Retirement System's loss of $222,469. *Id.* at 4. Since Falk also filed a timely motion and made the required preliminary showing of adequacy and typicality, Falk is the presumptively most adequate plaintiff to be lead plaintiff. *Id.* at 3-4.

## II.     THE RETIREMENT SYSTEM FAILED TO REBUT THE PRESUMPTION THAT FALK IS THE MOST ADEQUATE PLAINTIFF

The presumption that Falk is the most adequate plaintiff may be rebutted only "upon proof" that he (1) "will not fairly and adequately protect the interests of the class," or (2) is "subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). To provide the required "proof," the Retirement System must offer "specific evidence," and cannot rely on "mere speculation," or hypothetical conflicts. *See Bowers v. Tesaro Inc.*, No. 18-cv-10086, 2018 WL 2089358, at *3 (D. Mass. May 4, 2018) (collecting cases).

The Retirement System leveled several attacks against Falk in the hopes that at least one sticks. The Retirement System argues incorrectly that Falk is not a class member, that Falk is subject to unique reliance defenses because he acquired shares in the SPAC merger and because he used to work for Evolv Technologies, Inc. ("Legacy Evolv"), and on the purported basis that Falk did not "purchase" the Defendant Company's[1] stock. Each attack is legally and factually baseless and should be rejected.

## A.    Falk Is A Class Member

The Retirement System argues that Falk is not a member of the class because he did not acquire securities that were publicly traded on the NASDAQ. The Retirement System is incorrect—Falk acquired publicly traded Company stock. *See* RS Opp. at 6-7. The Retirement System correctly points out that the class definition in this action is limited to persons that acquired the Company's securities "publicly traded on the NASDAQ" and that Falk acquired his stock on July 16, 2024. *Id.* The Retirement System goes wrong when it claims that the Company's stock "did not become publicly traded on [the] NASDAQ until July 19, 2021." *See* RS Opp. at 6-7. Based on this mistake of fact, the Retirement System incorrectly concludes that Falk did not acquire a publicly traded security.

The Company stock was publicly traded on the NASDAQ *throughout* the class period, which spans June 28, 2021 through March 13, 2024. *See* Dkt. No. 1, ¶ 1. And Falk acquired the Company's stock *on July 16, 2021*. While technically the stock would have been "NewHold

---

[1]    The "Company" is defined in the complaint as "Evolv Technologies Holdings, Inc. f/k/a NewHold Investment Corp." *See* Dkt. No. 1 at 1. The Retirement System similarly defines "Company" in its opposition as "NewHold Investment Corp. n/k/a Evolv Technologies Holdings, Inc." *See* Retirement System Opp. at 1 n.3. The Company is one persistent publicly-traded company that changed its name during the class period on July 19, 2021 after it acquired Legacy Evolv.

Investment Corp." (or "NewHold") stock at the time, since the Company's name change had not yet been implemented, the class definition includes persons that acquired NewHold (*i.e.*, "Company") stock in the period before the name change on or after June 28, 2021. Accordingly, there is no question that Falk acquired the publicly traded stock of the Company and is a member of the class.

The Retirement System fails to account for the fact that the Company changed its name, the ticker symbol for its shares and, the CUSIP number for its stock on July 19, 2021. *See* Dkt. No. 1 at ¶ 10 (prior to the July 19, 2021 SPAC merger, the Company's shares traded on the NASDAQ under the symbol "NHIC"); *see also* RS Opp. at 5 (explaining the change). The Retirement System erroneously claims that "New Evolv shares did not become publicly traded on NASDAQ until July 19, 2021." *See* RS Opp. at 6. In fact, "New Evolv" shares *were* publicly traded prior to July 19, 2021, but they traded under the Company's old name and symbol. Further undermining the Retirement System's argument is that it defined "New Evolv" to include "NewHold Investment Corp." in its opposition. *See* RS Opp. at 1 n.3. July 19, 2021. Thus, there should be no question that Falk is a class member.

> **B.      Falk Is Not Subject To Unique Reliance-Based Defenses Because He acquired Stock In The Merger**

The Retirement System argues that Falk is subject to a unique reliance defense because he acquired his shares through the merger of NewHold and Legacy Evolv, rather than by purchasing them on the open market. *See* RS Opp. at 10-13. It is wrong.

The one in-Circuit case that the Retirement System cites to support its argument ultimately held that "the fact that some of lead plaintiffs here acquired their stock through a merger is not sufficient reason for denying class certification for a lack of typicality." *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 390 (D. Mass. 2011) (cited in RS Opp. at

13). Other courts agree. *See, e.g.*, *Loftus v. Primero Mining Corp.*, No. 16-cv-01034, 2016 WL 11741138, at *6 (C.D. Cal. May 12, 2016) ("The Court does not find the fact that Wulff and Cook acquired their Primero shares in connection with mergers—rather than purchasing them on the open market—makes Wulff and Cook atypical or subject to unique defenses."); *In re Alcatel Alsthom*, 1999 WL 33756548, at *7 (E.D. Tex. June 7, 1999) (rejecting argument that movants that acquired shares in a merger exchange "are not entitled to a presumption of reliance"). The same result is warranted with respect to Falk. To be sure, aside from him being presumptively the most adequate lead plaintiff under the statute, his knowledge would benefit the Class, including the Retirement System.

