# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRCT OF MASSACHUSETTS**

| | |
|---|---|
| DOUGLAS BUCHAN, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>EVOLV TECHNOLOGIES HOLDINGS, INC., PETER GEORGE, and MARK DONOHUE,<br><br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION**<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Douglas Buchan ("Plaintiff"), by and through his counsel, alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based on, among other things, the independent investigation of counsel. This investigation includes, but is not limited to, a review and analysis of: (i) public filings by Evolv Technologies Holdings, Inc. ("Evolv" or the "Company") with the Securities and Exchange Commission ("SEC"); (ii) transcripts of Evolv conferences with investors and analysts; (iii) press releases and media reports issued and disseminated by the Company; (iv) analyst reports concerning Evolv; and (v) other public information and data regarding the Company.

## NATURE OF THE ACTION

1. This is a class action on behalf of all persons and entities that purchased or acquired Evolv securities between August 19, 2022 and October 30, 2024, inclusive (the "Class Period"). Plaintiff asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against: (i) Evolv; (ii) the Company's former Chief Executive Officer ("CEO") Peter George ("George"); and (iii) the Company's Chief Financial Officer ("CFO") Mark Donohue ("Donohue").

2. Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The Company's key market categories include education, healthcare, sports, and live entertainment.

3. This case concerns material misstatements in the Company's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

-2-

4.     On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue.  The Company revealed that "certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions" not shared with the Company's accounting personnel "and that certain Company personnel engaged in misconduct in connection with those transactions."  The Company also announced that it "expects to report one or more additional material weaknesses in internal control over financial reporting," was delaying filing its upcoming quarterly report for the third quarter of 2024, and that it has "self-reported these issues" to the Division of Enforcement of the SEC.

5.     On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024, on unusually high trading volume.

6.     Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Defendant George, "effective immediately."  The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed.

7.     On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024, on unusually high trading volume.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

-2-

-3-

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) because Evolv's headquarters is located within this District and Defendants conducted substantial economic activity in the District.  As such, substantial acts in furtherance of the alleged fraud have occurred in this District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

12.     Plaintiff is Douglas Buchan.  Plaintiff purchased Evolv securities during the Class Period, as detailed in the Certification attached hereto and incorporated herein, and has been damaged thereby.

13.     Defendant Evolv is a Delaware corporation with its principal executive offices in Waltham, Massachusetts.  Evolv's common stock trades on the NASDAQ stock exchange under the ticker symbol "EVLV."

14.     Defendant George was, at all relevant times, Evolv's CEO.

15.     Defendant Donohue is, and at all relevant times was, Evolv's CFO.

16.     Defendants George and Donohue are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to

the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.

17. The Individual Defendants were provided with copies of the Company's presentations and SEC filings alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

18. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The Company's solutions and services are designed to capture relevant visitor data customers can leverage to inform their security operations. The Company's key market categories include education, healthcare, sports, and live entertainment.

20. The Company principally derives revenue from (i) subscription arrangements generally accounted for as operating leases, (ii) the sale of products, inclusive of Software as a Service and maintenance, and (iii) professional services.

### Materially False and Misleading Statements Issued During the Class Period

21. The Class Period begins on August 19, 2022. The day before, after market hours, Evolv issued its Form 10-Q for the quarterly period ended June 30, 2022, that was signed by

Defendant Donohue.  The Form 10-Q provided the Company's total revenue, as well as its revenue

from Product, Subscription, and Service, for the period ended June 30, 2022 as follows:

| | | Three Months Ended June 30, | | | Six Months Ended June 30, | |
|---|---|---|---|---|---|---|
| | | 2022 | 2021 | | 2022 | 2021 |
| Revenue: | | | | | | |
| Product revenue | $ | 4,146 $ | 2,617 $ | | 9,340 $ | 4,884 |
| Subscription revenue | | 4,006 | 1,521 | | 7,010 | 2,748 |
| Service revenue | | 918 | 540 | | 1,430 | 739 |
| Total revenue | | 9,070 | 4,678 | | 17,780 | 8,371 |

22.     The Form 10-Q included a section titled "Components of Results of Operations."

Regarding Evolv's "Product Revenue," the Company stated that it "derive[s] a portion of our

revenue from the sale of our Express and Edge equipment and related add-on accessories to

customers.  *Revenue is recognized when control of the product has transferred to the customer,*

*which follows the terms of each contract*."

