**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GERALD RABY, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>EVOLV TECHNOLOGIES HOLDINGS, INC. F/K/A NEWHOLD INVESTMENT CORP., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-10761-ADB |

**DOUGLAS BUCHAN'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OPPOSING THE MOTION TO CONSOLIDATE AND VACATE LEAD PLAINTIFF DEADLINE, AND TO STRIKE PORTIONS OF THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 5

      A.    *Raby* Alleges Evolv Misrepresented The Efficacy Of Its Technology ................... 5

      B.    The Court Appoints Mr. Falk Lead Plaintiff In *Raby* Granting Him Authority To Prosecute Allegations Regarding The Efficacy of Evolv's Technology ................ 6

      C.    Investors Learn Evolv Prematurely Recognized Revenue, Prompting The Filing of *Buchan* ................................................................................................................ 7

      D.    Mr. Falk Attempts To Inappropriately Consolidate *Buchan* With *Raby* ................ 8

      E.    The Amended Complaint Is An Improper Expansion of *Raby* .............................. 8

III.  ARGUMENT ........................................................................................................................ 9

      A.    The Motion to Consolidate Should Be Denied ......................................................... 9

            i.    *Raby* And *Buchan* Are Distinct .................................................................10

            ii.   Consolidation Would Prejudice The Proposed Class In *Buchan* ...............12

            1.    Mr. Falk Lacks Standing To Prosecute The Claims .................................12

            2.    Consolidation Would Deprive Putative Class Members Of Their Rights ........................................................................................................14

      B.    The Amended Complaint Should Be Stricken ........................................................ 15

      C.    If Consolidation Is Granted, The PSLRA Requires Republication Of Notice And Reopening the Lead Plaintiff Process ................................................................ 15

      D.    Intervention is Warranted ....................................................................................... 19

IV.   CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Autila v. Mass. Bay Trans. Auth.*,
    342 F.R.D. 23 (D. Mass. 2022)..........................................................................................15

*Carr v. Analogic Corp.*,
    2018 WL 4932858 (D. Mass. Oct. 10, 2018)........................................................................12

*In re Cent. European Distrib. Corp. Sec. Litig.*,
    2012 WL 5465799 (D.N.J. Nov. 8, 2012) ................................................................3, 11, 14

*In re Cyberonics Inc. Sec. Litig.*,
    468 F. Supp. 2d 936 (S.D. Tex. 2006) ................................................................................17

*Dube v. Signet Jewelers Ltd.*,
    2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017).......................................................4, 15, 16, 20

*Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*,
    299 F.R.D. 1 (E.D.N.Y. 2014) .............................................................................................9

*Gross v. Summa Four, Inc.*,
    93 F.3d 987 (1st Cir. 1996)......................................................................................3, 13, 14

*Hachem v. Gen Elec. Inc.*,
    2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018)............................................................... *passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)........................................................................................................12, 13

*Horowitz v. SunEdison, Inc.*,
    2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) ...................................................................18

*Kipling v. Flex Ltd.*,
    2019 WL 1472358 (N.D. Cal. Apr. 3, 2019) .......................................................4, 16, 17, 19

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016)...................................................................................11

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. Aug 11, 1997) ....................................................................10, 18

*In re Leapfrog Enters., Inc. Sec. Litig.*,
    2005 WL 5327775 (N.D. Cal. July 5, 2005)...................................................................17, 19

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
    149 F.R.D. 65 (D.N.J. 1993) .................................................................................................12

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    293 F.RD. 483 (S.D.N.Y. 2013) ...........................................................................................14

*Parker v. Hyperdynamics Corp.*,
    126 F. Supp. 3d 830 (S.D. Tex. 2015) ..................................................................................11

*Piercy v. AT&T Inc.*,
    --- F. Supp. 3d ---, 2024 WL 4728944 (D. Mass. Nov. 8, 2024) .........................................12

*Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*,
    878 F.2d 5 (1st Cir. 1989) ...............................................................................................9, 12

*In re Select Comfort Corp. Sec. Litig.*,
    2000 WL 36097395 (D. Minn. May 12, 2000) ....................................................................18

*Sheffield v. City of Boston*,
    319 F.R.D. 52 (D. Mass. 2016) ......................................................................................4, 15

*In re Take-Two Interactive Securities Litigation*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ..................................................................................11

*Thomas v. Magnachip Semiconductor Corp.*,
    2015 WL 3749784 (N.D. Cal. June 15, 2015) .....................................................................18

*In re Thornburg Mortg., Inc., Sec. Litig.*,
    629 F. Supp. 2d 1233 (D.N.M. 2009) ..................................................................................18

*Turner v. ShengdaTech, Inc.*,
    2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ........................................................................18

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
    2013 WL 2247394 (C.D. Cal. May 9, 2013) ........................................................................17

*Waldman v. Wachovia Corp.*,
    2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) .....................................................................18

**Rules**

Fed. R. Civ. P. 12(f) ....................................................................................................................4, 15

Fed. R. Civ. P. 24 .....................................................................................................................5, 19, 20

Fed. R. Civ. P. 42(a) ........................................................................................................................9

iii

**Statutes**

15 U.S.C. §78u-4(a)(3)(A) ..................................................................................................1, 15

15 U.S.C. §78u-4(a)(3)(B) ......................................................................................................1

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ....................................................................................12

15 U.S.C. § 78u-4(b)(3)(B) ...................................................................................................19

**Other Authorities**

H.R. CONF. REP. NO. 104-369, at 32-34 (1995) ...................................................................16

Douglas Buchan respectfully submits this memorandum of law in support of his motion to intervene for the limited purpose of: (i) opposing the motion to consolidate *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768-RGS (D. Mass.) ("*Buchan*") with *Raby v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-10761-ADB (D. Mass.) ("*Raby*") and vacate the Lead Plaintiff deadline established in *Buchan*; and (ii) striking the allegations in the amended complaint in *Raby* that have been drawn from *Buchan* as specifically set forth below.

