## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERALD RABY, Individually and on behalf of all others similarly situated, | Case No. 1:24-cv-10761-ADB |
| Plaintiff, | |
| v. | |
| EVOLV TECHNOLOGIES HOLDINGS, INC. F/K/A NEWHOLD INVESTMENT CORP., PETER GEORGE, MARIO RAMOS, MARK DONOHUE, KEVIN CHARLTON, and ADAM DEUTSCH, | |
| Defendants. | |

## LEAD PLAINTIFF ROBERT FALK'S OPPOSITION TO DOUGLAS BUCHAN'S MOTION TO STRIKE PORTIONS OF THE AMENDED COMPLAINT

Lead Plaintiff Falk[1] submits this opposition to Buchan's Motion to Intervene for the Limited Purpose of Opposing the Motion to Consolidate and Vacate Lead Plaintiff Deadline, and to Strike Portions of the Amended Complaint (Dkt. No. 65, the "MTS"), and the memorandum in support (Dkt. No. 67, "MTS Memo"). Specifically, Falk opposes Buchan's motion to strike the amended complaint in the above-captioned action. As set forth in Falk's Motion to Consolidate Related Actions and to Vacate Lead Plaintiff Deadline (Dkt. Nos. 62-63), *Raby* and *Buchan* should be consolidated, the lead plaintiff appointment process should not be reopened, and the December 31, 2024 lead plaintiff deadline noticed in *Buchan* should be vacated. Facts that emerged since Falk's consolidation motion was filed but before Buchan's MTS confirm that consolidation is the appropriate remedy. Falk's motion should be granted, and Buchan's motion should be denied.

## I.    PRELIMINARY STATEMENT

Buchan argues that portions of Falk's amended complaint should be stricken because it contains "immaterial" and "impertinent" matters, but he ignores public facts that confirm the product inefficacy allegations (of the initial *Raby* complaint) are related to the improper accounting allegations (of the initial *Buchan* complaint). Buchan's motion is nothing more than an attempt by his counsel to wrest control of the securities fraud claims in this action away from the Court-appointed Lead Plaintiff, as evidenced by the fact that Buchan already moved for lead plaintiff and lost and that his counsel has issued 45 press releases in the 39 days since *Buchan* was filed fishing for ***another movant*** that has a larger a financial interest than Buchan.

Before Buchan's motion to strike was filed, the Federal Trade Commission ("FTC") filed a complaint that confirms that the false marketing claims (which were the basis of the initial *Raby*

---

[1] All capitalized terms herein shall have the same meaning as in Falk's motion to consolidate and supporting memorandum (Dkt. Nos. 62, 63).

complaint) were directly tied to the overstated revenue (which is the subject of the initial *Buchan* complaint) as alleged in Falk's recently filed amended complaint. *See* Declaration of Daryl Andrews in Support of Robert Falk's Opposition to Douglas Buchan's Motion to Strike Portions of the Amended Complaint ("Andrews Decl."), Ex. 1 ("FTC Complaint"). In fact, the FTC confirms the allegations in Falk's amended complaint and the accuracy of the former employees' accounts. According to the FTC, since as early as October 2019, Evolv overstated the efficacy of Express, in part because Evolv "has not conducted testing, has not had Express tested by United States or United Kingdom government agencies, and does not otherwise possess studies that substantiate [its] marketing claims." *Id.* ¶¶ 27, 30. As the FTC explains, these false marketing claims enabled Defendants to overstate revenue, because Evolv "exercise[d] contracts won through the deceptive acts and practices alleged in this complaint without giving customers an opportunity to withdraw from the contracts, thereby implicitly threatening to enforce the contracts against those customers; [and] has earned significant revenues from participating in these unlawful acts and practices." *Id.* at ¶ 32. These public facts confirm the connection between the *Raby* Action and the *Buchan* Action, yet Buchan's MTS completely ignored the FTC Complaint.

