# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>      v.<br><br>EVOLV TECHNOLOGIES HOLDINGS, INC.,<br>a corporation,<br><br>   Defendant. | **Case No. 1:24-cv-12940**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action for Defendant's violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). For these violations, the FTC seeks relief, including a permanent injunction and other relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

## SUMMARY OF THE CASE

2.      Evolv Technologies Holdings, Inc. ("Evolv") has made false or unsupported claims about its security screening system, Evolv Express ("Express"), in use at the entries of thousands of schools and other venues across the country. The company has misrepresented the extent to which the system will detect weapons and ignore harmless items. Evolv has made unsupported claims that its technology, which incorporates artificial intelligence, makes its system more accurate, efficient, and cost-effective than traditional metal detectors. It has implied falsely or without adequate substantiation that users can avoid the trade-offs between a highly secure screening process and a seamless experience for those entering a venue. However, the extent to which Evolv's scanners will detect weapons depends largely on the sensitivity level set by the user, with higher sensitivity levels meaning more false alarms.

3.  In its marketing efforts, Evolv has specifically targeted public school systems. However, when tested and when deployed at schools, Express has sometimes failed to alarm on dangerous weapons but has alarmed on harmless items that students often bring to school. These issues have led Evolv to suggest new options for school customers – such as a higher sensitivity setting and installation of conveyor belts – that reduce further the likelihood that such customers will enjoy the claimed benefits of Express as compared to traditional metal detectors. Evolv has made millions of dollars via the sale of Express to an increasing number of school districts nationwide.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

5.  Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (b)(3), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

6.  The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

## DEFENDANT

7.  Defendant Evolv Technologies Holdings, Inc. ("Evolv"), is a Delaware Corporation with its principal place of business at 500 Totten Pond Road, 4th Floor, Waltham, MA 02451. Evolv transacts or has transacted business in this District and throughout the United

Page **2** of **17**

States. At all times relevant to this Complaint, acting alone or in concert with others, Evolv has advertised, marketed, distributed, and sold security screening systems throughout the United States.

## COMMERCE

8. At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

9. Since 2019, Defendant has advertised, offered for sale, sold, and distributed Evolv Express, a security screening system intended to detect whether people are bringing weapons into various buildings and venues, including schools.

10. Evolv represents that its scanners use low-frequency electromagnetic fields and sensors to detect concealed weapons as people walk through the scanners.

11. Evolv states on its website and elsewhere that Express is "AI-driven," is "AI-based," is "AI-powered," uses "proven artificial intelligence," and uses a software platform and equipment that enables the system to spot potential threats and let security guards know the location of that threat on people or in their bags.

12. For Evolv, marketing its product as involving the use of AI is a very deliberate choice. In a March 23, 2023, email from an Evolv manager to media consultants, she noted the need to "emphasize AI is important as AI is really what distinguish[es] us from competitors."

13. Evolv has positioned itself as a high-tech alternative to traditional metal detectors. The company has insisted publicly and repeatedly that Express is a "weapons detection" system

and not a "metal detector." This representation is a solely a marketing distinction, in that the only things that Express scanners detect are metallic, and its alarms can be set off by metallic objects that are not weapons.

14. Express customers choose between several sensitivity settings that will change how often the system will detect potential weapons. At higher sensitivity settings, the system will catch more potential weapons but will also alarm more often on harmless personal items. At lower sensitivity settings, the system will catch fewer potential weapons but will alarm less often on harmless personal items.

15. Evolv uses a multi-year, subscription-based sales model. The subscription contracts contain no right of cancellation. While the cost depends on the subscription terms, add-ons, and the number of venues covered, customers generally pay several million dollars for Express systems. For example, in early 2023, one school board entered into an $8 million, four-year contract with Evolv.

**School Customers**

16. Evolv has specifically targeted schools, sports stadiums, and hospitals for sales, stating, in its 2022 Annual Report, that its "most significant opportunities … in the near term are in education, healthcare and professional sports. The education market remains exceptionally large with nearly 130,000 schools across the United States. Gun violence remains a top issue for district leadership, school administrators, parents, teachers and students." Evolv also stated in that report that it was "now operating in over 400 school buildings in the United States, up from about 20 school buildings at the end of 2021," and that "Express can now be found in 8 of the 100 largest school districts in the country."

17.     In a February 2024 article in Forbes, an Evolv executive said that Express was in 700 school buildings in 40 states, that 325,000 students pass through Express scanners daily, and that schools represented 50% of Evolv's business. According to Evolv's website, as of June 2024, Express was in over 800 school buildings in the United States.

18.     Evolv has marketed its product as an answer to the problem of guns and other weapons in schools. In an August 17, 2022, email with media consultants, Evolv's Vice President for Corporate Communications discussed public messaging to educators, parents, and others, noting that, "While this is about fear and anxiety, we want to get across how impactful the peace of mind piece is in having weapons-free zones (secured by Evolv)." Evolv has also redirected people to its website via the domains schoolshootingforum.com and schoolshootingforum.org.

19.     When tested and deployed at schools and elsewhere, and at various sensitivity settings, Express has failed to alarm on some weapons, including guns and knives.

20.     In October 2022, at a school in New York, a student was stabbed by a 7-inch knife that reportedly passed through an Express scanner. At other times in the same school system, Evolv scanners failed to detect an off-duty policeman's service weapon but did raise an alarm for a student's lunchbox. After the stabbing incident, school officials raised the sensitivity settings, doubling the false alarm rate to 50%.

21.     When tested and deployed at schools and elsewhere, and at various sensitivity settings, Express has alarmed often on harmless personal items, including Chromebooks, binders, water bottles, and other items that students often bring to school.

22.     In some schools that use Express, students have been instructed to remove Chromebooks and certain other items from their bags and hold them in certain ways to avoid false alarms when the students pass through the scanners.

23.     Some schools have had to hire or use additional personnel to monitor the process of students proceeding through Express scanners at school opening times.

24.     In 2023, Evolv introduced a more sensitive setting, "G," for Express users, with the stated aim of detecting more knives, but admitting that, at this new setting, some knives will still be missed, more false alarms will occur, additional staffing may be required, and fewer people can pass through the scanners in a given time period.

25.     In 2023, with the stated aim of reducing false alarms in schools, Evolv started recommending to its school customers that they deploy an alternative to having people walk through Express scanners with their personal items. It recommended instead that such customers either use (1) conveyor belts on which students can place various personal items or (2) a table and a "pass-around" process by which various personal items are diverted by hand around the scanners.

**Marketing Claims**

26.     Evolv markets Express through its website and via other forms of digital marketing. It has also marketed directly to school systems and has targeted particular school officials, including in connection with bids for contracts to provide security screening systems.