In addition, any such defense would not be unique to Falk because, as the Retirement System *admits*, individuals that acquired their shares through the merger (like Falk) were the majority shareholders following the merger. *See* RS Opp. at 6 ("Legacy Evolv shareholders were expected to have a majority of the voting power"). As such, even if there were such a defense, it would not be *unique* to Falk and therefore not disqualifying. *See Primero Mining*, 2016 WL 11741138, at *7 ("Even assuming Wulff and Cook are subject to a defense based on their acquisition of shares, the defense does not appear to be 'unique' among members of the Class."). In fact, that the Retirement System is willing to jettison the claims of a large portion of the class in a bid to be appointed as lead plaintiff raises serious questions regarding the Retirement System's adequacy to represent the class.

  **C.**  **Falk Is Not Subject To Unique Defenses On The Basis That He Worked For Legacy Evolv More Than 2 Years Prior To The Start Of The Class Period And Spoke Publicly About Security Systems**

The Retirement System argues that "Falk's history with the Company and prior public statements regarding Evolv Express" raise "[q]uestions regarding Falk's reliance on the false and

misleading statements alleged in this case." RS Opp. at 13. This is inaccurate speculation and does not amount to "proof" that Falk is inadequate.

Falk never worked for the Company defendant in this action and left the private Legacy Evolv long before it was acquired by the Company and long before the start of the class period. Falk left Legacy Evolv in early 2019, which is more than 2 years before June 28, 2021, the date of the first false statement alleged in the complaint, and more than 2 years before the Company acquired Legacy Evolv. *See* Dkt. No. 1, ¶¶ 10, 21. As the Retirement System also recognizes, Falk left Legacy Evolv more than 6 months prior to Legacy Evolv's introduction of the "Evolv Express" product, which is the product at the center of the allegations in this case. *See* RS Opp. at 10. Again, the Retirement System makes an argument that is not factually accurate.

Despite this, the Retirement System *speculates* that "Falk would have had ample access to non-public information regarding the [Evolv Express's] actual capabilities." *See* RS Opp. at 14. But the Retirement System provides no proof in seeking to overcome the presumption that Falk is the most adequate lead plaintiff. In fact, Falk did not have such non-public information. Falk worked in sales, not in product development. *See* RS Opp. at 2; Falk Decl., [2] ¶ 2. Falk did not work on the development of Evolv Express, did not receive non-public information about the capabilities of Evolv Express, and did not interact with any prototype of Evolv Express. *See* Falk Decl., ¶ 3. The fact that Falk praised a different product—the Evolv Edge—*in 2018* while working for Legacy Evolv does not change the analysis. *See* RS Opp. at 14 (claiming "Falk publicly touted the Evolv *system* over the capabilities of metal detectors" without clarifying that the "system" was the Evolv Edge, not the Evolv Express) (emphasis added); Falk Decl., ¶ 3.

---

[2] Declaration Of Robert Falk In Support Of His Reply Memorandum Of Law In Response To The Oklahoma Police Pension And Retirement System's Opposition To Competing Motions For Lead Plaintiff, filed concurrently herewith, attached to this Reply as Exhibit 1.

5

The Retirement System also claims that Falk's "potential relationships with current officers of the Company would significantly interfere with Falk's ability to prosecute this case on behalf of the Class." RS Opp. at 17. This argument is counterintuitive. Falk stepped up to be a lead plaintiff of his own volition. And the Retirement System has not and cannot establish the existence of any relationship with the Defendant executives. Falk Decl., ¶ 4. The mere fact that Falk follows and is followed by the two non-Defendant founders of Legacy Evolv on Twitter n/k/a X is determinative of nothing. *See* RS Opp. at 13 n.23. People follow individuals and companies on social media for various reasons including to obtain current information about them. It does not establish a business or relationship with them simply by following them. In any event, their social media contact is an artifact of Falk's prior employment at Legacy Evolv. Falk Decl., ¶ 5. Accordingly, the Retirement System has failed to prove that Falk's former employment at Legacy Evolv or relationship to related individuals renders him subject to any unique defenses.