23.     The Form 10-Q included a section titled "Revenue Recognition," which discusses

how the Company recognizes revenue and the steps the Company takes when recording revenue,

including identifying the contract, the performance obligations, and allocating the transaction price

to the performance obligations, among other things.  In pertinent part, the Company stated:

> The Company recognizes revenue in accordance with Accounting Standards
> Codification 606 – *Revenue from Contracts with Customers* ("ASC 606").  Under
> ASC 606, revenue is recognized when a customer obtains control of promised
> goods or services, in an amount that reflects the consideration which the entity
> expects to receive in exchange for those goods or services.  *In order to achieve this*
> *core principle, the Company applies the following five steps when recording*
> *revenue: (1) identify the contract, or contracts, with the customer, (2) identify the*
> *performance obligations in the contract, (3) determine the transaction price, (4)*
> *allocate the transaction price to the performance obligations in the contract and*
> *(5) recognize revenue when, or as, performance obligations are satisfied*.

24.     On November 9, 2022, Evolv issued its Form 10-Q for the quarterly period ended

September 30, 2022, that was signed by Defendant Donohue.  The Form 10-Q provided the

Company's total revenue, as well as its revenue from Product, Subscription, and Service, for the

period ended September 30, 2022 as follows:

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2022 | 2021 | 2022 | 2021 |
| Revenue: | | | | |
| Product revenue | $ 9,839 | $ 5,395 | $ 19,179 | $ 10,279 |
| Subscription revenue | 5,198 | 2,312 | 12,208 | 5,060 |
| Service revenue | 1,493 | 717 | 2,923 | 1,456 |
| Total revenue | 16,530 | 8,424 | 34,310 | 16,795 |

25.     That same day, on November 9, 2022, Defendants held an earnings call to discuss the Company's Q3 2022 financial results.  During the earnings call, Defendant George stated that the Company was "***encouraged by our performance, which was highlighted by record growth in revenues, ARR and RPO*** as well as our strong market penetration[.]"  Defendant George went on to state that "***Revenue in the third quarter was $16.5 million, up 96% year-over-year and 82% sequentially***," which reflected "***continuing momentum with our channel partners***."

26.     On March 1, 2023, Defendants held an earnings call to discuss the Company's Q4 2022 financial results.  During the earnings call, Defendant George stated that the Company's results were "highlighted by record growth in new customers, revenues, ARR and RPO." Defendant George went on to state that "***revenue in the fourth quarter was $20.9 million, up 217% year-over-year and 26% sequentially.***" And that "***[f]or the year, revenue was $55.2 million, up 136% year-over-year.***"

27.     On March 24, 2023, Evolv issued its Form 10-K for the fiscal year ended December 31, 2022, that was signed by Defendants George and Donohue.  The Form 10-K provided the Company's total revenue, as well as its revenue from Product, Subscription, and Service, for the fiscal year ended December 31, 2022—showing increases well over 100% as compared to the prior year—as follows:

| | Year Ended December 31, | | $ Change | % Change |
|---|---|---|---|---|
| | 2022 | 2021 | | |
| Revenue: | | | | |
| Product revenue | $ 31,985 | $ 13,631 | $ 18,354 | 135 % |
| Subscription revenue | 17,569 | 7,803 | 9,766 | 125 |
| Service revenue | 5,641 | 1,959 | 3,682 | 188 |
| Total revenue | 55,195 | 23,393 | 31,802 | 136 |

28. On May 10, 2023, Evolv issued its Form 10-Q for the quarterly period ended March 31, 2023, that was signed by Defendant Donohue. The Form 10-Q provided the Company's total revenue, as well as its revenue from Product, Subscription, and Service, for the period ended March 31, 2023 as follows:

|  | Three Months Ended March 31, | |
| --- | --- | --- |
|  | 2023 | 2022 |
| Revenue: | | |
| Product revenue | $          8,754 | $          5,194 |
| Subscription revenue | 6,466 | 3,004 |
| Service revenue | 3,361 | 512 |
| Total revenue | 18,581 | 8,710 |

29. That same day, on May 10, 2023, Defendants held an earnings call to discuss the Company's Q1 2023 financial results. During the earnings call, Defendant George stated that "***Revenue in the first quarter was $18.6 million, up 113% year-over-year***."