## I.    PRELIMINARY STATEMENT

Mr. Falk's motion for consolidation is a transparent attempt to circumvent the statutory requirements mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA") to seize control of *Buchan*, a case over which he has no authority, lacks standing to prosecute, in which he is not a member of the putative Class and has no financial interest, and that is factually distinct from the case the Court appointed him to lead.  Consolidating *Raby* and *Buchan* would cause significant prejudice to the absent Class members in *Buchan* and would be inconsistent with the PSLRA.  The most prudent and efficient course would be to allow *Raby* and *Buchan* to proceed separately while striking the new theories alleged in the amended *Raby* complaint that have been derived from *Buchan*.  To the extent consolidation is granted, the PSLRA requires that notice be republished and the Lead Plaintiff process reopened.

One of the main purposes of the PSLRA is to ensure the "most adequate plaintiff" is appointed to represent the proposed Class.  *See* 15 U.S.C. §78u-4(a)(3)(B).  To achieve that outcome, the PSLRA requires a plaintiff to publish notice "of the pendency of the action" that describes "the claims asserted" so that members of the putative Class can determine whether to seek a leadership role.  15 U.S.C. §78u-4(a)(3)(A).  Here, the notice of pendency of *Raby* informed proposed Class members that *Raby* concerned how Evolv allegedly "materially overstated the

efficacy of its products." *See* ECF No. 10-3. There was no information regarding Evolv's accounting issues related to improper revenue recognition in prior financial statements. *Id.*

On September 20, 2024, the Court appointed Mr. Falk as Lead Plaintiff in *Raby*, granting him authority to prosecute claims concerning Evolv's alleged misrepresentations about the efficacy of its technology. ECF No. 48. More than a month later, on October 25, 2024, Evolv announced that "shareholders and others should not rely upon certain of the Company's previously issued financial statements," leading to a precipitous 40% decline in the stock price. *Buchan*, ECF No. 1 ¶¶44, 47. According to Evolv, "certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions" and that "revenue was prematurely or incorrectly recognized." *Id.* ¶¶44-45. Evolv did not link the accounting issues to the efficacy of the Company's products at issue in *Raby* and there is no public evidence that there is any relationship between the two.

On November 1, 2024, Mr. Buchan filed *Buchan* alleging claims entirely distinct from *Raby*, namely that Evolv's financial statements contained misstatements relating to improper revenue recognition and related metrics that are a function of revenue. *Id.* ¶43. *Buchan* does not mention Evolv's misrepresentations about the efficacy of its technology that are at issue in *Raby*. The *Buchan* complaint is attached as Ex. A to the Hess-Mahan Decl. for the Court's convenience.

On November 13, 2024, Mr. Falk moved to consolidate *Buchan* and *Raby*. ECF No. 62. Mr. Falk's claimed basis for consolidation is that "the restatement (alleged in the *Buchan* Action) relates to the marketing practices that are under investigation by the FTC and the public statements investigated by the SEC (as alleged in the *Raby* Action)." ECF No. 63 at 6-7. Those assertions contradict the pleadings and the public record. Still, Mr. Falk pleaded a similar theory in his

amended complaint filed on November 20, 2024, but without any specific factual support, punctuating the distinct nature of *Buchan* and *Raby*.

Mr. Falk fails to cite a single case that allowed consolidation of disparate securities class actions like *Buchan* and *Raby*. Courts will not hesitate to deny motions to consolidate securities class actions based on different sets of facts. *See In re Cent. European Distrib. Corp. Sec. Litig.*, 2012 WL 5465799, at *8-9 (D.N.J. Nov. 8, 2012) (rejecting consolidation where one case "involve[d] the accounting actions of a [company] subsidiary" and the other "revolve[d] around [the company's] management of its vodka portfolio").

Even if the Court finds that the cases share a common legal theory, consolidation should still be denied as it would prejudice the putative Class in *Buchan*. Mr. Falk does not have standing to pursue the claims alleged in *Buchan*, has no financial interest in the claims, and is not even a member of the proposed class. Situated as such, he cannot be trusted to prosecute the claims of absent class members. Mr. Falk acquired his ***entire investment*** in Evolv ***over one year before*** the Class Period starts in *Buchan* and when Evolv issued its first allegedly false financial statement. *See* ECF No. 64-1 at 2; *Buchan*, ECF No. 1 ¶¶1, 4, 21. First Circuit authority holds that a class representative that purchased stock before the misrepresentation "has no standing to complain about the statements" and "cannot maintain an action on behalf of class members to redress an injury for which he has no standing." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 993 (1st Cir. 1996). Allowing Mr. Falk to pursue the claims in *Buchan* risks severe prejudice to the proposed Class.

Consolidation would further prejudice the putative Class in *Buchan* because the actual proposed class members that suffered injury because of Evolv's alleged accounting misconduct would be deprived of their statutory rights to seek Lead Plaintiff appointment under the PSLRA. *See Hachem v. Gen Elec. Inc.*, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018) ("individuals

-3-

who could now be considered potential lead plaintiffs would have disregarded the earlier notice . . . potentially exclud[ing] qualified movants from the lead plaintiff process").