Litigating these facts as two separate cases would be a gross waste of resources. By artificially parsing the facts of two interrelated actions into two separate claims, the lead plaintiffs of these actions would be unable to pursue the most effective presentation of the facts, resulting in two actions that are weaker than one united action. This would harm Evolv's investors and only serve to benefit Buchan's counsel. Defendants would be forced to file two separate motions to dismiss, wasting resources that could be used to fund a later resolution of the claims, especially given that the same insurance policies cover both actions. Likewise, the Court would expend twice

the judicial resources deciding these issues, which could also lead to inconsistent rulings, presenting res judicata issues.

That the *Raby* and *Buchan* actions should be litigated as one consolidated action is further illustrated by the existence of the related derivative action, *Maas v. Neil Glat, et. al.*, 1:24-cv-12822-ADB (D. Mass), which alleges derivative claims against Evolv's board of directors based on the allegations in both *Raby* and *Buchan*. To sever the claims in *Maas* would only weaken the claims and waste resources—just as declining to consolidated *Raby* and *Buchan* would weaken both cases and waste resources.

The PSLRA grants the Lead Plaintiff the right to litigate the case as he sees fit, in the best interest of the class. Buchan and his counsel are trying to usurp that process for their own (not the class's) benefit. Buchan claims that Court's must re-notice the PSLRA process because additional news came out about the Company. Courts do not agree with this because it would lead to repeated delays and a never-ending lead plaintiff process. For example, another plaintiff could file a complaint claiming that the resolution of the FTC investigation necessitates a separate action and/or a new PSLRA lead plaintiff process. Likewise, the Company recently admitted that its Chief Financial Officer knew of the revenue recognition issues for months before it was disclosed and terminated his employment. Notably, Buchan does not argue the CFO departure necessitates a new PSLRA notice process. This is likely because Buchan and his counsel are well aware that courts have consistently held that where new facts that are related to the earlier allegations come to light, a republication of notice is not necessary.

Buchan and his counsel also conveniently ignore that if their request to re-notice is granted, Buchan would again lose out on appointment as lead plaintiff. This is because courts use the most

3

expansive class period for determining financial interest and Falk's interest is magnitudes greater than Buchan under that class.

Buchan also claims that Falk would not have standing for certain claims if the Court considered the revenue issues completely separately from the marketing claims and completely dismissed all marketing claims, leaving only the revenue claims in the class period in the *Buchan* complaint. But this is pure speculation, as this Court as already held, and mere speculation is not enough to rebut the presumption as to the movant with the largest financial interest should be lead plaintiff. *See* Dkt. No. 48. In fact, the Court already explained that there is "the possibility that Falk will not have standing to bring all available claims and that this may have to be dealt with later in the proceedings" but that "the PSLRA requires that the lead plaintiff be the party with the largest financial stake in the outcome of the case who otherwise meets the requirements of Rule 23, absent the satisfaction of a burden of proof not met here." Dkt. No. 48 at 5 n.2. Regardless, Buchan's argument ignores that Falk currently has standing for the claims pursued in both the *Raby* and *Buchan* actions because he purchased during the class period and held shares over all corrective disclosures.

In contrast, Mr. Buchan would actually be atypical and subject to unique defenses due to his filing (at least one) false certification with the Court. Specifically, Buchan filed two different sworn certifications that directly conflict with each other, confirming that at least one is false. Unsurprisingly, courts have found that lead plaintiff movants that have filed false certifications with the Court attesting to their class period transactions and financial interest are inadequate. Buchan and his counsel simply ignore this argument in Falk's motion for consolidation. This further demonstrates that this action is not about Buchan at all since if it was he would actually be defending himself. Instead, it  is clear that Buchan's counsel are the driving force behind this

motion to strike, since even with this motion pending they have repeatedly issued press releases seeking investors with a larger loss than Buchan with whom Buchan's counsel will presumably move for lead plaintiff and lead counsel.

In sum, Buchan baselessly asserts that the allegations relating to the extra-contractual terms and conditions are not related to product inefficacy. Buchan's bald assertion is contradicted by the FTC, Falk's amended complaint, the former employees cited in Falk's amended complaint, and Evolv's own statements in the weeks since the *Buchan* action was filed. Buchan's counsel's self-serving efforts at the expense of the putative class should not be countenanced. Buchan's motion should be denied in its entirety, and Falk should be entitled to continue to litigate the case as the appropriately appointed Lead Plaintiff under the PSLRA.