27.     To induce the purchase of Express, Defendant has disseminated or caused to be disseminated advertisements and promotional messages or materials that contain the following statements, among others:

A.      From at least August 2022 to October 2022, the homepage of Evolv's website, https://www.evolvtechnology.com, featured the prominently placed phrase "Weapons-Free Zones," as seen in this example from October 13, 2022:



B.      From at least November 2022 to January 2023, the homepage of Evolv's website featured the similarly, prominently placed phrase "safe zones," as seen in this example from January 4, 2023:



C.      From at least March 2023 to January 2024, an Indiana-based Evolv reseller, Tri-Electronics, has used https://www.weaponsfreezones.com/ as the URL of its website and has featured the prominently placed phrase "weapons-free zones" on its homepage;

D.      From at least August 2021 to January 2024, the homepage of Evolv's website has represented that Express will give security teams "the assurance that they can reliably pinpoint and stop threats";

E.      In its "Transforming Human Security eBook," available on its website since at least 2021, Evolv has stated that Express will "[s]pot threats while ignoring harmless personal items" and that there is "[n]o stopping, emptying pockets, or removing bags";

F.      On the "Schools" page of its website, Evolv has represented, from at least May 2021 to May 2023, that students can walk through "without stopping, emptying their pockets or bags, or waiting in line" while still being protected from concealed weapons, as seen in this example from October 26, 2022:



G.      On the homepage of its website, from at least August 2021 to October 2022, Evolv represented that customers could avoid a trade-off between security procedures that stop threats and a seamless visitor experience, as seen in this example from October 23, 2022:



H.      Near the top of the "FAQ" page of its website, Evolv has represented, from at least October 2021 to January 2024, that, "Using advanced sensors and

artificial intelligence (AI)," its products "screen everyone who enters a venue – without the need to hand over their belongings or even slow their pace";

I.      In an Express marketing email dated February 2, 2022, and sent to an official at a school district in California, Evolv stated that it would improve security staff efficiency "while eliminating false positives when screening";

J.      In an Express "sole source" document signed on June 2, 2022, and submitted in connection with a contract with a Maryland school district ("Maryland sole source document"), Evolv touted "low nuisance alarm rates" and its "Frictionless Screening: No stopping is required. No emptying pockets or removing bags. Groups of people screened simultaneously; personal items do not require removal.";

K.      In an Express marketing email dated September 3, 2022, and sent to an official at a school district in California, Evolv stated Express "detects weapons while ignoring harmless personal items and allowing visitors to walk through at a natural pace";

L.      In a "Guide to Getting to Know Your Child's School Security Screening System" (hereinafter "Parent Guide"), dated October 2022, and made available to parents of children attending schools at which Express was installed, Evolv states that "Express uses artificial intelligence and sensor technology to instantly distinguish a phone or personal item from a potential weapon or component of a weapon" and that students can "[w]alk through at the pace of life without always stopping, removing coats or backpacks, or emptying pockets";

M.      In a marketing video, "Experience It OnDemand," available on Evolv's website at relevant times including November 2022, Evolv represents that Express "[d]etects weapons and ignores harmless items," and that people walk through "with bags and pockets intact" [video capture Nov. 10, 2022]:



N.      On the homepage of its website, including from at least August 2021 to October 2023, Evolv made implied, favorable comparisons of Express to traditional metal detectors, including via representations that Express offers the "highest degree of weapons detection accuracy," provides "[m]ore accurate threat detection," and "helps to provide the safest possible venue entry";

O.      From at least August 2021 to June 2023, the homepage of Evolv's website has represented that Express "drastically reduces false alarm rates" in contrast with "traditional security screening";

P.      From at least October 2019 to August 2022, the homepage of Evolv's website has represented that Express provides "10X Faster Throughput" or is "10x faster than metal detectors";

Q.      On the "Express" page of its website, Evolv has represented, from at least February 2020 to January 2024, that Express is "10x faster than metal detectors" or "almost 10X faster than metal detectors" or has "10X Faster Throughput than Traditional Checkpoints";

R.      On the "Schools" page of its website, Evolv has represented, from at least May 2021 to October 2023, that Express is "10x faster than metal detectors" and has "10x the flow of metal detectors";

S.      In the 2022 Maryland sole source document, Evolv represents that Express is "10X Faster than metal detectors";

T.      In several Express marketing emails sent in September 2022 to a California school official, Evolv stated that Express will process "10x more people," "outperforms legacy metal detectors with flow that is 10x faster," and allows customers to "Experience Security Screening That's 10X Faster";

U.      In the Parent Guide, Evolv represents that Express is "10X faster than metal detectors";

V.      From at least September 2020 to June 2022, the homepage of Evolv's website has represented that Express will provide customers with either "70% less labor cost than metal detectors or "70% lower cost";

W.  From at least November 2021 to January 2024, the "Virtual Demo" page of Evolv's website represents that Express will "reduce labor costs by up to 70%;

X.  In the "Experience It OnDemand" video, an Evolv representative states that Express "uses less frontline staff labor to operate and the overall expense is up to 70% less than walk-through metal detectors";

Y.  On the "Schools" page of its website, Evolv has represented, from at least May 2021 to October 2023, that the use of Express means "fewer staff members are required to operate the system" or "far fewer staff and systems are needed."

28.  In a press release issued on February 20, 2024, and appearing on its website, Evolv represented that government agencies in the United States and the United Kingdom have tested Express and "concluded that [it] was highly effective at detecting firearms and many other types of weapons."

29.  In a March 2022 blog post, Evolv discussed the results of a report on Express by the National Center for Spectator Sports Safety and Security (NCS[4]), stating that the results "provide third party validation . . . that Express offers an unmatched combination of high-performance weapons detection, low false alarm rates," and that "[h]aving a trusted, fully independent third party available to stress test our product in real-world environment is an incredibly valuable asset."

30.  Defendant has not conducted testing, has not had Express tested by United States or United Kingdom government agencies, and does not otherwise possess studies that substantiate the marketing claims described above and in Count One below.

31.    In touting the NCS[4] report, Defendant did not disclose to consumers that Evolv's relationship with NCS[4] included: working with NCS[4] on the test design for the report; working with NCS[4] on changes to the report, including removal of negative information about Express's ability to detect certain weapons; and sponsoring luncheons at NCS[4] conferences.

32.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendant is violating or is about to violate laws enforced by the Commission because, among other things: Defendant has engaged in its unlawful acts and practices repeatedly over a period of several years; Defendant has engaged in its unlawful acts and practices knowingly; Defendant is continuing to exercise contracts won through the deceptive acts and practices alleged in this complaint without giving customers an opportunity to withdraw from the contracts, thereby implicitly threatening to enforce the contracts against those customers; Defendant has earned significant revenues from participating in these unlawful acts and practices; Evolv remains in business and maintains the means, ability, and incentive to continue its unlawful conduct; and Evolv has changed its marketing claims over time and can change such claims at any time in the future.

## VIOLATIONS OF THE FTC ACT

33.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

34.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

**Count I**

Page **14** of **17**

**False or Unsubstantiated Efficacy Claims**

35.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Evolv Express, Defendant has represented, directly or indirectly, expressly or by implication, that:

A.     Evolv Express will detect all weapons;

B.     Evolv Express will ignore harmless personal items;

C.     Evolv Express will detect all weapons while ignoring harmless personal items;

D.     Evolv Express will ignore harmless personal items without requiring visitors to remove any such items from pockets or bags;

E.     Evolv Express detects weapons more accurately than metal detectors;

F.     Evolv Express drastically reduces false alarm rates as compared to metal detectors;

G.     Evolv Express screens visitors ten times faster than metal detectors; and

H.     Evolv Express reduces labor costs by up to 70% compared to metal detectors.

36.     The representations set forth in Paragraph 36 are false or misleading or were not substantiated at the time the representations were made.

37.     Therefore, the making of the representations as set forth in Paragraph 37 of this Complaint constitutes a deceptive act or practice, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count II**

**Failure to Disclose Material Information**

38.     In connection with the advertising, marketing, promotion, offering for sale, or sale of Evolv Express, Defendant has represented, directly or indirectly, expressly or by implication, that the NCS[4] report regarding the testing of Express was independent and provided third-party validation of Express' ability to detect weapons.