The Retirement System also takes issue with one of Falk's comments on the website LinkedIn where Falk stated that "100% security does not exist" and explained that there is an implicit trade-off between security system sensitivity and the propensity for false alarms. *See* RS Opp. at 16. This statement is a non-controversial publicly known fact about security systems. Moreover, this statement does not imply that Falk believes the Company accurately represented Evolv Express's capabilities. There is, moreover, no basis for the Retirement System to claim this statement "implies that [Falk] did not rely or care about the [Company's] alleged misrepresentations." RS Opp. at 16. As such, the Retirement System has also failed to prove that

Falk's public statements about security systems render him subject to any unique defenses and the Retirement System has failed to rebut the presumption that Falk is the most adequate plaintiff.[3]

### D.    Falk "Purchased" Company Stock

The Retirement System argues that Falk's acquisition of Company stock through the merger does not amount to a "purchase," which is required to support a securities fraud claim. *See* RS Opp. at 7-9. Acquiring shares in a stock-for-stock merger as Falk did here, qualifies as a "purchase" and the Retirement System's authority does not convincingly indicate otherwise.

The Exchange Act broadly states "[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase, ***or otherwise acquire***." *See* 15 U.S.C. § 78c(a)(13) (emphasis added). The Supreme Court has explicitly held that "shareholders 'purchased' shares in the new company by exchanging them for their old stock." *Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*, 393 U.S. 453, 467-68 (1969). The First Circuit has recognized the holding of *National Securities* in a decision discussing different legal issues. *See Versyss Inc. v. Coopers & Lybrand*, 982 F.2d 653, 657-58 (1st Cir. 1992) (stating in the context of a merger of NDS and Contel, "[i]t is surely true under *National Securities* that the NDS stockholders would be treated for purposes of section 10(b) as having 'sold' their NDS stock and 'purchased' Contel stock in return"). The Ninth Circuit, applying *National Securities*, similarly held "[w]e construe the phrase 'purchase or sale' of securities to include a stock-for-stock merger." *Madden v. Cowen & Co.*, 576 F.3d 957, 965–66 (9th Cir. 2009). Here, Falk exchanged Legacy Evolv stock for Company stock, and under these authorities, he thereby "purchased" Company stock.

---

[3]    Falk's expertise regarding security systems may prove to be a boon to the class as he aids counsel in prosecuting this case. Again, the Retirement System's motives in seeking to disqualify Falk undermines its own ability to do what is in the best interest of the class.

While the Retirement System admits that "a share exchange accompanying the merger of two separate and distinct corporations can constitute a 'purchase or sale,'" RS Opp. at 7, it also submits purportedly contrary authority holding that stock dividends or other stock distributions do not qualify as a "purchase or sale." *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 257 (S.D.N.Y. 2005) ("receipt of a dividend does not qualify as a purchase") (cited in RS Opp. at 7); RS Opp. at 7 n.18 (citing *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23-cv-1769, 2023 WL 6458930, at *4 (S.D.N.Y. Oct. 4, 2023) and *In re Mirant Corp. Sec. Litig.*, No. 02-cv-1467-RWS, 2008 WL 11334395, at *9 n.15 (N.D. Ga. Aug. 5, 2008) for the proposition that dividends are not purchases). However, these cases are not applicable because dividends and other distributions do not involve a stock-for-stock merger, which is the issue present here. All of these cases are, moreover, out-of-Circuit. To the extent they can be read to deviate from *National Securities* and *Coopers & Lybrand*, the cases should be disregarded.

The Retirement System also relies on other out-of-Circuit authority to argue that a "merger with a shell company" implemented "merely for 'corporate restructuring'" and where there is "no significant change in the investment represented by the stock" is not a "purchase." *See* RS Opp. at 8-9. Besides being out-of-Circuit, none of this authority is applicable because the merger of NewHold and Legacy Evolv was not implemented merely for corporate restructuring and there was a substantial "change in the investment represented by the stock" following the merger. The purpose of a SPAC merger is to take a private company public, which is more than mere "restructuring." The purported purpose here was to combine NewHold's status as a publicly traded company with Legacy Evolv's technology, each bringing something unique to the table in the merger to the combined Company's purported benefit. This is more than "restructuring."

8

Moreover, there was a substantial "change in the investment represented by [Falk's] stock" since Falk exchange non-publicly traded "Legacy Evolv" shares for publicly traded combined "Company" shares. The Retirement System also acknowledges that the ownership of the surviving entity included both NewHold and former Legacy Evolv shareholders, which is also a "change in the investment represented by [Falk's] stock." *See* RS Opp. at 9 (admitting Legacy Evolv shareholders would have "a majority of the voting power" following the merger, but not all of it). Notably, the Retirement System does not cite any authority in which shares acquired in a SPAC merger were deemed not a purchase.

Accordingly, Falk's stock-for-stock exchange in the merger is a "purchase" and the Retirement System has failed to rebut the presumption that Falk is the most adequate plaintiff.