30. During the earnings call, Defendant Donohue stated that "Annual Recurring Revenue, or ARR, at March 31, 2023, was $42 million, reflecting growth of 153% year-over-year and 23% sequentially."

31. On November 9, 2023, Evolv issued an amended Form 10-Q/A for the quarterly period ended June 30, 2023, that was signed by Defendant Donohue. The Form 10-Q/A provided the Company's total revenue, as well as its revenue from Product, Subscription, and Service, for the period ended June 30, 2023 as follows:

|  | Three Months Ended June 30, | | Six Months Ended June 30, | |
| --- | --- | --- | --- | --- |
|  | 2023 | 2022 | 2023 | 2022 |
| Revenue: | | | | |
| Product revenue | $          7,243 | $          4,146 | $          15,997 | $          9,340 |
| Subscription revenue | 7,964 | 4,006 | 14,430 | 7,010 |
| Service revenue | 4,618 | 918 | 7,979 | 1,430 |
| Total revenue * | 19,825 | 9,070 | 38,406 | 17,780 |

32. On November 9, 2023, Evolv issued its Form 10-Q for the quarterly period ended September 30, 2023, that was signed by Defendant Donohue. The Form 10-Q provided the Company's total revenue, as well as its revenue from Product, Subscription, Service, and License fee and other, for the period ended September 30, 2023 as follows:

-7-

| | | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|---|
| | | 2023 | 2022 | 2023 | 2022 |
| Revenue: | | | | | |
| Product revenue | $ | 3,191 | $ 9,839 | $ 19,188 | $ 19,179 |
| Subscription revenue | | 10,231 | 5,198 | 24,661 | 12,208 |
| Service revenue | | 4,757 | 1,493 | 12,736 | 2,923 |
| License fee and other revenue | | 2,012 | — | 2,012 | — |
| Total revenue * | | 20,191 | 16,530 | 58,597 | 34,310 |

33.     That same day, on November 9, 2023, Defendants held an earnings call to discuss the Company's Q3 2023 financial results.  During the earnings call, Defendant George stated that "[d]uring the third quarter, we delivered strong results across every key measure of the business, including revenue, ARR, RPO, subscriptions and gross margin."   He went on to state that "***Revenue in the third quarter was a record $20.2 million with reoccurring revenue of $14.3 million, up 131% year-over-year***."

34.     During the earnings call, Defendant Donohue stated that "Annual recurring revenue or ARR at September 30, 2023 was $65.8 million, reflecting growth of 129% year-over-year and 21% sequentially" and that "Total recurring revenue during the third quarter of 2023 was $14.4 million compared to $6.2 million in the third quarter of 2022 reflecting growth of 131% year-over-year."

35.     On February 29, 2024, Evolv issued its Form 10-K for the fiscal year ended December 31, 2023, that was signed by Defendants George and Donohue.  The Form 10-K provided the Company's total revenue, as well as its revenue from Product, Subscription, Service, and License fee and other, for the fiscal year ended December 31, 2023—showing significant increases as compared to the prior year—as follows:

| | | Year Ended December 31, | | | |
|---|---|---|---|---|---|
| | | 2023 | 2022 | $ Change | % Change |
| Revenue: | | | | | |
| Product revenue | $ | 21,977 | $ 31,985 | $ (10,008) | (31) % |
| Subscription revenue | | 37,247 | 17,569 | 19,678 | 112 |
| Service revenue | | 16,141 | 4,331 | 11,810 | 273 |
| License fee and other revenue | | 5,053 | 1,310 | 3,743 | 286 |
| Total revenue | | 80,418 | 55,195 | 25,223 | 46 |

-8-

36.     That same day, on February 29, 2024, Evolv held an earnings call to discuss the Company's financial results.  During the earnings call, Defendant George stated that the Company was "delighted to be reporting revenue of $80.4 million in 2023, up 46% year over year."