Rather than consolidate the cases, the Court should strike the allegations from the *Raby* amended complaint that exceed the scope of Mr. Falk's authority as Lead Plaintiff to prosecute claims pertaining to the effectiveness of Evolv's technology. Rule 12(f) affords the Court considerable discretion to strike from a pleading "allegations beyond the scope of plaintiff's claim." *Sheffield v. City of Boston*, 319 F.R.D. 52, 55 (D. Mass. 2016). Indeed, "strik[ing] the new claims and allegations . . . and revert[ing] to the claims and allegations in the original Complaint" is "the only possible way for Lead Plaintiffs to avoid the need for republication (and the revisiting of the lead plaintiff and lead counsel selection that might follow)." *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at *1-2 (S.D.N.Y. Apr. 14, 2017). The portions of the amended complaint that Mr. Buchan proposes be stricken is attached as Ex. B to the Hess-Mahan Decl.

Alternatively, and to the extent the Court grants consolidation, the PSLRA requires republication of notice of pendency of the action and reopening of the Lead Plaintiff process. As compared to the *Raby* action noticed to investors, the amended complaint asserts an entirely different theory of the alleged fraud, pleads new causes of action, on behalf of a broader putative Class, during a broader period of time, and asserts a new (and most significant) corrective disclosure of the alleged misconduct. As Mr. Falk's own cited authority recognizes, these significant amendments "make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice" such that republication is warranted. *Kipling v. Flex Ltd.*, 2019 WL 1472358, at *2 (N.D. Cal. Apr. 3, 2019) (citation omitted).

-4-

Mr. Buchan meets all the requirements for intervention as of right as well as permissive intervention under Rule 24. He respectfully requests that his motion be granted and the motion to consolidate and strike the Lead Plaintiff deadline in *Buchan* be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Raby* Alleges Evolv Misrepresented The Efficacy Of Its Technology

On March 25, 2024, Plaintiff Gerald Raby filed the initial complaint in *Raby*. The initial complaint alleges that from June 28, 2021 to March 13, 2024, Defendants misrepresented the efficacy of Evolv's security technology. *Raby*, ECF No. 1 ¶¶1, 63. It does not contain a single allegation relating to Evolv's revenue recognition, relationship with channel partners, or the falsity of the Company's financial statements by virtue of those practices, which is the basis of the allegations in *Buchan*. *Buchan*, ECF No. 1 ¶¶4, 43.

Every allegation in the initial *Raby* complaint is cabined to misrepresentations relating to the efficacy of Evolv's technology. *See generally Raby*, ECF No. 1. The alleged false statements are tethered to that topic. *See id.* ¶¶21-62. So too are the alleged reasons for falsity. As the initial complaint alleges, "Evolv materially overstated the efficacy of its products; (2) the lack of effectiveness of Evolv's products with regard to detecting knives and guns led to an increased risk of undetected weapons entering locations such as schools; [and] (3) Evolv deceived the general public, its customers, and its investors regarding the effectiveness of its products." *Id.* ¶63. Again, not a single allegation relating to Evolv's revenue recognition, relationship with channel partners, or the falsity of its financial statements by virtue of those practices.

The alleged revelations of the fraud in the initial *Raby* complaint further demonstrate that the case is limited to the efficacy of the Company's technology:

- November 2, 2022- IPVM and the *BBC* wrote that Evolv engaged in deceptive marketing and collusion to hide test results showing repeated failures by Evolv's technology, leading to a 2.7% share price decline. *Raby*, ECF No. 1 ¶¶64-81.

- May 23, 2023- *BBC* reported on "fresh questions about [Evolv's] technology after a student was attacked with a knife that [Evolv's] system failed to detect," leading to a 7.6% share price decline. *Id.* ¶¶82-90.

- October 12, 2023- Evolv announced the U.S. Federal Trade Commission ("FTC") "requested information about certain aspects of its ***marketing practices***" ***(not accounting),*** which allegedly caused a 13.2% share price decline. *Id.* ¶¶91-92 (emphasis added).

- October 25, 2023- IPVM wrote that Evolv's technology "struggles to differentiate small knives from cell phones and guns from laptops," causing a 1.5% share price decline. *Id.* ¶¶93-94.

- February 20, 2024- Evolv discloses SEC "was initiating an investigation that was described as a confidential 'non-public, fact finding inquiry,'" ***"related to the [sic] Evolv's technology," (not accounting)***, leading to a 15.7% share price decline. *Id.* ¶¶95-96 (emphasis added).

- March 13, 2024- *BBC* published an article explaining how Evolv misrepresented testing results from the U.K. Government's National Protective Security Authority, causing a 3.5% share price decline. *Id.* ¶¶97-98.

On the same day Mr. Raby filed his complaint, his counsel published a notice alerting investors to the pendency of the action and explaining that the case concerned Evolv's misrepresentations regarding the efficacy of its technology. *See* ECF No. 10-3. The notice of pendency of *Raby* made no mention of the accuracy of Evolv's financial statements, its revenue recognition practices, relationships with channel partners, or any related matters. *See id.*

**B. The Court Appoints Mr. Falk Lead Plaintiff In *Raby* Granting Him Authority To Prosecute Allegations Regarding The Efficacy of Evolv's Technology**

On May 24, 2024, Mr. Falk filed a Motion for Appointment as Lead Plaintiff in *Raby*. ECF No. 17. In his brief, Mr. Falk stated that "this action alleges" that "Defendants made materially false and/or misleading statements" concerning the efficacy of Evolv's technology. ECF No. 18 at 2-4. Mr. Falk made no mention of the accuracy of Evolv's financial statements, its revenue recognition, or any related matters. Nor did any of the three other Lead Plaintiff movants. *See* ECF Nos. 9 at 1, 12 at 2-5, 15 at 2-4.