## II.   THE MTS SHOULD BE DENIED BECAUSE *RABY* AND *BUCHAN* ARE INEXTRICABLY RELATED

*Raby* and *Buchan* should be consolidated because their allegations are inextricably linked, and cannot be separated without prejudicing both actions. As Falk alleges in the amended complaint, Defendants falsely marketed Evolv Express by overstating its efficacy in detecting weapons and overstated revenue through those false marketing practices. Buchan's only basis to strike the amended complaint is that it "contains 'immaterial' and 'impertinent' matter as it seeks to subsume a distinct case that is beyond the scope of the claims that Mr. Falk was appointed to lead and that he has standing to pursue." MTS Memo at 15. The assumptions underlying Buchan's argument are wrong, as set forth below, and raise questions about Buchan's counsel's adequacy to serve the best interests of Evolv investors. As such, the actions should be consolidated, and the MTS should be denied.

**A.     The Recently Filed Federal Trade Commission Complaint Further Demonstrates That *Raby* And *Buchan* Are Not Distinct**

Recent developments in the FTC investigation further demonstrate that *Raby* and *Buchan* are factually intertwined and should be consolidated. On November 26, 2024, the day before Buchan filed his MTS, the FTC published a release titled "FTC Takes Action Against Evolv Technologies for Deceiving Users About its AI-Powered Security Screening Systems."[2] In the release, the FTC announced that it had filed a complaint alleging that "Evolv deceptively advertised that its Evolv Express scanners would detect all weapons and made misleading claims that its use of artificial intelligence makes its screening systems more accurate, efficient, and cost-effective than traditional metal detectors." *Id.* The FTC Complaint alleges, among other things, that Evolv is "continuing to exercise contracts won through the deceptive acts and practices alleged in this complaint without giving customers an opportunity to withdraw from the contracts, thereby implicitly threatening to enforce the contracts against those customers" and have thereby "earned significant revenues" through false advertising. FTC Complaint ¶ 32. In other words, the FTC Complaint challenges the validity of Evolv's sales contracts, through which Evolv has recognized revenue and projected future revenue. In fact, in the Stipulated Order between the FTC and Evolv,[3] Evolv agreed that it will "provide a Notice to all Customers . . . of their right to cancel their contracts within 60 days of receipt of the Notice"—raising the prospect that Evolv will have to nullify some of its earlier-reported sales. Stipulated Order at 4. To summarize, the FTC Complaint

---

[2] *See* Andrews Decl., Ex. 2.

[3] *See* Andrews Decl., Ex. 3 ("Stipulated Order").

makes clear that Evolv was locking customers into sales through deception, and then reporting those fraudulent sales to its investors.[4]

*Buchan* tells a similar and related story. In addition to pushing sales through deceptive advertising, Evolv also pushed sales by providing certain customers with "extra-contractual terms and conditions"[5] that, once properly accounted for, negatively impact revenue recognition and other metrics. In response, Evolv terminated at least one person from its sales department. *See id.*

Notably, Buchan did not mention the FTC release in his MTS. Buchan claims that "there is no specific allegation that Evolv's accounting issues alleged in *Buchan* have anything to do with the efficacy of Evolv's technology or its marketing practices." MTS Memo at 10. Similarly, he claims that "there is no specific allegation that Evolv's accounting issues related to the SEC or FTC investigations pleaded in *Raby.*" MTS Memo at 11. However, Buchan's assertion is unsupported. Buchan acknowledges that the premature revenue recognition is due to certain "extra-contractual terms and conditions." MTS Memo at 11. The FTC Complaint confirms that those "extra-contractual terms and conditions" relate to Evolv's false marketing of Express and the product's efficacy. *E.g.*, FTC Complaint, ¶ 32. Buchan's willingness to ignore pertinent facts raises questions about his adequacy to serve as representative of any class of Evolv investors.