39.     When Defendant has made the representations described in Paragraph 39, Defendant failed to disclose to consumers that Evolv's relationship with NCS[4] included: working with NCS[4] on the test design for the report; working with NCS[4] on changes to the report, such as removal of negative information about Express' ability to detect certain weapons; and sponsoring luncheons at NCS[4] conferences. This additional information would be material to consumers in deciding to purchase, or in their use of, Express.

40.     In light of the representations described in Paragraph 39, Defendant's failure to disclose the material information as described in Paragraph 40 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

41.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, the FTC requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act; and

B.     Award any additional relief as the Court determines to be just and proper.

Page **16** of **17**

Respectfully submitted,


Dated: November 26, 2024                    s/Michael Atleson
                                            MICHAEL ATLESON (NY Bar # 2705762)
                                            matleson@ftc.gov; 202-326-2962
                                            KATHERINE CAMPBELL (OR Bar # 071044)
                                            kcampbell@ftc.gov; 202-549-0519
                                            Federal Trade Commission
                                            600 Pennsylvania Avenue, NW
                                            Washington, D.C. 20580

                                            Attorneys for Plaintiff
                                            FEDERAL TRADE COMMISSION

# EXHIBIT 2


**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

For Release

# FTC Takes Action Against Evolv Technologies for Deceiving Users About its AI-Powered Security Screening Systems

**Proposed settlement would prohibit misrepresentations and allow affected schools to opt out of current contracts for security screening systems**

November 26, 2024 |

**Tags:** Consumer Protection | Bureau of Consumer Protection | Technology | Artificial Intelligence

The Federal Trade Commission is taking action against Evolv Technologies over allegations that the company made false claims about the extent to which its AI-powered security screening system can detect weapons and ignore harmless personal items, including in school settings.

In the proposed FTC settlement order, Evolv would be banned from making unsupported claims about its products' ability to detect weapons by using artificial intelligence and would also have to give certain K-12 school customers the option to cancel their contracts, which generally lock customers into multi-year deals.

"The FTC has been clear that claims about technology – including artificial intelligence – need to be backed up, and that is especially important when these claims involve the safety of children," said Samuel Levine, Director of the Bureau of Consumer Protection. "If you make those claims without adequate support, you can expect to hear from the FTC."

The FTC's complaint alleged that Massachusetts-based Evolv deceptively advertised that its Evolv Express scanners would detect all weapons and made misleading claims that its use of artificial intelligence makes its screening systems more accurate, efficient, and cost-effective than traditional metal detectors.

Evolv's Express AI-powered security scanners are used in thousands of schools and many other venues, such as sports stadiums and hospitals. School systems make up half of its business, with Express scanner ↑ ed in over 800 schools across 40 states, according to the complaint. In its marketing materials, the company has

touted its use of AI, claiming its scanners are a high-tech alternative to traditional metal scanners. In marketing its products to schools, the company claimed its products would help address the problem of guns and other weapons in schools.

The FTC alleged that Evolv misrepresented that its Evolv Express system will detect all weapons; ignore harmless personal items without requiring people to remove them from their pockets or bags; detect weapons more accurately and faster than metal detectors; reduce false alarm rates; and cut labor costs by 70% compared to metal detectors by reducing the need for additional personnel.

In its complaint, the FTC alleged that Evolv's Express scanners failed in several instances to detect weapons in schools while flagging harmless personal items typically brought to schools, like laptops, binders, and water bottles. For example, Evolv's Express scanners reportedly failed to detect a seven-inch knife brought into a school in October 2022 that was used to stab a student. Afterwards, school officials increased the system's sensitivity settings, prompting a 50% false alarm rate.

To reduce false positive rates, Evolv in 2023 introduced a more sensitive setting for Express users with the goal of detecting more knives. Despite this, Evolv said some knives will be missed, more false alarms will occur, and additional staffing may be required to run the machines. It also advised schools to add conveyor belts and other measures to divert harmless items by hand, which makes the system more like traditional lower-cost metal detectors according to the complaint.

## Proposed Settlement Requirements

Under the proposed settlement, Evolv will be required to notify certain K-12 school customers that they can opt to cancel contracts signed between April 1, 2022, to June 30, 2023. In addition, the proposed order also will prohibit Evolv from making any misrepresentations about:

- the ability of its products to detect weapons, ignore harmless personal items, and ignore harmless personal items without requiring visitors to remove any such items from pockets or bags;

- its products' accuracy in detecting weapons and false alarm rates, including in comparison to the use of traditional metal detectors;

- the speed at which visitors can be screened compared to the use of metal detectors;

- labor costs, including comparisons to the use of metal detectors;

- testing, or the results of any testing; and

- any material aspect of its performance, including the use of algorithms, artificial intelligence, or other automated systems or tools.

The settlement with Evolv builds upon FTC's ongoing work to ensure that AI claims are backed up. Earlier this fall, the agency announced Operation AI Comply, with five new actions targeting the deceptive use of or claims around AI. Actions to ensure that AI marketing is truthful both protects consumers and helps ensure real innovators can thrive.

The Commission vote authorizing the staff to file the complaint and stipulated order was 5-0. The FTC filed the complaint and stipulated order in the U.S. District Court for the District of Massachusetts. Commissioner Andrew Ferguson issued a statement and Commissioner Melissa Holyoak issued a statement.

NOTE: The Commission files a complaint when it has "reason to believe" that the named defendants are violating or are about to violate the law and it appears to the Commission that a proceeding is in the public interest. Stipulated orders have the force of law when approved and signed by the District Court judge.

The lead staff attorneys on this matter are Michael Atleson and Katherine Campbell with the FTC's Bureau of Consumer Protection.

The Federal Trade Commission works to promote competition and protect and educate consumers.  The FTC will never demand money, make threats, tell you to transfer money, or promise you a prize. Learn more about consumer topics at consumer.ftc.gov, or report fraud, scams, and bad business practices at ReportFraud.ftc.gov. Follow the FTC on social media, read consumer alerts and the business blog, and sign up to get the latest FTC news and alerts.

## Contact Information

### Media Contact

Rebecca Kern
Office of Public Affairs
202-326-2885

↑

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

EVOLV TECHNOLOGIES HOLDINGS, INC.,
a corporation,

    Defendant.

Case No. 1:24-cv-12940

**STIPULATED ORDER FOR
PERMANENT INJUNCTION
AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint

for Permanent Injunction and Other Equitable Relief ("Complaint"), for a permanent injunction,

and other relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. §§ 53(b).  The Commission and Defendant stipulate to the entry of this

Stipulated Order for Permanent Injunction and Other Relief ("Order") to resolve all matters in

dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant participated in deceptive acts or practices

in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in the marketing and sale of security

screening systems.

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.      Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "Defendant" means Evolv Technologies Holdings, Inc., and its successors and assigns.

B.      "Competent and Reliable Evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that (1) have been conducted and evaluated in an objective manner by qualified persons and (2) are generally accepted in the profession to yield accurate and reliable results.

C.      "Customer(s)" means school(s) or school district(s) in the K-12 range that purchased or otherwise contracted for the use of Evolv Express between the period April 1, 2022, to June 30, 2023.  Excluded from this definition is any school or school district that: (1) participated in a pilot program of at least 30 days prior to such purchase or contract; (2) purchased 15 or more Evolv Express units; or (3) purchased or contracted for, and deployed, additional Evolv Express units more than 45 days after initially deploying Evolv Express at a school.