## III.    CONCLUSION

Since Falk is the presumptively most adequate plaintiff and the Retirement System has failed to rebut the presumption, Falk should be appointed as Lead Plaintiff and his selection of Glancy Prongay & Murray LLP as Lead Counsel and Andrews DeValerio LLP as Liaison Counsel for the class should be approved.

Respectfully submitted,

DATED: June 17, 2024                    **ANDREWS DEVALERIO LLP**

By: _s/ Daryl Andrews_
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
Email: glen@andrewsAndrews.com
        daryl@andrewsAndrews.com

*Liaison Counsel for Robert Falk and Proposed*
*Liaison Counsel for the Class*

9

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Robert Falk and Proposed Lead*
*Counsel for the Class*

10

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GERALD RABY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EVOLV TECHNOLOGIES HOLDINGS, INC. F/K/A NEWHOLD INVESTMENT CORP., PETER GEORGE, MARIO RAMOS, MARK DONOHUE, KEVIN CHARLTON, and ADAM DEUTSCH, <br><br> Defendants. | Case No. 1:24-cv-10761-ADB |

**DECLARATION OF ROBERT FALK IN SUPPORT OF HIS REPLY MEMORANDUM OF LAW IN RESPONSE TO THE OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM'S OPPOSITION TO <u>COMPETING MOTIONS FOR LEAD PLAINTIFF</u>**

DocuSign Envelope ID: 3BA2D5E7-9FDE-45BC-AA0A-77A106EF5567

I, Robert Falk, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I submit this declaration in further support of my request to be appointed lead plaintiff and to respond to certain statements made by the Oklahoma Police Pension and Retirement System (the "Retirement System") in its bid for a lead counsel position. I am informed of and understand the requirements and duties imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and maintain that I am ideally suited to serve as lead plaintiff in this action.

2.     I have over 25 years of experience in the detection and security inspection industries. I hold degrees in Mechanical Engineering and International Business Management. I am currently retired, but I formerly worked for Evolv Technologies, Inc. ("Legacy Evolv") as the Director of International Sales before leaving *in early 2019*.

3.      Contrary to the assertions made by the Retirement System, I do not have nor did I rely on any non-public information regarding the Evolv Express product. I did not work on the development of Evolv Express. I am not aware of any non-public information I received about the capabilities of Evolv Express. I did not interact with any prototype of Evolv Express. While I was with Legacy Evolv, their primary product was the Evolv Edge and that is the product I sold.

4.     Also, contrary to the suggestion made by the Retirement System, I do not have an ongoing relationship with any of the defendant executives in this action. I have never personally met any of the executive defendants. To the best of my recollection, Mr. George was the Chief Executive Officer of Legacy Evolv for a couple of months at the end of my time at Legacy Evolv, and he organized some conference calls with me and other salespeople. I do not presently have and never had an ongoing close relationship with Mr. George. As I am now retired, I am not beholden to the defendant executives. I am pursuing this action because I believe the defendant executives misled me and the public and believe that my insight will benefit the class.

1

5.      I did interact with the founders of Legacy Evolv, Michael Ellenbogen and Anil Chitkara, frequently while I worked there. However, I do not have an ongoing close relationship with them. I followed Michael Ellenbogen and Anil Chitkara on Twitter n/k/a X when I was working for Legacy Evolv. There is nothing unusual about this practice. And my prior interaction with Michael Ellenbogen and Anil Chitkara will not deter me from seeking to maximize the recovery for the class if I am appointed lead plaintiff.

6.      I believe that the securities class action against Evolv Technologies Holdings, Inc. f/k/a NewHold Investment Corp. ("Evolv") is meritorious and should be led by an investor that is committed to maximizing the recovery on behalf of the class. I suffered a substantial loss on my investments in Evolv securities, and I have the ability, competency and time to oversee this litigation to a successful conclusion. It is for this reason that I decided to seek appointment as lead plaintiff in this action.

7.      I understand the requirements and duties imposed by the PSLRA. I understand the responsibilities of being a lead plaintiff, including my fiduciary duty to the class. I understand that if I am appointed as lead plaintiff, I will owe a duty to all members of the putative class to provide fair and adequate representation and to work with counsel to obtain the best possible recovery in good faith and with vigorous advocacy. I am committed to the prosecution of this case and will remain actively involved.

8.      I have selected counsel in this action based upon their experience and am confident in their ability to work with me to protect the interest of the class. I understand that one of my primary responsibilities will be overseeing counsel and thereby ensuring that the litigation is handled efficiently, and that the resulting fees and expenses are fair and reasonable, relative to the size, complexity, and risk of the litigation. I will continue to supervise counsel and actively oversee

2

the prosecution of this action for the benefit of the class by, among other things, reviewing pleadings, instructing counsel, and/or attending hearings, as necessary.

9.      I understand that, as the lead plaintiff in this action, I will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 17, 2024.

*Robert Falk*

_____

Robert Falk

3