37.     During the earnings call, Defendant Donohue stated that the Company was "particularly delighted with the strong growth in our recurring revenues, which represented 65% of our full year revenues and reached 80% of our fourth quarter revenues."  He went on to state that "Annual recurring revenue or ARR at December 31, 2023, was $75 million, reflecting growth of 120% year over year and 14% sequentially."

38.     On May 9, 2024, Evolv issued its Form 10-Q for the quarterly period ended March 31, 2024, that was signed by Defendant Donohue.  The Form 10-Q provided the Company's total revenue, as well as its revenue from Product, Subscription, Service, and License fee and other, for the period ended March 31, 2024 as follows:

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2024 | 2023 |
| Revenue: | | |
| Product revenue | $           603 | $        8,754 |
| Subscription revenue | 14,503 | 6,466 |
| Service revenue | 5,384 | 2,786 |
| License fee and other revenue | 1,178 | 575 |
| Total revenue * | 21,668 | 18,581 |

39.     That same day, on November 9, 2023, Defendants held an earnings call to discuss the Company's Q3 2023 financial results.  During the earnings call, Defendant George stated that "Revenue in the first quarter was $21.7 million, up 17% year over year," which reflected "*continued traction with our channel partners*."

40.     During the call, Defendant Donohue stated that "Annual recurring revenue or ARR at March 31, 2024, was $83 million, reflecting growth of 96% year over year" and that "Total recurring revenue during the first quarter of 2024 was $19.4 million compared to $9.1 million in the first quarter of 2023, reflecting growth of 114% year over year."

41.     On August 8, 2024, Evolv issued its Form 10-Q for the quarterly period ended June 30, 2024, that was signed by Defendant Donohue.  The Form 10-Q provided the Company's total revenue, as well as its revenue from Product, Subscription, Service, and License fee and other, for the period ended June 30, 2024 as follows:

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
| --- | --- | --- | --- | --- |
| | 2024 | 2023 | 2024 | 2023 |
| Revenue: | | | | |
| Product revenue | $ 2,044 | $ 7,243 | $ 2,647 | $ 15,997 |
| Subscription revenue | 15,903 | 7,964 | 30,406 | 14,430 |
| Service revenue | 5,553 | 3,905 | 10,937 | 6,691 |
| License fee and other revenue | 2,040 | 713 | 3,218 | 1,288 |
| Total revenue * | 25,540 | 19,825 | 47,208 | 38,406 |

42.     The Form 10-Q stated that "*growing momentum with our channel partners*" was a "*key trend*" contributing to driving increased adoption of Evolv's solutions and growth in its sales.

43.     The statements referenced in ¶¶21-42 were materially false and misleading as the Company's financial statements prepared for the periods between Q2 2022 through Q2 2024 contained material misstatements relating to improper revenue recognition and other reported metrics that are a function of revenue.  In truth, Evolv's sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel, distorting the Company's reported revenue and other metrics that are a function of revenue during the Class Period.  What's more, far from the Company's touted "growing momentum" and "continued traction" with channel partners, the Company's personnel was engaged in misconduct concerning sales to one of the Company's largest channel partners.

**The Truth Is Revealed**

44.     On October 25, 2024, Evolv announced that "*shareholders and others should not rely upon certain of the Company's previously issued financial statements*" and that Evolv will delay filing its quarterly report on Form 10-Q for the period ended September 30, 2024, due to

-10-

material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company announced that, pursuant to an ongoing internal investigation, Evolv has determined that "certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions, some of which were not shared with the Company's accounting personnel, and that certain Company personnel engaged in misconduct in connection with those transactions."

45. Evolv stated that "the accounting for certain sales transactions was inaccurate and that, among other things, revenue was prematurely or incorrectly recognized in connection with financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024." Evolv went on to state that the committee conducting the investigation "has determined that these misstatements are material for certain financial statements prepared for these periods and that the recognition of revenue in the proper periods will impact each of those financial statements" and also determined that "[o]ther previously reported metrics that are a function of revenue were also misstated as a result of these revenue misstatements."

46. Further, the Company announced that it "expects to report one or more additional material weaknesses in internal control over financial reporting" and that it has "self-reported these issues" to the Division of Enforcement of the SEC.