On September 20, 2024, the Court appointed Mr. Falk as Lead Plaintiff, granting him authority to prosecute the allegations concerning Evolv's misrepresentations about the efficacy of its technology. ECF No. 48. In its "Memorandum and Order," the Court recounted how "Plaintiffs claim that Evolv made false and/or misleading statements and/or failed to disclose material facts concerning the efficacy of Evolv's security screening technologies." *Id*. at 1.

### C. Investors Learn Evolv Prematurely Recognized Revenue, Prompting The Filing of *Buchan*

Over a month after the Court appointed Mr. Falk as Lead Plaintiff in *Raby,* on October 25, 2024, Evolv announced that "shareholders and others should not rely upon certain of the Company's previously issued financial statements" and that it would delay filing its quarterly financial report. *Buchan*, ECF No. 1 ¶44. The Company explained that "certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions, some of which were not shared with the Company's accounting personnel, and that certain Company personnel engaged in misconduct in connection with those transactions." *Id*.

Evolv further revealed that "the accounting for certain sales transactions was inaccurate and that, among other things, revenue was prematurely or incorrectly recognized in connection with financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024." *Id.* ¶45. Evolv also explicitly stated that it "self-reported these issues" to the SEC and that the issues are ***"unrelated"*** to the SEC investigation the Company disclosed on February 20, 2024 and that is alleged in *Raby*. Hess-Mahan Decl. Ex. C at 3, 5 (emphasis added). This news caused a roughly 40% decline in the price of Evolv stock, a decline more than double than any corrective disclosure alleged in the initial *Raby* complaint. *Buchan*, ECF No. 1 ¶47.

On November 1, 2024, Mr. Buchan filed *Buchan* alleging that during the Class Period of August 19, 2022 through October 30, 2024, Evolv's financial statements contained material

misstatements relating to improper revenue recognition and other reported metrics that are a function of revenue, and misrepresented that it was experiencing "growing momentum" and "continued traction" with its channel partners. *Id.* ¶43.

Also on November 1, counsel for Mr. Buchan published a notice of the pendency of the action which notified investors of the December 31, 2024 Lead Plaintiff deadline, and that the case concerned material misstatements relating to Evolv's revenue recognition and other related financial metrics, as well as statements relating to the Company's relationship with channel partners. Neither *Buchan* nor the related notice of pendency mentioned Evolv's misrepresentations about the efficacy of its technology.   Hess-Mahan Decl. Exs. A, D.

### D.  Mr. Falk Attempts To Inappropriately Consolidate *Buchan* With *Raby*

On November 13, 2024, Mr. Falk filed a Motion to Consolidate *Buchan* and *Raby* and to vacate the December 31, 2024 Lead Plaintiff deadline noticed in *Buchan*.  ECF No. 62.  Mr. Falk's primary basis for consolidation is that "the restatement (alleged in the *Buchan* Action) relates to the marketing practices that are under investigation by the FTC and the public statements investigated by the SEC (as alleged in the *Raby* Action)."  ECF No. 63 at 6-7.  This is wrong.  The contentions contradict the facts pleaded in *Raby* and the public record.  No specific fact links the FTC and SEC investigations at issue in *Raby* to the restatement alleged in *Buchan*—in fact, the pleadings and Evolv itself state that the SEC investigation and restatement are *"unrelated."*  ECF No. 64 ¶88 (emphasis added); Hess-Mahan Decl. Ex. C.  Nevertheless, Mr. Falk wrote that he "intends to bring these additional facts in his amended complaint to be filed on November 20, 2024, which would subsume the allegations in the *Buchan* Action."  ECF No. 63 at 2.

### E.  The Amended Complaint Is An Improper Expansion of *Raby*

On November 20, 2024, Mr. Falk filed an Amended Complaint.  *See* ECF No. 64.  The Amended Complaint simply grafts the allegations from *Buchan* onto *Raby*.  The sole thread

holding these two distinct cases together is a conclusory assertion that "Defendants fail[ed] to disclose that Evolv's flagship product was not as effective as claimed and that as a result, they gave customers the product to test without a purchase commitment" on trial periods, and "the Company prematurely and improperly recognized revenue" on the trial transactions. *Id.* ¶¶2, 7. However, the Amended Complaint offers no specific facts to support this assertion that the improper revenue recognition was linked to defective product provided on a trial period basis—even the information supplied by former Evolv employees fails to supply the necessary link. *Id.* ¶¶74-80. The closest it gets is an assertion that there "was end-of-period pressure to deliver product before the sales order was confirmed" (i.e., to improperly recognize revenue) but this says nothing about improperly recognized revenue due to trial transactions. *Id.* ¶80