**B.    Untangling *Buchan* from *Raby* Would Be A Head Spinning And Wasteful Endeavor**

The Actions cannot be untangled because all of the transactions at issue in *Buchan* are also at issue in *Raby*. The overstatement of revenue in the *Buchan* action cannot be adequately explained in a complaint without delving into what the "extra-contractual terms and conditions"

---

[4] Counsel for Lead Plaintiff Falk intends to seek leave in the near future to add the FTC's new revelations to the operative complaint.

[5] *See* Andrews Decl., Ex. 4.

are, which in turn requires discussing the Company's false marketing of Evolv Express as that is Evolv's flagship product and main source of revenue. Additionally, attempting to apportion damages in two separate actions may result in under compensation or double recoveries. These possibilities should be avoided by consolidation. Moreover, litigating these facts as two separate cases would also be a gross waste of resources. Defendants would be forced to file two separate motions to dismiss, which are resources that could be used to fund a later resolution of the claims given that the same insurance policies cover both actions. Finally, the Court would expend twice the judicial resources, and deciding these issues may lead to inconsistent rulings, presenting res judicata issues.

  **C. Buchan Has Not Demonstrated That The Allegations In *Raby* And *Buchan* Are In Fact Unrelated**

Buchan's contention that the deceptive marketing and extra-contractual terms and conditions are unrelated is speculative at best. The FTC Complaint suggests the extra-contractual terms and conditions are related to the marketing of Evolv Express. Buchan claims these facts are unrelated, but he offers no explanation of what those extra-contractual terms and conditions are. Therefore, at this time, there is no plausible theory to suggest that the allegations in *Raby* and *Buchan* are unrelated.

  **D. Denying Consolidation And Striking Overlapping Allegations Would Prejudice The Class In Both *Raby* And *Buchan***

Non-consolidation and striking overlapping allegations would prejudice both actions since the allegations in *Raby* and *Buchan* are mutually-reinforcing. A company that deceptively markets its product to push sales is also more likely to push sales through extra-contractual terms and conditions, and *vice versa*. It's the same story: Evolv was pushing sales by any means necessary and misleadingly reporting those sales to its investors. If *Raby* and *Buchan* are not consolidated, and the actions cannot reference the allegations of the other, Defendants will have the advantage

that they do not have to contend with Evolv's over-arching pattern of deceptive sales practices, and can instead paint Evolv's deceptive marketing and extra-contractual terms and conditions as isolated issues—risking smaller recoveries for the class.

The related derivative action *Maas v. Neil Glat, et. al.*, 1:24-cv-12822-ADB (D. Mass.) further illustrates that *Raby* and *Buchan* tell one coherent story. *Maas* is based on and synthesizes the allegations in both *Raby* and *Buchan*. *See Maas*, Dkt. No. 1 (the *Maas* Complaint). As such, the *Maas* allegations could not be severed without harming the *Maas* action. Moreover, there is no practical consideration that justifies separating the *Raby* and *Buchan* allegations for purposes of the securities fraud action, but then combining the *Raby* and *Buchan* allegations in the related *Maas* derivative action. The class would only be harmed by separating the claims.

*     *     *

For these reasons, and those presented in Falk's motion to consolidate, consolidation is warranted and the MTS should be denied.

### III. BUCHAN'S REQUEST TO REPUBLISH NOTICE AND REOPEN THE LEAD PLAINTIFF APPOINTMENT PROCESS SHOULD BE DENIED

Buchan has requested republication of notice and a reopening of the lead plaintiff appointment process if the actions are consolidated. *See* MTS Memo at 15-19. The request should be denied.