## ORDER

## I.  PROHIBITION AGAINST MISLEADING CLAIMS

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation about:

A.  the ability to detect weapons;

B.  the ability to ignore harmless personal items;

C.  the ability to detect weapons while ignoring harmless personal items;

D.  the ability to ignore harmless personal items without requiring visitors to remove any such items from pockets or bags;

E.  weapons detection accuracy, including in comparison to the use of metal detectors;

F.  false alarm rates, including comparisons to the use of metal detectors;

G.  the speed at which visitors can be screened, as compared to the use of metal detectors;

H.  labor costs, including comparisons to the use of metal detectors;

I.  testing, or the results of any testing; or

J.  any material aspect of its performance, efficacy, nature, or central characteristics, including, but not limited to, the use of algorithms, artificial intelligence, or other automated systems or tools;

3

unless the representation is non-misleading, including that, at the time such representation is made, Defendant possesses and relies upon Competent and Reliable Evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## II.  NOTICE TO SCHOOL CUSTOMERS AND RIGHT TO CANCEL

IT IS FURTHER ORDERED that Defendant shall provide a Notice to all Customers of this Order and of their right to cancel their contracts within 60 days of receipt of the Notice. Defendant shall allow Customers to exercise the right to cancel their contracts in accordance with the terms of this Order and the Notice. Such Customers shall owe no more money to Defendant after the effective cancellation date, except for any fees still due as of that date.

A.      The Notice shall be in the exact wording and format set forth in Attachment A and shall be sent via email to each such Customer within seven (7) days of the entry of this Order, with the subject line "**Important Notice – Option to Cancel Your Contract with Evolv.**" The email shall not include any other message or attachment.

B.      Defendant must use reasonable means to attempt to determine whether the emailed Notice was opened by each recipient. If Defendant has no indication that a recipient opened the email within twenty (20) business days after the date Defendant sent it, Defendant shall, within ten (10) additional business days, send the Notice by United States Postal Service. Any deadline for the recipient to respond to the Notice shall run only from the last date that Defendant sent a Notice to the recipient.

C.      Notices sent by United States Postal Service pursuant to this Section shall be sent with USPS Tracking or another method that provides evidence of delivery. The front of the

4

envelope shall read "**Important Notice – Option to Cancel Your Contract with Evolv**." The mailing shall not include any other message or enclosure.

D.       The Notice shall provide a link to an online form that provides customers with a one-step mechanism for cancelling the contract, with clear instructions, and with no other messages.

E.       Notwithstanding any other provision of this Order, Defendant shall, within 7 days of a written request, provide the Commission with all records reasonably requested about each Customer to whom a Notice is sent pursuant to this Section. In accordance with the Recordkeeping section below, Defendant shall maintain all of the following records about each such Customer, and in accordance with this Part E, the FTC may request any or all of them for any such Customer: name; all known addresses, telephone numbers, and email addresses; whether Defendant has any indication that the Customer received and opened the emailed or mailed Notice (and, if so, the form of such indication); the date or dates that Defendant sent the Notice; whether and when the Customer canceled its Evolv contract; and copies of all communications with the Customer relating to the Notice.

## III.  ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.       Within 7 days of entry of this Order, Defendant must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.       For 8 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, and directors; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who

5

participate in marketing the Defendant's products ; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IV.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury. Defendant must: (1) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (2) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (3) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales; (4) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (5) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following. Defendant must report any change in: (1) any designated point of contact; or (2) the structure of Defendant

or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Evolv Technologies Holdings, Inc., et al. File No. X_____.

## V. RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

7

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all customer complaints and refund requests, concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

## VI.  COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

8

Docusign Envelope ID: 351D959C-251A-422E-BC49-B9D644888469

C.      The Commission may use all other lawful means, including posing, through its

representatives as consumers, suppliers, or other individuals or entities, to Defendant or any

individual or entity affiliated with Defendant, without the necessity of identification or prior

notice. Nothing in this Order limits the Commission's lawful use of compulsory process,

pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## VII.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this _____ of _____, 20__.**

_____
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

s/Michael W. Atleson
_____      Date: **November 26, 2024**
MICHAEL W. ATLESON (NY BAR #2705762)
KATHERINE CAMPBELL (OR BAR # 071044)
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mailstop CC-6316
Washington, D.C. 20580
Telephone: (202) 326-2962
Fax: (202) 326-3259
matleson@ftc.gov

9

**FOR DEFENDANT EVOLV TECHNOLOGIES HOLDINGS, INC.:**

_Antony P. Kim_ _____     Date: _Sept. 23, 2024_
ANTONY P. KIM
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
(202) 637-3394
antony.kim@lw.com

SCOTT D. JOINER
WARD PENFOLD
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 395-8878 (Joiner)
(415) 395-8087 (Penfold)
scott.joiner@lw.com
ward.penfold@lw.com

DANIEL KAUFMAN
ALLYSON HIMELFARB
Baker & Hostetler LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
(202) 861-1523 (Kaufman)
(202) 861-1682 (Himelfarb)
dkaufman@bakerlaw.com
ahimelfarb@bakerlaw.com

SARAH J. LA VOI
Baker & Hostetler LLP
One North Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 416-6285
slavoi@bakerlaw.com

**EVOLV TECHNOLOGIES HOLDINGS, INC.**

_Mark Donohue_ _____     Date: _9/23/2024_ _____
MARK DONOHUE,
Chief Financial Officer
EVOLV TECHNOLOGIES HOLDINGS, INC.

10

Docusign Envelope ID: 351D959C-251A-432F-BC49-B8D644888469

**ATTACHMENT A**

Dear [Evolv School Customer]:

We're writing to tell you that you can choose to cancel your contract with Evolv.

As part of a settlement with the Federal Trade Commission (FTC), the nation's consumer protection agency, we're giving you the option to cancel your contract, which currently ends on _____. The FTC said that some of our marketing claims about Evolv Express were misleading.

**If you want to cancel your contract,** you must let us know within 60 days of the date you receive this Notice by completing the online form at [web form URL].

**If you cancel your contract**, you can choose whether the cancellation will be effective immediately or at a convenient time, such as the end of a school term. You will owe no more money to Evolv after the effective cancellation date, except for any fees still due as of that date.

**If you want to keep your contract**, you don't have to do anything.

You can learn more about the FTC's settled lawsuit against Evolv at www.ftc.gov/[url].

# EXHIBIT 4



![evolv](evolv logo)

# Evolv Technology Announces the Results of Its Internal Investigation

*Reaffirms Revenue Recognition Impact of $4 to $6 million*
*Ending Cash Position of Approximately $56 Million as of September 30, 2024, Consistent with Internal Forecasts*
*Announces Remedial Actions and Organizational Changes, Including the Resignation of the Company's Chief Financial Officer*
*Hires Leading Business Advisory Firm, AlixPartners, to Provide Interim Finance and Accounting Resources*

November 21, 2024 08:00 AM Eastern Standard Time

WALTHAM, Mass.--(BUSINESS WIRE)--Evolv Technology ("Evolv" or the "Company") (NASDAQ: EVLV), a leading security technology company pioneering AI-based solutions designed to create safer experiences, today announced the results of the internal investigation previously disclosed on October 25, 2024, into certain sales practices that impacted revenue recognition and other metrics.

**Results of the Internal Investigation**

The investigation is being conducted by an ad hoc committee of independent directors (the "Ad Hoc Committee") of the Board of Directors (the "Board") and with the assistance of Debevoise & Plimpton LLP as its legal counsel, Cleary Gottlieb Steen & Hamilton LLP as its independent legal counsel, and Ankura Consulting Group as its forensic accounting firm.

Based on the results of the investigation to date, the Ad Hoc Committee concluded that accounting for certain transactions, including sales to one of the Company's largest channel partners, was inaccurate and that, among other things, revenue was prematurely or incorrectly recognized in connection with financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 (the "affected periods"). The Company is continuing to evaluate the impact on internal control over financial reporting and expects to report one or more additional material weaknesses in internal control over financial reporting related to this matter.