47. As a result of this news, Evolv's stock price declined roughly 40%, falling from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024, on unusually high trading volume.

48. Then, on October 31, 2024, before the market opened, Evolv announced the termination of the Company's CEO, Defendant George, "effective immediately." The Company

announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor to Defendant George is appointed.

49.     As a result of this news, Evolv's stock price declined from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024, about 8%, on unusually high trading volume.

## LOSS CAUSATION

50.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Evolv securities and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on October 25, 2024 and October 31, 2024, as alleged herein, the price of Evolv securities fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of Evolv securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## SCIENTER ALLEGATIONS

51.     As alleged herein, Defendants acted with scienter because Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Evolv, their control over, and/or receipt and/or modification of Evolv's allegedly materially misleading misstatements and/or their

-12-

associations with the Company which made them privy to confidential proprietary information concerning Evolv, participated in the fraudulent scheme alleged herein.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Evolv securities during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Evolv and their families and affiliates.

53.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of February 28, 2024, there were 152,182,633 shares of Evolv's Class A common stock outstanding.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

A. Whether Defendants violated the Exchange Act;

B. Whether Defendants omitted and/or misrepresented material facts;

C. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

D. Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

E. Whether the price of Evolv's securities was artificially inflated;

F.  Whether Defendants' conduct caused the members of the Class to sustain damages; and

G.  The extent of damage sustained by Class members and the appropriate measure of damages.

55.  Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

56.  Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

57.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

58.  Evolv's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective and inapplicable and cannot shield the statements at issue from liability.  The statements alleged to be false and misleading above relate to then-existing facts and conditions.

59.  To the extent there were any forward-looking statements, they were not sufficiently identified as such at the time they were made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

60.  Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement

-14-

was false or misleading and the statement was made by or authorized and/or approved by an executive officer of Evolv who knew that the statement was false.

## PRESUMPTION OF RELIANCE

61.     At all relevant times, the market for Evolv's securities was an efficient market for the following reasons, among others:

A.  The Company's shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

B.  As a regulated issuer, Evolv filed periodic public reports with the SEC;

C.  Evolv regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D.  Evolv was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

62.     As a result of the foregoing, the market for Evolv securities promptly digested current information regarding Evolv from all publicly available sources and reflected such information in the price.  Under these circumstances, all purchasers of Evolv securities during the Class Period suffered similar injury through their purchase of Evolv securities at artificially inflated prices and the presumption of reliance applies.

63.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.

## COUNT I

**For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Evolv securities at artificially inflated prices.

66.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Evolv securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Evolv's business and revenue prospects, as specified herein.

68.     During the Class Period, Defendants made the false statements specified above which they knew or recklessly disregarded to be false or misleading in that they contained

-16-

misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal the truth about the Company's business and revenue prospects, as specified herein, from the investing public and to support the artificially inflated prices of the Company's securities.

70.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Evolv's securities.  Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices had been artificially inflated by Defendants' fraudulent course of conduct.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

72.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### COUNT II

**For Violation of Section 20(a) of the Exchange Act Against The Individual Defendants**

73.     Plaintiff repeats, incorporates, and re-alleges each and every allegation set forth above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Evolv within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions,

participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Evolv, the Individual Defendants had the power and ability to control the actions of Evolv and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

75.   **WHEREFORE**, Plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

76.   Plaintiff demands a jury trial.

Dated: November 1, 2024

Respectfully submitted,

**HUTCHINGS BARSAMIAN
MANDELCORN, LLP**

_/s/ Theodore M. Hess-Mahan_
Theodore M. Hess-Mahan (BBO #557109)
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone: (781) 431-2231
Facsimile: (781) 431-8726
thess-mahan@hutchingsbarsamian.com

**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (_pro hac vice_ forthcoming)
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz (_pro hac vice_ forthcoming)
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Adam C. McCall (_pro hac vice_ forthcoming)
1330 Broadway, Suite 630
Oakland, CA 94612
Telephone: (415) 445-4003
Facsimile: (212) 205-3960
amccall@bfalaw.com

_Counsel for Plaintiff Douglas Buchan_

-19-