## III. ARGUMENT

### A. The Motion to Consolidate Should Be Denied

Rule 42(a) of The Federal Rules of Civil Procedure allows district courts to consolidate cases that involve common questions of fact. Fed. R. Civ. P. 42(a). "The threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law." *Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989) (emphasis in original) (reversing trial court order granting consolidation). "The party moving for consolidation bears the burden of showing the commonality of factual and legal issues in the actions it seeks to consolidate." *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, 299 F.R.D. 1, 6 (E.D.N.Y. 2014). Here, there is no commonality of factual and legal issues and for this reason alone the Court should deny the motion to consolidate. But even if there was commonality, which there is not, a showing of "demonstrable prejudice" is sufficient to defeat consolidation. *McAuto Systems*, 878 F.2d at 8. Consolidating *Raby* and *Buchan* would result in significant prejudice to the putative Class in *Buchan.*

### i. *Raby* And *Buchan* Are Distinct

The case the Court appointed Mr. Falk to lead, and that was noticed to investors, centers on Evolv's representations regarding the efficacy of its technology. ECF No. 1 ¶63. This is completely distinct from *Buchan*, which alleges that the company misrepresented its revenue recognition practices and relationship with channel partners. *Buchan* ECF No. 1 ¶43. Despite these stark factual differences, Mr. Falk rewrites history to claim that "[b]oth actions share significant overlap in the theory of liability because both allege that Defendants issued false and misleading statements related to sales and marketing, including of the Evolv Express technology, and financial results" and that "[t]he additional allegations raised in the *Buchan* Action merely expand upon the same core theory presented in the *Raby* Action regarding Evolv's marketing of its products." *Raby* ECF No. 63 at 6. This is simply not true and misrepresents the allegations of *Raby* and *Buchan*. The "theor[ies] of liability" are mutually exclusive, as discussed above. *Id,*

In an attempt to link *Raby* and *Buchan*, Mr. Falk then contends that Evolv's "deceptive marketing practices and their financial impact are common issues because the restatement (alleged in the *Buchan* Action) relates to the marketing practices that are under investigation by the FTC and the public statements investigated by the SEC (as alleged in the *Raby* Action)." *Id.* at 6-7. Again, this is simply not supported by and contradicts the allegations in both actions.

First, there is no specific allegation that Evolv's accounting issues alleged in *Buchan* have anything to do with the efficacy of Evolv's technology or its marketing practices. Instead, as alleged in *Buchan*, the premature revenue recognition pertains to "certain sales, including sales to one of its largest channel partners, [that] were subject to extra-contractual terms and conditions" and that "the accounting for certain sales and transactions was inaccurate and that, among other things, revenue was prematurely or incorrectly recognized" in certain of the Company's financial statements. *Buchan*, ECF No. 1 ¶¶44-45.

-10-

Second, there is no specific allegation that Evolv's accounting issues relate to the SEC or FTC investigations pleaded in *Raby*. Evolv specifically said and, the amended *Raby* complaint explicitly pleads, that the premature revenue recognition (alleged in *Buchan*) is ***"unrelated"*** to the previously disclosed SEC investigation (alleged in *Raby*). ECF No. 64 ¶88 (emphasis added).[1] As to the FTC, it does not regulate or investigate the accounting practices or financial results of public companies, and it is undisputed that the investigation related to "marketing." ECF No. 1 ¶91.

That the Amended Complaint in *Raby* fails to offer a single specific fact to join the disparate theories alleged in *Buchan* and *Raby* further punctuates that the two matters are distinct. Courts do not hesitate to deny motions to consolidate securities class actions that are factually distinct, even where the cases involve the same defendants, the same causes of action, and overlapping class periods. *See Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 835-38 (S.D. Tex. 2015) (denying consolidation of three securities class actions where one action alleged false statements "regarding the Company's business and financial results," while the others "alleged false and misleading statements concern[ing] only FCPA violations"); *Cent. European Distrib.*, 2012 WL 5465799, at *8-9 (rejecting consolidation where one case "involve[d] the accounting actions of a [company] subsidiary" and the other "revolve[d] around [the company's] management of its vodka portfolio" despite the fact the case involved the same defendants and type of legal claims and that one subsumed the class period of the other); *see also Liberty Lincoln Mercury, Inc.*

---

[1] In support of his argument that the regulatory investigations are related to the premature revenue recognition, Mr. Falk cites *In re Take-Two Interactive Securities Litigation*, 551 F. Supp. 2d 247, 257, 288 (S.D.N.Y. 2008) and *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) apparently for the proposition that regulatory investigations can serve as corrective disclosures. The argument misses the point. Mr. Buchan does not dispute that SEC and FTC investigations can serve as corrective disclosures. Mr. Buchan disputes the notion that *Raby* and *Buchan* concern the same "core theory," as articulated by Mr. Falk. ECF No. 63 at 6.

*v. Ford Mktg. Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993) ("Where the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues").

Mr. Falk fails to cite a single case that allowed consolidation based on factual scenarios that are as distinct as here. His cited authority is inapposite.[2]

### ii. Consolidation Would Prejudice The Proposed Class In *Buchan*

### 1. Mr. Falk Lacks Standing To Prosecute The Claims

In addition to being factually distinct, consolidation would result in significant prejudice to the putative Class in *Buchan*, which is a separate and independent ground to deny the motion. *See McAuto Systems*, 878 F.2d at 8. This is because Mr. Falk does not have standing to pursue **any claim** in *Buchan*. Even if he did, he would have no financial incentive to prosecute them, which is the exact opposite of what the PSLRA requires. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Specifically, Mr. Falk acquired his **entire investment** in Evolv on July 16, 2021. *See* ECF No. 64-1 at 2. This is **over one year before** Evolv issued its first financial statement that the Company now admits should no longer be relied upon, and when the Class Period starts in *Buchan*. *See Buchan*, ECF No. 1 ¶¶1, 4, 21. It is black letter law that to be able to establish a claim under the federal securities laws, an investor must have "traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). Here, there can be no dispute that Mr. Falk did not "trade[] [Evolv] stock between the time" the Company issued its first allegedly false financial statement

---

[2] *See Piercy v. AT&T Inc.*, --- F. Supp. 3d ---, 2024 WL 4728944, at *1 (D. Mass. Nov. 8, 2024) ("[t]he central question at the core of each action is whether defendants violated obligations owed to plaintiffs arising from the same event"); *Carr v. Analogic Corp.*, 2018 WL 4932858, at *1 (D. Mass. Oct. 10, 2018) (granting consolidation where "both actions . . . are based on substantially identical allegations").