#### A. Republication Is Contrary To Law And Not Warranted By The Facts In This Instance

Republication is heavily disfavored when a class period is expanded in an amended complaint to add new, related facts. *See Cheng v. Activision Blizzard, Inc.*, No. 21-cv-6240, 2022 WL 304672, at *2 (C.D. Cal. Jan. 30, 2022) ("The PSLRA does not require the lead plaintiff to republish notice upon the filing of an amended complaint."); *Ito-Stone v. DBV Techs. S.A.*, No. 19-cv-525, 2020 WL 6580776, at *3 (D.N.J. Nov. 10, 2020) ("[T]he PSLRA does not address and

9

therefore does not appear to contemplate a duty to republish notice."); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015) ("In general, republication is not required where a complaint expands the class period or includes an additional defendant or a closely related new claim."); *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1239 (D.N.M. 2009) ("While the PSLRA does not foreclose the possibility of republication and additional notices, the language of the statute cautions against imposing such requirements in all but unusual situations."); *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000) ("The statute does not mandate, nor does it suggest, that a Court approved lead plaintiff must re-publish a notice of the purported class after an amended complaint is filed."). As such, it is not surprising that Buchan cites no authority for reopening the lead plaintiff appointment process in a case like this, where the new allegations are so closely related to the original allegations, as explained *supra*. As such, republication should be rejected.

While Buchan claims that Falk would not have standing for certain claims in the consolidated action, *see* MTS Memo at 12-14, his argument is wholly speculative. When the actions are properly consolidated, Falk has standing to pursue claims over the longest class period (June 28, 2021 to October 25, 2024, inclusive). *See* Dkt. No. 64, ¶ 1. Buchan argues that Falk does not have standing to pursue any claim alleged in *Buchan*, but this assumes that the statements before August 19, 2022 (when the *Buchan* class period starts) will be dismissed. This assumption is not reasonable. Specifically, Buchan assumes that only the financial statements since August 2022 were misleading. MTS Memo at 12-13. But the FTC Complaint alleges that Evolv's deceptive marketing practices began in October 2019, thus statements throughout Evolv's existence as a public company (*i.e.*, since July 2021) are false and misleading. As a result, Falk will have standing when the *Raby* and *Buchan* actions are consolidated and Buchan does not

10

dispute this fact. Nor could he: Falk purchased shares during the consolidated class period and held shares through every corrective disclosure.

In any event, a lead plaintiff need not have standing to pursue every single claim in an action. *See Fishbury, Ltd. v. Connetics Corp.*, No. 06-cv-11496, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006) ("[T]he lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class complaint."); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. 03-cv-05421, 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005) ("[B]ecause the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.") (quoting *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004)). Even if certain statements are dismissed by the Court at a later date and Falk loses standing to pursue any particular claim, he can add additional plaintiffs at a later date who have standing for such claims. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("The PSLRA does not prohibit the addition of named plaintiffs to aid the Lead Plaintiff in representing the class."). In fact, the Court already held as such. *See* Dkt. No. 48 at 5 n.2 (appointing Falk lead plaintiff even though there is "the possibility that Falk will not have standing to bring all available claims and that this may have to be dealt with later in the proceedings"). Thus, there is no standing issue that would require republication to seek a new lead plaintiff.

**B.      Buchan's Request To Reopen The Lead Plaintiff Appointment Process Should Further Be Denied Because It Is A Product Of Buchan's Counsel's Gamesmanship**

Buchan's request to reopen the lead plaintiff appointment process if the cases are consolidated should also be denied because the request is nothing more than gamesmanship by Buchan's counsel aimed at securing a leadership role as counsel in this case. The PSLRA abhors

11

such gamesmanship and instead favors the appointment of a lead plaintiff at the outset to control the action as it evolves going forward. *See Gutman v. Sillerman*, No. 15-cv-7192, 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015) ("A principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which WGOF and its counsel have engaged here, by putting everyone who wanted lead plaintiff status on an equal footing, with a decision to be made on the merits and under a strict timetable."); *Ito-Stone*, 2020 WL 6580776, at *3 ("[T]he statutory scheme seems focused on the expeditious selection of lead plaintiff by setting relatively short deadlines for publishing the initial notice, for filing motions to be named lead plaintiff, and even for the Court to adjudicate competing lead plaintiff motions").