The Ad Hoc Committee's previously disclosed estimate that, on a net basis (taking into account revenue that was prematurely recognized but offset by amounts appropriately recognized in subsequent periods), the sales transactions at issue have resulted in premature or incorrect revenue recognition of $4 million to $6 million through June 30, 2024, has not changed, and it is still the case that the vast majority of such revenue was prematurely rather than incorrectly recognized and is expected to be recognized in future periods.

The Ad Hoc Committee confirmed that the errors in revenue recognition did not impact the Company's cash position. The Company had cash, cash equivalents, marketable securities and restricted cash of approximately $56 million as of the quarter ended September 30, 2024, which was consistent with the Company's internal forecasts. The Company had no debt as of the end of the quarter.

The Ad Hoc Committee's key findings also include the following:

- As previously disclosed, certain sales of products and subscriptions to channel partners and end users, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions that impacted revenue recognition and other metrics. In addition, the Ad Hoc Committee determined that some of these extra-contractual terms and conditions were not shared with the Company's accounting personnel, and that certain Company personnel engaged in misconduct in connection with those transactions. Furthermore, these extra-contractual terms and conditions were withheld from the Audit Committee of the Board and the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP ("PWC").

- In addition to the preliminary findings disclosed on October 25, 2024, the investigation found that certain accounting personnel were aware of indications of those extra-contractual terms and conditions during affected periods, and that related allegations were raised internally in July 2024 and known to senior finance and accounting personnel, but those allegations were not escalated to the Audit Committee of the Board or communicated to PWC, prior to the filing of the Company's second quarter 2024 financial statements.

The investigation is largely complete, and the Board does not expect these key findings to change.

**Organizational Changes**

The Board has determined that new leadership is critical to moving the Company forward. Mark Donohue, the Company's Chief Financial Officer and principal financial officer and principal accounting officer, resigned. To date, as a result of the investigation, four other employees, including personnel from the Company's sales, accounting and finance departments, were terminated or resigned.

**Retention of AlixPartners to Provide Interim Support and Expedite Reporting Process**

The Company has engaged AlixPartners LLP ("AlixPartners"), a leading global business advisory firm, to provide interim finance and accounting support and assist with and expedite the timely preparation of the Company's restated financial statements and related filings.

Dave Rawden from AlixPartners, a seasoned financial expert with decades of experience serving in senior financial roles, has been appointed as Interim Chief Financial Officer.

**Planned Remedial Actions**

The Board and management team intend to take further remedial actions over the coming months to enhance risk management, strengthen internal controls and ensure timely and accurate financial reporting. In addition, the Board intends to take steps to further enhance Board oversight and composition, and promote corporate governance and compensation best practices.

The Board, commenting on the internal investigation, stated:

We are grateful for the diligent work of the Ad Hoc Committee, the guidance of our outside experts, tireless effort from our senior management, continued dedication of our employees and patience of our shareholders and other stakeholders throughout this process.

With the investigation concluding, our attention has turned to addressing the issues that led to the misconduct, ensuring that future financial disclosures are timely and accurate, releasing our financial results for the third quarter of 2024 and preparing restated financials for the affected periods. We are committed to pursuing remedial actions that we believe will enhance the reliability of our financial statements and help prevent these issues from occurring in the future.

We are confident that Evolv is well positioned to continue its important work and to achieve its strategic objectives. The Board embraces the Company's mission of making the world safer and will continue to take steps to advance our vision while delivering long-term value for all stakeholders.

**About Evolv Technology**

Evolv Technology (NASDAQ: EVLV) is designed to transform human security to make a safer, faster, and better experience for the world's most iconic venues and companies as well as schools, hospitals, and public spaces, using industry leading artificial intelligence (AI)-powered screening and analytics. Its mission is to transform security to create a safer world to live, work, learn, and play. Evolv has digitally transformed the gateways in many places where people gather by enabling seamless integration combined with powerful analytics and insights. Evolv's advanced systems have scanned more than two billion people since 2019. Evolv has been awarded the U.S. Department of Homeland Security (DHS) SAFETY Act Designation as a Qualified Anti-Terrorism Technology (QATT) as well as the Security Industry Association (SIA) New Products and Solutions (NPS) Award in the Law Enforcement/Public Safety/Guarding Systems category, as well as Sport Business Journal's (SBJ) awards for "Best In Fan Experience Technology" and "Best In Sports Technology". Evolv®, Evolv Express®, Evolv Insights®, Evolv Visual Gun Detection™, Evolv eXpedite™, and Evolv Eva™ are registered trademarks or trademarks of Evolv Technologies, Inc. in the United States and other jurisdictions. For more information, visit evolv.com.

**Forward-looking Statements**

This press release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. We intend for such forward-looking statements to be covered by the safe harbor provisions for forward-looking statements contained in Section 27A of the Securities Act of 1933, as amended and Section 21E of the Securities Exchange Act of 1934, as amended. All statements other than statements of historical fact are statements that could be deemed forward-looking statements, including, but not limited to, statements made in the Board's quotes and statements regarding key findings of the investigation, the impact on internal control over financial reporting, planned remedial actions, Board oversight and composition, corporate governance and compensation-related initiatives, the Company's ability to achieve strategic objectives and future actions to be taken by the Board. Forward-looking statements involve known and unknown risks, uncertainties and other important factors that may cause our actual results and actions to be materially different from any future results or actions expressed or implied by the forward-looking statements, including, but not limited to, the factors discussed under the caption "Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2023 filed with the SEC on February 29, 2024, as any such factors may be updated from time to time in our other filings with the SEC, including the Quarterly Report on Form 10-Q for the quarter ended June 30, 2024, as well as risks related to our leadership transition. The forward-looking statements in this press release are based upon information available to us as of the date hereof, and while we believe such information forms a reasonable basis for such statements, it may be limited or incomplete, and our statements should not be read to indicate that we have conducted an exhaustive inquiry into, or review of, all potentially available relevant information. These statements are inherently uncertain, and investors are cautioned not to unduly rely upon these statements.

Except as required by applicable law, we do not plan to publicly update or revise any forward-looking statements contained in this press release, whether as a result of any new information, future events or otherwise.

## Contacts
**Media Contact:**
Alexandra Smith Ozerkis
aozerkis@evolvtechnology.com

**Investor Contact:**
Brian Norris
bnorris@evolvtechnology.com

# EXHIBIT 5



ABOUT ⌄     PRODUCTS ⌄     NEWSROOM     RESOURCES ⌄          SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS     LOGIN

◁ **Back to Newsroom**

# EVLV CLASS ACTION NOTICE: BFA Law has Filed a Securities Fraud Class Action Lawsuit Against Evolv Technologies Holdings, Inc. (NASDAQ:EVLV), Encourages Investors to Contact the Firm

Friday, 01 November 2024 02:30 PM

Topic:     Class Action          Share this Article

**NEW YORK, NY / ACCESSWIRE / November 1, 2024 /** Bleichmar Fonti & Auld LLP ("BFA") announces that it has filed a class action lawsuit for violations of the federal securities laws against Evolv Technologies Holdings, Inc. (NASDAQ:EVLV)("Evolv" or the "Company") and certain of the Company's current and former senior executives. The complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of investors in Evolv who purchased or acquired Evolv securities between August 19, 2022 and October 30, 2024 inclusive (the "Class Period"). The case is pending in the U.S. District Court for the District of Massachusetts and is captioned *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768.