"and when the truth was revealed."  *Id.*; ECF No. 64-1 at 2; *Buchan*, ECF No. 1 ¶¶ 1, 4, 21.  In fact, Mr. Falk is ***not even a member of the proposed Class in Buchan and has no financial interest in the claims***, yet he seeks to commandeer those claims for use in *Raby*.

Allowing consolidation of these distinct cases would provide Defendants with ample opportunity throughout the litigation to short-circuit the claims asserted in *Buchan*, to the detriment of the putative Class.  The situation is indistinguishable from the First Circuit's decision in *Gross v. Summa Four, Inc.*, 93 F.3d 987, 993 (1st Cir. 1996), in which the First Circuit affirmed dismissal of a putative class representative's "strongest claims."  There, the class representative "purchased 200 shares of Summa Four stock in late May 1994."  *Id*. at 989.  The class representative alleged that Summa Four made material misrepresentations "From January to July 1994," including in a letter dated June 29, 1994.  *Id.* at 990.  The First Circuit held that "[w]hile the issues raised by the June 29 letter represent, perhaps, [the class representative's] strongest claims . . . . Regardless of the merits, because [the class representative] purchased his stock on May 27, 1994, well before Summa Four issued the June 29 letter, he has no standing to complain about the statements included in the letter."  *Id.* at 993.  "In other words, because Summa Four issued the letter after [the class representative] had purchased his stock, the statements in the letter could not possibly have inflated the market price that he paid for those shares."  *Id.*  The First Circuit continued that, "although [the class representative] purports to bring a class action on behalf of all individuals who purchased Summa Four shares [], ***he cannot maintain an action on behalf of class members to redress an injury for which he has no standing in his own right***."  *Id.* (emphasis added).

Here, Mr. Falk acquired ***his entire*** investment in Evolv as part of a merger agreement over one year prior to when the Company issued its first allegedly materially false and misleading financial statement, and so he cannot claim to have been injured by those misrepresentations and

is unable to maintain a proposed class action based on those facts. *See* ECF No. 64-1 at 2; *Buchan*, ECF No. 1 ¶¶1, 4, 21. First Circuit authority precludes it. *Summa Four*, 93 F.3d at 993. Consolidation risks extinguishing the potentially valuable claims the Class is asserting in *Buchan*.

### 2. Consolidation Would Deprive Putative Class Members Of Their Rights

Consolidation would further prejudice the putative Class in *Buchan* because the actual proposed class members that suffered injury arising from Evolv's alleged accounting misconduct would be deprived of their statutory rights to seek Lead Plaintiff appointment under the PSLRA, as discussed further below. *See Gen. Elec.*, 2018 WL 1779345, at *2 ("individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice, . . . potentially exclud[ing] qualified movants from the lead plaintiff process").

Courts routinely deny motions for consolidation when the consolidation would result in such prejudice, as here. *Cent. European Distrib.*, 2012 WL 5465799, at *9 (rejecting consolidation when it would "prejudice [plaintiffs] by subjecting them to a lead plaintiff that would neglect their claims"); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.RD. 483, 487-488 (S.D.N.Y. 2013) (noting that "[c]onsolidation is unwarranted when prejudice would result" and severing claims given "potential repercussions for the abandoned class"). Mr. Falk fails to meet his burden to show that consolidation is warranted and his motion should be denied.

Allowing the cases to proceed separately would not result in prejudice to any party. *Raby* and *Buchan* are both at the earliest stages, defendants have not yet responded to any complaint in either case, discovery has not yet commenced and can be coordinated if necessary to ensure efficiency for the parties and the Court.

-14-

### B. The Amended Complaint Should Be Stricken

"Rule 12(f) endows this court with 'considerable discretion' to strike 'from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'" *Autila v. Mass. Bay Trans. Auth.*, 342 F.R.D. 23, 31 (D. Mass. 2022). Here, the amended complaint in *Raby* contains "immaterial" and "impertinent" matter as it seeks to subsume a distinct case that is beyond the scope of the claims that Mr. Falk was appointed to lead and that he has standing to pursue. *See Sheffield v. City of Boston*, 319 F.R.D. 52, 55 (D. Mass. 2016) (granting motion to strike "allegations beyond the scope of plaintiff's claim"). Indeed, given the "categorically different theories of securities fraud" between the initial and amended complaints in *Raby*, "strik[ing] the new claims and allegations . . . and revert[ing] to the claims and allegations in the original Complaint" is "the only possible way for Lead Plaintiffs to avoid the need for republication (and the revisiting of the lead plaintiff and lead counsel selection that might follow)." *Signet*, 2017 WL 1379385, at *1-2. The portions of the amended complaint in *Raby* that exceed the bounds of Mr. Falk's authority and that Mr. Buchan proposes should be stricken is attached as Ex. B to the Hess-Mahan Decl.