Specifically here, Buchan's request to reopen the process does not make sense because Buchan would not be appointed if it were reopened. Buchan already conceded in the earlier lead plaintiff contest that Falk is a more appropriate lead plaintiff because Buchan "does not have the largest financial interest in this litigation" (Dkt. No. 22) claiming a loss of just $63,689, compared to Falk's loss of $675,707. *See* Dkt. No. 10-2; Dkt. No. 19 at 12. The addition of the allegations in the *Buchan* complaint does not meaningfully change the comparison because the most inclusive class period is used to determine financial interest. *See Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) ("[C]ourts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period.").

Moreover, even if Buchan's loss were large enough to be appointed lead (it is not), he would be disqualified from any lead plaintiff appointment contest because he filed at least one false certification under penalty of perjury. The certification he filed with his new complaint differs drastically from the certification he filed with his earlier lead plaintiff application, listing many

additional trades between August 2023 and January 2024. *Compare Buchan* Action, Dkt. No. 1-1 (Certification filed with *Buchan* Action complaint), *with Raby* Action Dkt. No. 10-1 (Certification filed with *Raby* Action lead plaintiff motion). Buchan and his counsel do not explain the discrepancies. These errors alone would sink any bid to appoint Buchan as lead plaintiff. *See Rodriguez v. DraftKings Inc.*, No. 21-cv-5739, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (movant's "careless errors weigh heavily against his appointment as lead plaintiff"); *Karp v. Diebold Nixdorf, Inc.*, No. 19-cv-6180, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("The Court thus finds that the errors in the Aroras' submissions further militate against appointment and render them inadequate to serve as lead plaintiff.") (internal quotation marks and brackets omitted). As such, if the lead plaintiff appointment process were reopened, Buchan would still not be appointed.

Reopening the process would serve no one but Buchan's counsel—Bleichmar Fonti & Auld LLP ("BFA")—because it would provide them an opportunity to move again for lead plaintiff and lead counsel with the other lead plaintiff applicants it has been searching for. This is clear from the fact that Buchan's counsel has been fishing for clients since the *Buchan* complaint was filed, issuing **at least 45 press releases in the 39 days** between the date *Buchan* was filed and the date this opposition was filed. *See* Andrews Decl., Exs. 5 – 49. For example, BFA warned that "[i]nvestors have until December 31, 2024 to ask the Court to be appointed to lead the case" (Ex. 13), and "encouraged [Evolv investors] to submit [their] information to the firm." Ex. 10. BFA also enticed investors, stating that "there is no cost to you" and that any would-be lead plaintiffs "are not responsible for any court costs or expenses of litigation." Ex. 44. Since Buchan cannot and will not be appointed as lead plaintiff, it appears the goal of Buchan's proposed republication is to allow Buchan's counsel to continue to fish for clients with larger losses (and no history of

13

false sworn certifications), or use one of the clients they acquired from this fishing as a new lead plaintiff movant. The Court should reject such gamesmanship and deny Buchan's (counsel's) request to republish notice.

## IV.    THE DECEMBER 31, 2024 LEAD PLAINTIFF APPLICATION DEADLINE NOTICED FOR *BUCHAN* SHOULD BE VACATED

Since *Raby* and *Buchan* should be consolidated, and the lead plaintiff application process should not be reopened, there is no need for the December 31, 2024 lead application deadline noticed for *Buchan*. As such, the deadline should be vacated.

## V.    CONCLUSION

For these reasons, (1) the MTS should be denied, (2) *Raby* and *Buchan* should be consolidated, (3) Buchan's request that notice be republished or that the lead plaintiff appointment process be otherwise reopened should be denied, and (4) the December 31, 2024 lead plaintiff application deadline noticed for the *Buchan* action should be vacated.

Respectfully submitted,

DATED: December 10, 2024                **ANDREWS DEVALERIO LLP**

By: *s/ Daryl Andrews*
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
Email: glen@andrewsAndrews.com
          daryl@andrewsAndrews.com

*Liaison Counsel for Lead Plaintiff Robert Falk*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Casey E. Sadler (*admitted pro hac vice*)
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

14

Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Lead Plaintiff Robert Falk*

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of December 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Daryl Andrews*
Daryl Andrews