If you suffered a loss on your Evolv investments and would like to discuss this matter, **please submit your information at https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.

You can also contact Ross Shikowitz, Esq., at 212-789-3619, or by email to ross@bfalaw.com.

**Why was Evolv Sued for Securities Fraud?**

The complaint alleges that Evolv's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 contained material misstatements relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company revealed that certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel and that certain Company personnel engaged in misconduct in connection with those transactions. The Company also announced that it has self-reported these issues to the Division of Enforcement of the Securities and Exchange Commission and was delaying filing its upcoming quarterly report for the third quarter of 2024. On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024.

Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Peter George, effective immediately. The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed. On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024.

**What are my Rights?**

If you purchased or acquired Evolv securities between August 19, 2022 and October 30, 2024, inclusive, you may ask the Court no later than December 31, 2024, which is the first business day after 60 days from the date of the publication of this notice, to appoint you as Lead Plaintiff through counsel of your choice. To be a member of the Class, you need not take any action at this time. The ability to share in any potential future recovery is not dependent on serving as Lead Plaintiff.

**If you incurred losses on your investments in Evolv, you are encouraged to submit your information here: https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.

You can also contact:

Ross Shikowitz
ross@bfalaw.com
212-789-3619

**Why BFA Law?**

Bleichmar Fonti & Auld LLP is a leading international law firm representing plaintiffs in securities class actions and shareholder litigation. It was named among the Top 5 plaintiff law firms by ISS SCAS in 2023 and its attorneys have been named Titans of the Plaintiffs' Bar by Law360 and SuperLawyers by Thompson Reuters. Among its recent notable successes, BFA recovered over $900 million in value from Tesla,



ABOUT ⌄    PRODUCTS ⌄    NEWSROOM    RESOURCES ⌄                SUBMIT A PRESS
RELEASE

CUSTOMER REVIEWS    LOGIN

 **Back to Newsroom**

## Contact Us Today

If you have questions or want to learn more about our
products, our team's here to help!

**Contact Us**



f  𝕏  ⊙  in

**ABOUT**

WHO WE ARE

WHO WE SERVE

CONTACT

**PRODUCTS**

PRESS RELEASE DISTRIBUTION

PRESS RELEASE OPTIMIZER

MEDIA SUITE

MEDIA DATABASE

MEDIA PITCHING

MEDIA MONITORING

MEDIA ROOM

IR WEBSITES

WEBCASTING

**NEWSROOM**

**RESOURCES**

LIBRARY

FAQ

COMPANY SPOTLIGHT

PRESS RELEASE SAMPLE

PRESS RELEASE TEMPLATE

BLOG

**CUSTOMER REVIEWS**

**LOGIN**

**CONNECT TODAY!**

SALES

EDITORIAL

CONTENT LICENSING

JOIN OUR NEWSLETTER

**866-694-3099**

© 2024 ACCESSWIRE | All Rights Reserved

PRIVACY POLICY    |    TERMS OF SERVICE    |    RESPONSIBLE DISCLOSURE GUIDELINES    |
Status

# EXHIBIT 6



ABOUT   PRODUCTS   NEWSROOM   RESOURCES     SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS   LOGIN

Back to Newsroom

# EVLV LEGAL ALERT: BFA Law has Sued Evolv Technologies (EVLV) for Fraud – Investors are Urged to Contact the Firm by December 31 Class Action Deadline

Tuesday, 12 November 2024 04:08 PM



Topic:   Class Action     Share this Article  

**NEW YORK, NY / ACCESSWIRE / November 12, 2024 /** Leading securities law firm **Bleichmar Fonti & Auld LLP** announces that it has filed a lawsuit against Evolv Technologies Holdings, Inc. (NASDAQ:EVLV) and certain of the Company's current and former senior executives.

If you invested in Evolv, you are encouraged to obtain additional information by visiting **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.



Investors have until December 31, 2024 to ask the Court to be appointed to lead the case. The complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of investors in Evolv's securities. The case is pending in the U.S. District Court for the District of Massachusetts and is captioned *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768. A copy of the lawsuit can be found here: https://www.bfalaw.com/siteFiles/Cases/EvolvFiledComplaint.pdf

**What is the Lawsuit About?**

Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The complaint alleges that Evolv's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 contained material misstatements relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company revealed that certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel and that certain Company personnel engaged in misconduct in connection with those transactions. The Company also announced that it has self-reported these issues to the Division of Enforcement of the Securities and Exchange Commission and was delaying filing its upcoming quarterly report for the third quarter of 2024. On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024.

Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Peter George, effective immediately. The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed. On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024.

**Click here for more information:** **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc.**

**What Can You Do?**

If you invested in Evolv you may have legal options and are encouraged to submit your information to the firm. All representation is on a contingency fee basis, there is no cost to you. Shareholders are not responsible for any court costs or expenses of litigation. The firm will seek court approval for any potential fees and expenses.

**Submit your information by visiting:**

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

Or contact:
Ross Shikowitz
ross@bfalaw.com
212-789-3619

**Why Bleichmar Fonti & Auld LLP?**

Bleichmar Fonti & Auld LLP is a leading international law firm representing plaintiffs in securities class actions and shareholder litigation. It was named among the Top 5 plaintiff law firms by ISS SCAS in 2023 and its attorneys have been named Titans of the Plaintiffs' Bar by Law360 and SuperLawyers by Thompson Reuters. Among its recent notable successes, BFA recovered over $900 million in value from Tesla, Inc.'s Board of Directors (pending court approval), as well as $420 million from Teva Pharmaceutical Ind. Ltd.

For more information about BFA and its attorneys, please visit https://www.bfalaw.com.

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

*Attorney advertising. Past results do not guarantee future outcomes.*

Welcome to ACCESSWIRE!



ABOUT ⌄     PRODUCTS ⌄     NEWSROOM     RESOURCES ⌄          SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS     LOGIN

## Contact Us Today

Contact Us

If you have questions or want to learn more about our products, our team's here to help!



### ABOUT
WHO WE ARE
WHO WE SERVE
CONTACT

### PRODUCTS
PRESS RELEASE DISTRIBUTION
PRESS RELEASE OPTIMIZER
MEDIA SUITE
MEDIA DATABASE
MEDIA PITCHING
MEDIA MONITORING
MEDIA ROOM
IR WEBSITES
WEBCASTING

### NEWSROOM

### RESOURCES
LIBRARY
FAQ
COMPANY SPOTLIGHT
PRESS RELEASE SAMPLE
PRESS RELEASE TEMPLATE
BLOG

### CUSTOMER REVIEWS

### LOGIN

### CONNECT TODAY!
SALES
EDITORIAL
CONTENT LICENSING
JOIN OUR NEWSLETTER
866-694-3099

© 2024 ACCESSWIRE | All Rights Reserved

PRIVACY POLICY   |   TERMS OF SERVICE   |   RESPONSIBLE DISCLOSURE GUIDELINES   |   Status

# EXHIBIT 7



ABOUT ˅    PRODUCTS ˅    NEWSROOM    RESOURCES ˅

SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS    LOGIN

‹ Back to Newsroom

# EVLV LEGAL NEWS: Evolv Technologies (EVLV) Investors that Suffered Losses may have been Affected by Fraud – Contact BFA Law about its Ongoing Class Action

Wednesday, 13 November 2024 06:30 PM



Topic:    Class Action          Share this Article  in  f  X

**NEW YORK, NY / ACCESSWIRE / November 13, 2024 /** Leading securities law firm **Bleichmar Fonti & Auld LLP** announces that it has filed a lawsuit against Evolv Technologies Holdings, Inc. (NASDAQ:EVLV) and certain of the Company's current and former senior executives.