### C. If Consolidation Is Granted, The PSLRA Requires Republication Of Notice And Reopening the Lead Plaintiff Process

The statutory text of the PSLRA establishes a clear statutory procedure for the appointment of a Lead Plaintiff, which is premised upon the putative class members receiving adequate notice of the pending action. *See* 15 U.S.C. §78u-4(a)(3)(A). Under the PSLRA, a plaintiff must "cause to be published . . . a notice advising members of the purported plaintiff class[] of the pendency of the action, the claims asserted therein, [] the purported class period," and informing members of the proposed class they "may move the court to serve as lead plaintiff" within sixty days after the publication of the notice. *Id*.

The purpose of the PSLRA's notice requirement is to ensure members of the purported class are informed about the nature and scope of the litigation, and to provide them with sufficient opportunity to evaluate the alleged claims and their financial interest in the litigation to determine whether to seek Lead Plaintiff appointment. *See id.* By providing class members with sufficient notice of their claims, Congress intended that courts would then be able to appoint the "most adequate plaintiff" to represent the interests of the class pursuant to a fair and open process. *See* H.R. CONF. REP. NO. 104-369, at 32-34 (1995).

Courts frequently require that notice be republished and the Lead Plaintiff process reopened when a Lead Plaintiff "substantial[ly] alter[s]" the theory of liability in an amended complaint as compared to the case that was noticed to investors. *See Flex*, 2019 WL 1472358, at *1. "The inquiry into whether republication is warranted is qualitative, 'turning on a comparison of the two complaints and an assessment of whether, in light of the amendments, . . . potential lead plaintiffs [were] left out of the notice procedure.'" *Gen. Elec.*, 2018 WL 1779345, at *1. "Such an approach accords with the PSLRA's purpose of ensuring that absent class members and potential lead plaintiffs are aware of their rights." *Flex*, 2019 WL 1472358, at *1.

Here, there can be no credible dispute that potential lead plaintiffs were left out of the PSLRA's statutory notice procedure given the amendments to *Raby*. The theory of liability set forth in the notice of the initial *Raby* complaint—which focused on the efficacy of the company's technology—completely excluded the accounting allegations articulated in *Buchan* and that are currently alleged in the amended *Raby* complaint. *See Signet*, 2017 WL 1379385, at *2 (republication of notice warranted when amended complaint asserted "categorically different

theories of securities fraud").[3]  Indeed, it was impossible for the notice of *Raby* to have apprised investors of the theory of liability pleaded in the amended complaint because the announcement of the premature revenue recognition occurred ***seven months after*** the notice was published.  *See Flex*, 2019 WL 1472358, at *2 ("new facts and alleged misrepresentations [which] arose in the months after [the] PSLRA notice . . . only reinforces the degree to which [the] amended complaint 'dramatically alters' the instant lawsuit to account for those new factual allegations").

Mr. Falk's own cited authority demonstrates why republication is warranted, if consolidation is granted.  *See* ECF No. 63 at 8.  In *Flex*, then-District Judge Koh appointed a Lead Plaintiff to prosecute a securities class action pertaining to alleged "misleading statements [] that Flex's internal financial controls were deficient and that the company had improperly accounted for certain obligations."  *Flex*, 2019 WL 1472358, at *2.  However, the amended complaint "focuses on an entirely different factual scenario and set of misrepresentations . . . [relating to] the strength of [the company's] partnership with key customer Nike."  *Id.*  Judge Koh specifically mentioned that, like here, "many of the facts about the Nike partnership were not disclosed and the alleged misrepresentations were not made until after [the] original complaint and PSLRA notice.  *Id.*  As such, Judge Koh held that the "changes to the amended complaint 'make it likely

---

[3] *See also Flex,* 2019 WL 1472358, at *1 (ordering republication of notice given "substantial alteration of the claims" in amended complaint); *Gen. Elec.,* 2018 WL 1779345, at *2 (ordering republication when initial complaint related to "GE's Power segment" and second complaint adds "substantial allegations concerning GE's [long-term-care] business"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *5 (C.D. Cal. May 9, 2013) (additional notice required when amended complaint alleges "entirely new misrepresentations . . . which were nowhere referenced in the Original Complaint"); *In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 939 (S.D. Tex. 2006) (ordering republication when amended alleged "new claims [] that [company] concealed the existence of improprieties related to . . . internal controls, and accounting"); *In re Leapfrog Enters., Inc. Sec. Litig.,* 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) (reopening Lead Plaintiff process when amended complaint "includes new allegations about [company's] distribution and supply chain" and "vastly expands [the theory in] their original complaint").

that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice.'" *Id.* Mr. Falk's remaining authority is distinguishable.[4]

There is a raft of other changes to the amended complaint in *Raby* that further underscores the significant differences between that complaint and the case noticed to investors. While each of these changes on their own may not warrant republication, taken together, and with the grafting of the distinct theory alleged in *Buchan* onto the amended *Raby* complaint, they strongly counsel in favor of republication. First, the amended complaint adds new claims for violations of Sections 11 and 15 of the Securities Act of 1933. *Compare* ECF Nos. 1 ¶1; 64 ¶1; *see In re Select Comfort Corp. Sec. Litig.*, 2000 WL 36097395, at *2-3 (D. Minn. May 12, 2000) (dismissing "claims under Sections 11 and 15 [] on procedural grounds [because] lead plaintiffs were required to republish notice to the class under the PSLRA . . . because the consolidated complaint alleged [those] additional claims . . . while the original complaint contained no such allegations").