If you invested in Evolv, you are encouraged to obtain additional information by visiting **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.



Investors have until December 31, 2024 to ask the Court to be appointed to lead the case. The complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of investors in Evolv's securities. The case is pending in the U.S. District Court for the District of Massachusetts and is captioned *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768. A copy of the lawsuit can be found here: https://www.bfalaw.com/siteFiles/Cases/EvolvFiledComplaint.pdf

**What is the Lawsuit About?**

Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The complaint alleges that Evolv's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 contained material misstatements relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company revealed that certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel and that certain Company personnel engaged in misconduct in connection with those transactions. The Company also announced that it has self-reported these issues to the Division of Enforcement of the Securities and Exchange Commission and was delaying filing its upcoming quarterly report for the third quarter of 2024. On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024.

Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Peter George, effective immediately. The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed. On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024.

**Click here for more information:** **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.

**What Can You Do?**

If you invested in Evolv you may have legal options and are encouraged to submit your information to the firm. All representation is on a contingency fee basis, there is no cost to you. Shareholders are not responsible for any court costs or expenses of litigation. The firm will seek court approval for any potential fees and expenses.

**Submit your information by visiting:**

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

Or contact:

Ross Shikowitz
ross@bfalaw.com
212-789-3619

**Why Bleichmar Fonti & Auld LLP?**

Bleichmar Fonti & Auld LLP is a leading international law firm representing plaintiffs in securities class actions and shareholder litigation. It was named among the Top 5 plaintiff law firms by ISS SCAS in 2023 and its attorneys have been named Titans of the Plaintiffs' Bar by Law360 and SuperLawyers by Thompson Reuters. Among its recent notable successes, BFA recovered over $900 million in value from Tesla, Inc.'s Board of Directors (pending court approval), as well as $420 million from Teva Pharmaceutical Ind. Ltd.

For more information about BFA and its attorneys, please visit https://www.bfalaw.com.

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

*Attorney advertising. Past results do not guarantee future outcomes.*

Welcome to ACCESSWIRE!  ✕



ABOUT ⌄    PRODUCTS ⌄    NEWSROOM    RESOURCES ⌄          SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS    LOGIN

## Contact Us Today

**Contact Us**

If you have questions or want to learn more about our products, our team's here to help!



**ABOUT**
WHO WE ARE
WHO WE SERVE
CONTACT

**PRODUCTS**
PRESS RELEASE DISTRIBUTION
PRESS RELEASE OPTIMIZER
MEDIA SUITE
MEDIA DATABASE
MEDIA PITCHING
MEDIA MONITORING
MEDIA ROOM
IR WEBSITES
WEBCASTING

**NEWSROOM**

**RESOURCES**
LIBRARY
FAQ
COMPANY SPOTLIGHT
PRESS RELEASE SAMPLE
PRESS RELEASE TEMPLATE
BLOG

**CUSTOMER REVIEWS**

**LOGIN**

**CONNECT TODAY!**
SALES
EDITORIAL
CONTENT LICENSING
JOIN OUR NEWSLETTER
**866-694-3099**

© 2024 ACCESSWIRE | All Rights Reserved

PRIVACY POLICY  |  TERMS OF SERVICE  |  RESPONSIBLE DISCLOSURE GUIDELINES  |  Status

# EXHIBIT 8

 ACCESSWIRE®

ABOUT ⌄    PRODUCTS ⌄    NEWSROOM    RESOURCES ⌄    **SUBMIT A PRESS RELEASE**

CUSTOMER REVIEWS    LOGIN

◁ Back to Newsroom

# EVLV COURT ALERT: EVOLV TECHNOLOGIES (EVLV) Investors that Suffered Losses are Alerted of a Pending Class Action – Contact BFA Law before December 31 Court Deadline

Friday, 15 November 2024 07:18 AM



Topic:   Class Action          Share this Article  (in) (f) (X)

**NEW YORK, NY / ACCESSWIRE / November 15, 2024 /** Leading securities law firm **Bleichmar Fonti & Auld LLP** announces that it has filed a lawsuit against Evolv Technologies Holdings, Inc. (NASDAQ:EVLV) and certain of the Company's current and former senior executives.

If you invested in Evolv, you are encouraged to obtain additional information by visiting **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.



Investors have until December 31, 2024 to ask the Court to be appointed to lead the case. The complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of investors in Evolv's securities. The case is pending in the U.S. District Court for the District of Massachusetts and is captioned *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768. A copy of the lawsuit can be found here: https://www.bfalaw.com/siteFiles/Cases/EvolvFiledComplaint.pdf

**What is the Lawsuit About?**

Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The complaint alleges that Evolv's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 contained material misstatements relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company revealed that certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel and that certain Company personnel engaged in misconduct in connection with those transactions. The Company also announced that it has self-reported these issues to the Division of Enforcement of the Securities and Exchange Commission and was delaying filing its upcoming quarterly report for the third quarter of 2024. On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024.

Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Peter George, effective immediately. The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed. On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024.

**Click here for more information:**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc.

**What Can You Do?**

If you invested in Evolv you may have legal options and are encouraged to submit your information to the firm. All representation is on a contingency fee basis, there is no cost to you. Shareholders are not responsible for any court costs or expenses of litigation. The firm will seek court approval for any potential fees and expenses.

**Submit your information by visiting:**

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

Or contact:

Ross Shikowitz
ross@bfalaw.com
212-789-3619

**Why Bleichmar Fonti & Auld LLP?**

Bleichmar Fonti & Auld LLP is a leading international law firm representing plaintiffs in securities class actions and shareholder litigation. It was named among the Top 5 plaintiff law firms by ISS SCAS in 2023 and its attorneys have been named Titans of the Plaintiffs' Bar by Law360 and SuperLawyers by Thompson Reuters. Among its recent notable successes, BFA recovered over $900 million in value from Tesla, Inc.'s Board of Directors (pending court approval), as well as $420 million from Teva Pharmaceu︙ Ind. Ltd.

For more information about BFA and its attorneys, please visit https://www.bfalaw.com.

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

*Attorney advertising. Past results do not guarantee future outcomes.*

Welcome to ACCESSWIRE!



ABOUT ⌄     PRODUCTS ⌄     NEWSROOM     RESOURCES ⌄          SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS     LOGIN

## Contact Us Today

If you have questions or want to learn more about our products, our team's here to help!

**Contact Us**



**ABOUT**
WHO WE ARE
WHO WE SERVE
CONTACT

**PRODUCTS**
PRESS RELEASE DISTRIBUTION
PRESS RELEASE OPTIMIZER
MEDIA SUITE
MEDIA DATABASE
MEDIA PITCHING
MEDIA MONITORING
MEDIA ROOM
IR WEBSITES
WEBCASTING

**NEWSROOM**

**RESOURCES**
LIBRARY
FAQ
COMPANY SPOTLIGHT
PRESS RELEASE SAMPLE
PRESS RELEASE TEMPLATE
BLOG

**CUSTOMER REVIEWS**

**LOGIN**

**CONNECT TODAY!**
SALES
EDITORIAL
CONTENT LICENSING
JOIN OUR NEWSLETTER
**866-694-3099**

© 2024 ACCESSWIRE | All Rights Reserved

PRIVACY POLICY    |    TERMS OF SERVICE    |    RESPONSIBLE DISCLOSURE GUIDELINES    |    Status

# EXHIBIT 9



ABOUT ⌄     PRODUCTS ⌄     NEWSROOM     RESOURCES ⌄

SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS     LOGIN

◁ Back to Newsroom

# EVLV CLASS UPDATE: The December 31 Investor Deadline in the Evolv Technologies Securities Fraud Class Action is Approaching – Contact BFA Law if You have Losses

Thursday, 05 December 2024 07:09 AM



Topic:     Lawsuits          Share this Article   in  f  X

**NEW YORK, NY / ACCESSWIRE / December 5, 2024 /** Leading securities law firm **Bleichmar Fonti & Auld LLP** announces that it has filed a lawsuit against Evolv Technologies Holdings, Inc. (NASDAQ:EVLV) and certain of the Company's current and former senior executives.