Second, the amended complaint expands the class definition to include those who "purchased or otherwise acquired Evolv common stock pursuant to the Company's registration statement and prospectus [] issued in connection with the July 2021 Business Combination," whereas the initial complaint was brought on behalf of those that "purchased or otherwise acquired publicly traded Evolv securities." *Compare* ECF Nos. 1 ¶1; 64 ¶1; *see Waldman v. Wachovia Corp.,* 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) (requiring republication where class

---

[4] *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) (complaints relied "on the same legal theories"); *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4-5 (N.D. Ill. Aug 11, 1997) ("complaints were based on substantially the same claims"); *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015) (complaints "still center[] on the same factual scenario"); *Horowitz v. SunEdison, Inc.*, 2016 WL 1161600, at *2 (E.D. Mo. Mar. 24, 2016) (" no dispute that notice of the amended [] complaint and the [initial] action was actually provided in this case"); *In re Thornburg Mortg., Inc., Sec. Litig.*, 629 F. Supp. 2d 1233, 1242 (D.N.M. 2009) ("The new claims are closely related to the initial claims expressly covered in the notice").

definition was expanded from those who "purchased auction rate securities from Wachovia" to those who "purchased ARS in any auction in which Wachovia served as a lead auction dealer").

Third, the amended complaint also expands the Class Period by approximately seven months. *Compare* ECF Nos. 1 ¶1; 64 ¶1; *See Flex*, 2019 WL 1472358, at *2 ("amended complaint extends the class period by six months" supports republication); *Leapfrog,* 2005 WL 5327775, at *3 (same as to nine-month expansion).

Fourth, the amended complaint asserts a new (and perhaps the most significant) corrective disclosure of the alleged misconduct—a stock price decline of 40% when Evolv announced its premature revenue recognition, which is more than twice as large as any decline alleged in the initial complaint noticed to investors. *Compare* ECF Nos. 1 ¶¶64-98; 64 ¶150; *see also Gen. Elec.*, 2018 WL 1779345, at *2 ("additional stock drops" "[u]nderscor[ed] the scope of [the] difference" between an amended complaint and initial complaint).

To the extent consolidation is granted, judicial efficiency would be served by ordering republication of notice. *Raby* is at an early stage as defendants have not yet responded to the amended complaint. Additionally, discovery is stayed. *See* 15 U.S.C. § 78u-4(b)(3)(B). The benefits that would flow to the putative Class from having a Lead Plaintiff with standing to pursue and a financial interest in the claims asserted in *Buchan* would greatly outweigh whatever slight delay might result from republication of notice.

### D.  Intervention is Warranted

Mr. Buchan is entitled to intervene because he satisfies all elements of intervention of right as well as permissive intervention under Rule 24. Permitting consolidation of Mr. Buchan's case would "impair or impede" his "ability to protect [his] interest" in his claims against Evolv, which arise from his ownership of Evolv stock—securities that form the "subject of the action." Fed. R. Civ. P. 24(a)(2). The "existing parties" will not "adequately represent that interest" because Mr.

Falk does not have standing or a financial interest in the claims Mr. Buchan asserts. *Id.*; *see also Signet*, 2017 WL 1379385, at \*1 (granting investor's motion to intervene for purposes of requiring Lead Plaintiff to republish notice).

Moreover, Mr. Buchan satisfies the requirements for permissive intervention. Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Here, Mr. Falk is admittedly attempting to "subsume" Mr. Buchan's claims, over which he has no authority. ECF No. 63 at 2. In addition, the "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Allowing Mr. Buchan to intervene will not unduly delay or prejudice other parties given the stage of the litigation, as discussed above. *See Gen. Elec.*, 2018 WL 1779345, at \*3 (granting investor's motion to intervene to reopen Lead Plaintiff process as "it plainly has a 'claim . . . that shares with the [original] action a common question of law or fact', and the Court does not find that intervention will 'unduly delay or prejudice the adjudication of the original parties' rights'").

For purposes of Rule 24(c), which states that the intervention motion must be "accompanied by a pleading that sets out the claim or defense for which intervention is sought," Mr. Buchan provides his complaint. *See* Hess-Mahan Decl. Ex. A.

## IV.    CONCLUSION

For the reasons discussed above, Mr. Buchan respectfully submits that the motion to consolidate and vacate the Lead Plaintiff deadline in *Buchan* should be denied and that the amended complaint in *Raby* should be stricken to delete the allegations lifted from *Buchan*. To the extent the Court consolidates *Buchan* with *Raby*, the PSLRA requires that notice be republished, and the Lead Plaintiff process reopened, to protect the interests of the putative Class.

-20-

Dated: November 27, 2024

Respectfully submitted,

**HUTCHINGS BARSAMIAN
MANDELCORN, LLP**

/s/ Theodore M. Hess-Mahan
Theodore M. Hess-Mahan (BBO #557109)
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone: (781) 431-2231
Facsimile: (781) 431-8726
thess-mahan@hutchingsbarsamian.com

*Local Counsel for Proposed Intervenor
Douglas Buchan*

**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (*pro hac vice* forthcoming)
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz (*pro hac vice* forthcoming)
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, CA 94612
Telephone: (415) 445-4003
Facsimile: (212) 205-3960
amccall@bfalaw.com

*Counsel for Proposed Intervenor
Douglas Buchan*

-21-

-22-

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 27, 2024.

/s/Theodore M. Hess-Mahan
Theodore M. Hess-Mahan