If you invested in Evolv, you are encouraged to obtain additional information by visiting **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.



Investors have until December 31, 2024 to ask the Court to be appointed to lead the case. The complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of investors in Evolv's securities. The case is pending in the U.S. District Court for the District of Massachusetts and is captioned *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768. A copy of the lawsuit can be found here: https://www.bfalaw.com/siteFiles/Cases/EvolvFiledComplaint.pdf

**What is the Lawsuit About?**

Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The complaint alleges that Evolv's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 contained material misstatements relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company revealed that certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel and that certain Company personnel engaged in misconduct in connection with those transactions. The Company also announced that it has self-reported these issues to the Division of Enforcement of the Securities and Exchange Commission and was delaying filing its upcoming quarterly report for the third quarter of 2024. On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024.

Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Peter George, effective immediately. The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed. On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024.

**Click here for more information:** https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc.

**What Can You Do?**

If you invested in Evolv you may have legal options and are encouraged to submit your information to the firm. All representation is on a contingency fee basis, there is no cost to you. Shareholders are not responsible for any court costs or expenses of litigation. The firm will seek court approval for any potential fees and expenses.

**Submit your information by visiting:**

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

Or contact:
Ross Shikowitz
ross@bfalaw.com
212-789-3619

**Why Bleichmar Fonti & Auld LLP?**

Bleichmar Fonti & Auld LLP is a leading international law firm representing plaintiffs in securities class actions and shareholder litigation. It was named among the Top 5 plaintiff law firms by ISS SCAS in 2023 and its attorneys have been named Titans of the Plaintiffs' Bar by Law360 and SuperLawyers by Thompson Reuters. Among its recent notable successes, BFA recovered over $900 million in value from Tesla, Inc.'s Board of Directors (pending court approval), as well as $420 million from Teva Pharmaceutical Ind. Ltd.

For more information about BFA and its attorneys, please visit https://www.bfalaw.com.

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

*Attorney advertising. Past results do not guarantee future outcomes.*

Welcome to ACCESSWIRE!   ✕



ABOUT ⌄    PRODUCTS ⌄    NEWSROOM    RESOURCES ⌄    SUBMIT A PRESS RELEASE

CUSTOMER REVIEWS    LOGIN

## Contact Us Today

**Contact Us**

If you have questions or want to learn more about our products, our team's here to help!



**ABOUT**
WHO WE ARE
WHO WE SERVE
CONTACT

**PRODUCTS**
PRESS RELEASE DISTRIBUTION
PRESS RELEASE OPTIMIZER
MEDIA SUITE
MEDIA DATABASE
MEDIA PITCHING
MEDIA MONITORING
MEDIA ROOM
IR WEBSITES
WEBCASTING

**NEWSROOM**

**RESOURCES**
LIBRARY
FAQ
COMPANY SPOTLIGHT
PRESS RELEASE SAMPLE
PRESS RELEASE TEMPLATE
BLOG

**CUSTOMER REVIEWS**

**LOGIN**

**CONNECT TODAY!**
SALES
EDITORIAL
CONTENT LICENSING
JOIN OUR NEWSLETTER
**866-694-3099**

© 2024 ACCESSWIRE | All Rights Reserved

PRIVACY POLICY    |    TERMS OF SERVICE    |    RESPONSIBLE DISCLOSURE GUIDELINES    |    Status

# EXHIBIT 10



*Source:* Bleichmar Fonti & Auld

*November 02, 2024 06:36 ET*

## EVLV BREAKING NEWS: BFA Law Announces that it has Filed a Securities Fraud Class Action Lawsuit Against Evolv Technologies; Investors that Lost Money are Urged to Contact the Firm (NASDAQ:EVLV)

NEW YORK, Nov. 02, 2024 (GLOBE NEWSWIRE) -- Leading securities law firm **Bleichmar Fonti & Auld LLP** announces that it has filed a lawsuit against Evolv Technologies Holdings, Inc. (NASDAQ: EVLV) and certain of the Company's current and former senior executives.

If you invested in Evolv, you are encouraged to obtain additional information by visiting **https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**.

Investors have until December 31, 2024 to ask the Court to be appointed to lead the case. The complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of investors in Evolv's securities.   The case is pending in the U.S. District Court for the District of Massachusetts and is captioned *Buchan v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-12768. A copy of the lawsuit can be found here: https://www.bfalaw.com/siteFiles/Cases/EvolvFiledComplaint.pdf

**What is the Lawsuit About?**

Evolv is a security technology company that utilizes AI-based screening designed to help create safer experiences. The complaint alleges that Evolv's financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024 contained material misstatements relating to Evolv's revenue recognition and other reported metrics that are a function of revenue.

On October 25, 2024, Evolv announced that the Company's financial statements issued between the second quarter of 2022 and the second

quarter of 2024 should not be relied upon due to material misstatements impacting revenue recognition and other previously reported metrics that are a function of revenue. The Company revealed that certain sales, including sales to one of its largest channel partners, were subject to extra-contractual terms and conditions not shared with the Company's accounting personnel and that certain Company personnel engaged in misconduct in connection with those transactions. The Company also announced that it has self-reported these issues to the Division of Enforcement of the Securities and Exchange Commission and was delaying filing its upcoming quarterly report for the third quarter of 2024. On this news, the price of Evolv stock declined roughly 40%, from $4.10 per share on October 24, 2024, to $2.47 per share on October 25, 2024.

Then, on October 31, 2024, Evolv announced the termination of the Company's CEO, Peter George, effective immediately. The Company announced that Michael Ellenbogen, Evolv's Chief Innovation Officer will serve in an interim role until a successor is appointed. On this news, the price of Evolv stock declined roughly 8%, from $2.34 per share on October 30, 2024, to $2.15 per share on October 31, 2024.

**Click here for more information: https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc.**

**What Can You Do?**

If you invested in Evolv you may have legal options and are encouraged to submit your information to the firm. All representation is on a contingency fee basis, there is no cost to you. Shareholders are not responsible for any court costs or expenses of litigation. The firm will seek court approval for any potential fees and expenses.

**Submit your information by visiting:**

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

Or contact:
Ross Shikowitz
ross@bfalaw.com
212-789-3619

**Why Bleichmar Fonti & Auld LLP?**

Bleichmar Fonti & Auld LLP is a leading international law firm representing plaintiffs in securities class actions and shareholder litigation. It was named among the Top 5 plaintiff law firms by ISS SCAS in 2023 and its attorneys have been named Titans of the Plaintiffs' Bar by Law360 and SuperLawyers by Thompson Reuters. Among its recent notable successes, BFA recovered

over $900 million in value from Tesla, Inc.'s Board of Directors (pending court approval), as well as $420 million from Teva Pharmaceutical Ind. Ltd.

For more information about BFA and its attorneys, please visit https://www.bfalaw.com.

**https://www.bfalaw.com/cases-investigations/evolv-technologies-holdings-inc**

*Attorney advertising. Past results do not guarantee future outcomes.*