**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE EVOLV TECHNOLOGIES HOLDINGS, INC. SECURITIES LITIGATION | Case No. 1:24-CV-10761-ADB<br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PETER GEORGE'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION
<u>COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS</u>**

R. Todd Cronan (BBO No. 542466)
Jennifer B. Luz (BBO No. 657739)
Brendan Blake (BBO No. 710755)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
RCronan@goodwinlaw.com
JLuz@goodwinlaw.com
BBlake@goodwinlaw.com

*Attorneys for Defendant Peter George*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL STANDARD.................................................................................................. 3

ARGUMENT ............................................................................................................ 4

I.     THE SAC DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER................ 4

     A.    Mr. George's Limited Public Statements Relating To Evolv Express Were Not Reckless. ............................................................................................. 5

     B.    Mr. George Did Not Have Prior Knowledge Of The Company's "Extra-Contractual Terms And Conditions" With Certain Customers............................. 8

II.    THE SAC DOES NOT PLEAD ANY ACTIONABLE FALSE STATEMENTS OR OMISSIONS BY MR. GEORGE. ......................................................................... 13

III.   PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING A CLAIM FOR CONTROL PERSON LIABILITY AGAINST MR. GEORGE..................................... 19

CONCLUSION........................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Deutsche Bank AG,*
  764 F. Supp. 2d 263 (D. Mass. 2011) ........................................................................19

*Aldridge v. A.T. Cross Corp.,*
  284 F.3d 72 (1st Cir. 2002) .......................................................................................19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007) ........................................................................................19

*Belmont v. MB Inv. Partners, Inc.,*
  708 F.3d 470 (3d Cir. 2013) ......................................................................................19

*In re Biogen Inc. Sec. Litig.,*
  193 F. Supp. 3d 5 (D. Mass. 2016) .......................................................................4, 16

*In re Biogen Inc. Sec. Litig.,*
  857 F.3d 34 (1st Cir. 2017) ..........................................................................................4

*Blank v. TriPoint Global Equities, LLC,*
  338 F. Supp. 3d 194 (S.D.N.Y. 2018) ......................................................................17

*In re Bos. Sci. Corp. Sec. Litig.,*
  646 F. Supp. 3d 249 (D. Mass. 2022) ......................................................................15

*In re Bos. Tech., Inc. Sec. Litig.,*
  8 F. Supp. 2d 43 (D. Mass. 1998) ............................................................................14

*Brill v. Invivyd, Inc.,*
  2024 WL 4228832 (D. Mass. Sept. 18, 2024) .........................................................15

*City of Miami Fire Fighters' and Police Officers Ret. Tr. v. Cerence Inc.,*
  2024 WL 1258149 (D. Mass. Mar. 25, 2024)............................................................9

*City of Miami Fire Fighters' and Police Officers' Ret. Tr.. v. CVS Health Corp.,*
  46 F.4th 22 (1st Cir. 2022)..................................................................................15, 17

*In re Comshare, Inc. Sec. Litig.,*
  1997 WL 1091468 (E.D. Mich. 1997)........................................................................9

*Corban v. Sarepta Therapeutics, Inc.,*
  868 F.3d 31 (1st Cir. 2017).........................................................................................3

*Dahhan v. OvaScience, Inc.*,
    2021 WL 2186466 (D. Mass. May 28, 2021) ..................................................................19

*Das v. Rio Tinto PLC*,
    332 F. Supp. 3d 786 (S.D.N.Y 2018) ..........................................................................10

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015) ........................................................................................3

*Ganem v. InVivo Therapeutics Holdings Corp.*,
    845 F.3d 447 (1st Cir. 2017) ........................................................................................4

*Godinez v. Alere Inc.*,
    272 F. Supp. 3d 201 (D. Mass. 2017) .........................................................................11

*Goplen v. 51job, Inc.*,
    453 F. Supp. 2d 759 (S.D.N.Y. 2006) .........................................................................11

*Gray v. Alpha & Omega Semiconductor Ltd.*,
    2021 WL 4429499 (S.D.N.Y. Sept. 27, 2021) .............................................................6

*Greebel v. FTP Software, Inc.*,
    194 F. 3d 185 (1st Cir. 1999) ......................................................................................18

*Harrington v. Tetraphase Pharms. Inc.*,
    2017 WL 1946305 (D. Mass May 9, 2017) ................................................................10

*In re iRobot Corp. Sec. Litig.*,
    527 F. Supp. 3d 124 (D. Mass. 2021) ......................................................................7, 11

*Kader v. Sarepta Therapeutics, Inc.*,
    2016 WL 1337256 (D. Mass. Apr. 5, 2016) .............................................................8, 15

*Karth v. Keryx Biopharmaceuticals, Inc.*,
    6 F. 4th 123 (1st Cir. 2021) ........................................................................................17

*In re Lottery.com, Inc. Sec. Litig.*,
    2025 WL 605485 (S.D.N.Y. Feb. 25, 2025) ..............................................................20

*In re Metawave Comm. Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003) .................................................................12

*Metzler Asset Mgm't GmbH v. Kingsley*,
    305 F. Supp. 3d 181 (D. Mass. 2018) ...........................................................................9

*Metzler Asset Mgmt. GmbH v. Kingsley*,
    928 F.3d 151 (1st Cir. 2019) ........................................................................................3

*New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
  537 F.3d 35 (1st Cir. 2008) ................................................................................................5

*In re Ocular Therapeutix, Inc. Sec. Litig.*,
  2019 WL 1950399 (D. Mass. Apr. 30, 2019) .....................................................................6

*Orton v. Parametric Tech. Corp.*,
  344 F. Supp. 2d 290 (D. Mass. 2004) .................................................................................9

*Paice v. Aldeyra Therapeutics, Inc.*,
  2025 WL 815065 (D. Mass. Mar. 14, 2025)........................................................................7

*Premca Extra Income Fund LP v. iRobot Corp.*,
  2025 WL 307247 (D. Mass. Jan. 27, 2025)..................................................................5, 17

*Quinones v. Frequency Therapeutics, Inc.*,
  106 F.4th 177 (1st Cir. 2024)...........................................................................................4, 7

*Simon v. Abiomed, Inc.*,
  37 F. Supp. 3d 499 (D. Mass. 2014) ...................................................................................9

*Sousa v. Sonus Networks, Inc.*,
  261 F. Supp. 3d 112 (D. Mass. 2017) ...............................................................................13

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
  775 F. Supp. 2d 227 (D. Mass. 2011) ...............................................................................19

*State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l, Inc.*,
  2024 WL 3258293 (D. Mass July 1, 2024)...........................................................7, 12, 16

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ..............................................................................16

*Tadros v. Celladon Corp.*,
  2016 WL 5870002 (S.D. Cal. Oct. 7, 2016) ......................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..............................................................................................................3

*Toussaint v. Care.com Inc.*,
  490 F. Supp. 3d 341 (D. Mass. 2020)................................................................................16

*In re U.S. Aggregates, Inc. Sec. Litig.*,
  235 F. Supp. 2d 1063 (N.D. Cal. 2002) ............................................................................13

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016)................................................................................20

*Wang Yan v. ReWalk Robotics Ltd.*,
  330 F. Supp. 3d 555 (D. Mass. 2018) ..................................................................................16

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
  28 F. Supp. 3d 93 (D. Mass. 2014) ......................................................................................10

*Wasson v. LogMeIn, Inc.*,
  2021 WL 1080201 (D. Mass. Mar. 18, 2021) .........................................................................6

*Wasson v. LogMeIn, Inc.*,
  496 F. Supp. 3d 612 (D. Mass. 2020) ..................................................................................12

**Statutes**

15 U.S.C. § 78u-4(b)(2) ...............................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................................3, 9

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................................3, 20

**PRELIMINARY STATEMENT**

Peter George was the President and Chief Executive Officer ("CEO") of Evolv Technologies Holdings, Inc. and its corporate predecessor ("Evolv" or the "Company") from January 2020 through October 30, 2024. SAC ¶¶ 25, 189. During that time, Mr. George oversaw a tremendous period of success for Evolv as the Company became one of the leaders in artificial intelligence ("AI")-based weapons detection for security screening. Evolv's flagship product, Evolv Express, is a touchless security screening system designed to help detect potential threats, mitigate risk, and enhance safety. *Id.* ¶¶ 40–42. Following its initial launch in October 2019, the number of Evolv Express systems deployed by the Company's customers grew to more than 4,500 by the end of 2023. Luz Decl. Ex. 1 (2023 Form 10-K) at 11.[1] And Evolv's annual revenue in turn reached approximately $80 million in 2023, up from less than $5 million in 2020, the year before Evolv became a public company. SAC ¶¶ 131, 150.

In this action, Plaintiffs assert a mishmash of claims against Evolv and certain of its directors and officers (the "Individual Defendants"), relating to completely separate theories of securities fraud. Only two of the claims asserted in the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC") apply to Mr. George, as the former CEO of Evolv. *First*, Plaintiffs allege that Mr. George misled investors about the efficacy and reliability of the Evolv Express system in certain public statements. *See id.* ¶¶ 111–25. Basing their claims on little more than unconfirmed third-party reports about supposed issues with Evolv Express, they claim that various general statements by Evolv, Mr. George and others at the Company about the capabilities and efficacy of Evolv Express were false and misleading. *Second*, Plaintiffs claim that an entirely different set of statements was rendered false and misleading by Evolv's recently

---

[1] The exhibits to this motion, attached to the accompanying declaration of Jennifer B. Luz, will each be cited as "Luz Decl. Ex."

announced investigation into the Company's accounting practices and the existence of "extra-contractual terms and conditions" with certain customers, resulting in Evolv's announced financial restatement. *See id.* ¶¶ 126–66.

No matter the theory, Plaintiffs' claims against Mr. George necessarily fail. The SAC does not allege particularized facts supporting a strong inference of scienter, or intent to defraud, by Mr. George as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). Indeed, Plaintiffs do not—because they cannot—allege that Mr. George had any motive or incentive to defraud investors through these purportedly false and misleading statements. Plaintiffs instead are reduced to relying on conjecture and surmise about what Mr. George supposedly knew and his status as an officer and director of Evolv to support their claims of fraud, which is clearly insufficient to satisfy the stringent requirements of the PSLRA.

Plaintiffs also ignore the actual language in Evolv's disclosures, particularly with respect to Plaintiffs' efforts to draw a causal link between Mr. George's termination as CEO in October 2024 and his purported knowledge of or participation in the underlying accounting practices under investigation. In fact, the press release announcing Mr. George's departure from the Company makes clear that his termination was unrelated to that accounting investigation. The October 31, 2024 press release states that the termination was "without cause," that the decision "follow[ed] months of careful planning and deliberations by the Board," and that a Board committee had been actively recruiting and interviewing CEO candidates for months. SAC ¶¶ 189, 190. Plaintiffs ignore this language and instead rely on pure speculation in an effort to shore up their claims of scienter against Mr. George.

Plaintiffs' failure to plead facts showing a strong inference of scienter dooms their claims from the outset, and the Court need not go any further. However, the claims against Mr. George

should be dismissed for the independent reason that the SAC does not identify any actionable misstatements made by or attributable to Mr. George. Accordingly, pursuant to Rule 12(b)(6), the claims in the SAC against Mr. George should be dismissed in their entirety with prejudice.[2]

## LEGAL STANDARD

To state a claim under Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, Plaintiffs must plead "(1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 158 (1st Cir. 2019) (quoting *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 41 (1st Cir. 2017)). Securities fraud claims under Section 10(b) and Rule 10b-5 are also subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. Rule 9(b) requires that circumstances constituting fraud be stated "with particularity." Fed. R. Civ. P. 9(b). The PSLRA "imposes a rigorous pleading standard on allegations of scienter," which is a "mental state embracing intent to deceive, manipulate, or defraud." *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 240 (1st Cir. 2015). The complaint must allege particularized facts that "giv[e] rise to a strong inference that the defendant acted with the required state of mind." *Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 37 (1st Cir. 2017) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007)). A strong inference is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The Court "must consider, not only inferences urged by the plaintiff, but also competing inferences rationally drawn from the facts alleged." *Id.* Further, under the PSLRA,

---

[2] In addition to the arguments and reasons set forth herein, Mr. George expressly joins and adopts the factual background and legal arguments related to the Exchange Act claims set forth in the Memorandum of Law in Support of Motion to Dismiss filed by Evolv and the other Individual Defendants contemporaneously herewith (referred to herein as the "Evolv MTD").

"in order to survive a motion to dismiss, the plaintiff must 'specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading.'" *Ganem v. InVivo Therapeutics Holdings Corp.*, 845 F.3d 447, 455 (1st Cir. 2017) (quoting *ACA Fin. Gaur. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008)). Under this standard, allegations of falsity must be supported by "well-pleaded facts," not Plaintiffs' "speculation and conjecture." *Id.* at 456.

## ARGUMENT

### I.    THE SAC DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER.

With respect to Mr. George, the SAC contains two distinct theories of securities fraud. Under either theory, Plaintiffs fall short of plausibly pleading Mr. George's scienter. To adequately plead scienter under the PSLRA, "a complaint must 'state with particularity facts giving rise to a *strong inference* that the defendant . . . either . . . *consciously intended to defraud, or that they acted with a high degree of recklessness.*'" *Quinones v. Frequency Therapeutics, Inc.*, 106 F.4th 177, 182 (1st Cir. 2024) (emphasis added) (citations omitted). Plaintiffs do not even try to allege that Mr. George acted with conscious intent to defraud investors—*e.g.*, there are no allegations of insider trading or any other illicit motive in the SAC. They are left to argue that he was reckless in making certain statements attributed to him. "Recklessness in this context means 'a highly unreasonable omission, involving not merely simple, or even inexcusable[] negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.'" *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 44 (D. Mass. 2016) (quoting *Miss. Pub. Emps. Ret. Sys. v. Bos. Sci. Corp.*, 649 F.3d 5, 20 (1st Cir. 2011)), *aff'd*, 857 F.3d 34 (1st Cir. 2017). Plaintiffs come nowhere close to meeting this exacting standard for either of their theories.

A.    **Mr. George's Limited Public Statements Relating To Evolv Express Were Not Reckless.**

The SAC is totally devoid of particularized allegations that Mr. George knew or should have known that statements regarding the capabilities of Evolv Express were false or misleading.

Plaintiffs rely on a single confidential witness, FE 6, who asserts only that Mr. George "would come in to all the classes we'd hold – because we'd have different training classes for all the channel partners" and that he "'*seemed to know about every one*' of the Company's deployments of its products." SAC ¶ 184 (emphasis added).[3] An allegation that Mr. George "seemed to know" about Evolv's product capabilities is far removed from a well-plead allegation that Mr. George knew that certain representations being made by the Company about its Evolv Express product were false when made. This vague allegation also contains no detail concerning Mr. George's state of mind or knowledge relating to these product capabilities, nor is it corroborated by any other evidence or factual allegations, as required to survive a motion to dismiss under the PSLRA. *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 51 (1st Cir. 2008).

Even assuming the Court gives weight to this sparse allegation, nothing about the statement supports an inference that Mr. George had knowledge of or was reckless in ignoring internal information contradicting or undermining the public statements about Express that are at issue here. *See Premca Extra Income Fund LP v. iRobot Corp.*, 2025 WL 307247, at *18–19 (D. Mass. Jan. 27, 2025) (finding that confidential witness statements "[did] not tie to any particular false or misleading statement or support an inference of knowledge of falsity when made" where statements reflected "broad, unsupported conclusion[s]" about defendants' knowledge and motives). In fact, nowhere in the SAC do Plaintiffs "identify a specific meeting that [Mr. George]

---

[3] The remaining confidential witnesses make no mention of Mr. George or his state of mind. *See* SAC ¶¶ 82–85, 87.

-5-

attended, or a specific conversation that [Mr. George] had, where he was told that his statement[s] posed a risk of being misleading or was otherwise presented with information or data that would make it so obvious that his statement[s] could be misleading that he must have been aware of it." *Wasson v. LogMeIn, Inc.*, 2021 WL 1080201, at *9 (D. Mass. Mar. 18, 2021) (Burroughs, J.).

Plaintiffs also point to the fact that Evolv has been the subject of inquiries by the Federal Trade Commission ("FTC") and the Securities and Exchange Commission ("SEC"). *See* SAC ¶ 194. But "government investigations cannot bolster allegations of scienter that do not exist." *Gray v. Alpha & Omega Semiconductor Ltd.*, 2021 WL 4429499, at *12 (S.D.N.Y. Sept. 27, 2021). Moreover, both investigations arose *after* the majority of the challenged statements concerning Evolv Express. *See* SAC ¶¶ 111–25 (alleging false statements between July 2021 and February 2024); *see also id.* ¶ 70 (first disclosing FTC investigation in Form 8-K filed October 12, 2023); *id.* ¶ 72 (disclosing that SEC first notified the Company of its investigation in February 2024). "The lone fact of [a government] investigation *after* the challenged statements proves nothing about scienter at the time of the statements." *In re Ocular Therapeutix, Inc. Sec. Litig.*, 2019 WL 1950399, at *9 (D. Mass. Apr. 30, 2019).

Further, the FTC's *allegations* against the Company say nothing about Mr. George's potential culpability, nor do they support the requisite "strong inference of scienter."[4] Mr. George is not named individually as a defendant in the FTC proceeding, and Plaintiffs do not point to any allegations of wrongdoing by Mr. George. As Plaintiffs concede, the FTC's investigation focused on marketing statements "about the extent to which [Evolv's] AI-powered security screening system can detect weapons and ignore harmless personal items, including in school settings." SAC ¶ 102; *see also id.* ¶ 103 ("specifically targeted schools"). The FTC took issue with various

---

[4] In the FTC's November 26, 2024 order, the Company did not admit to the allegations in the FTC's complaint nor any other wrongdoing. *See* SAC Ex. B ¶ 3.

statements contained in Evolv's marketing materials—not statements made by Mr. George to investors. *See id.* Ex. A ¶¶ 27–31. What is more, the FTC's complaint did not contain any allegations whatsoever that Mr. George recklessly or knowingly made any false statements to investors.

In the absence of particularized allegations showing Mr. George's knowledge of supposed efficacy issues, Plaintiffs fall back on the "core operations" doctrine, arguing that Mr. George must have known of the supposed issues with Evolv Express because it was the Company's main product and he discussed it "during earnings calls and other presentations to the investing public." *See, e.g., id.* ¶¶ 183–84. This cannot save Plaintiff's claims. It is well-established that "[a]llegations of scienter that rest on a company's core business without 'other significant evidence of a defendant's intent or recklessness,' [] do not offer a strong basis to infer scienter." *State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l, Inc.*, 2024 WL 3258293, at *17 (D. Mass July 1, 2024); *see also Quinones*, 106 F.4th at 184 ("importance [of a core product] provides no sufficient basis for determining when and what senior management were told"); *see also Paice v. Aldeyra Therapeutics, Inc.*, 2025 WL 815065, at *9–10 (D. Mass. Mar. 14, 2025) (fact that statements concerned "lead product candidates" was insufficient to establish defendants' intent or recklessness); *In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 140–41 (D. Mass. 2021) (fact that statements concerned a core product was insufficient absent a "plus factor").

Taken individually or collectively, Plaintiffs' allegations do not support an inference of scienter with respect to Mr. George. "[P]laintiffs cannot amalgamate a series of sketchy brushstrokes and call it a van Gogh." *Quinones*, 106 F.4th at 184. Even if the SAC did support a plausible inference of scienter, however, it would be far outweighed by the nonculpable alternative inference: in the absence of any motive or incentive to mislead investors about Evolv Express,

Mr. George genuinely believed in the Company's mission and the capabilities of Evolv Express to make communities and venues safer and more secure.

Moreover, the suggestion that Mr. George knowingly or recklessly made statements about the capabilities of Evolv Express are fatally undermined by the fact that the Company repeatedly disclosed throughout the Class Period that there was no guarantee that the system would detect every weapon in every conceivable set of circumstances. *See, e.g.*, SAC ¶ 112 ("There is no guarantee that [Evolv's] products will detect and prevent all attacks, especially in light of . . . unique factors that may be present in its customers' operating environments."); *id.* ("Evolv has experienced . . . errors or defects [in its products] in the past in connection with new products and product upgrades. It expects that these errors or defects will be found from time to time in the future . . . . Defects may . . . cause its products to fail to detect security threats . . . .); *see also Kader v. Sarepta Therapeutics, Inc.*, 2016 WL 1337256, at *18 (D. Mass. Apr. 5, 2016) (Burroughs, J.) ("[A]ny inference that the Defendants knowingly or recklessly failed to disclose the FDA's request for reassessment is undermined by the Company's repeated disclosures about the FDA's concerns with the existing dataset."). *See also* Evolv MTD Sections I.A.5–6.

### B.    Mr. George Did Not Have Prior Knowledge Of The Company's "Extra-Contractual Terms And Conditions" With Certain Customers.

Plaintiffs' claims fare no better when it comes to their second theory of securities fraud. They do not point to any documents or testimony from confidential witnesses to support a strong inference that Mr. George knew about the extra-contractual terms and conditions with certain customers that gave rise to the accounting investigation and resulting restatement. Indeed, the SAC fails to answer key questions needed to establish scienter as to *any* of the challenged statements, such as who was responsible for the sales practices that led to the revenue misstatement, which customers and contracts were subject to extra-contractual terms and conditions, and who among

Evolv's management was aware of these issues. Where, as here, Plaintiffs fail to include "[m]uch of the elementary 'who, what, where, when, [and] how,'" the Court cannot find that scienter has been sufficiently pleaded as to any Defendant, much less Mr. George. *See Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290, 306 (D. Mass. 2004); *see also In re Comshare, Inc. Sec. Litig.*, 1997 WL 1091468, at *8 (E.D. Mich. 1997) (finding no scienter where plaintiffs alleged that individual defendants had knowledge of the relevant revenue recognition issues without alleging "which defendant knew what, how they knew it, or when").

Without any particularized factual allegations of Mr. George's knowledge or state of mind, Plaintiffs instead put forward "an entirely circumstantial case, essentially alleging that [Mr. George] must have known" that the Company's statements relating to the accounting issues were false or misleading. *Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499, 522 (D. Mass. 2014), *aff'd sub nom. Fire & Police Pension Ass'n of Colo.*, 778 F.3d 228. Those circumstantial allegations, however, cannot clear the high bar for scienter established by the PSLRA and Rule 9(b).

*First*, Plaintiffs argue that Mr. George's termination shortly after the Company announced the accounting investigation suggests that he was somehow implicated in the underlying misconduct. *See* SAC ¶ 191. But his termination *without cause* does not support a plausible inference of scienter. *See Metzler Asset Mgm't GmbH v. Kingsley*, 305 F. Supp. 3d 181, 219 (D. Mass. 2018) (finding allegations of "sudden departure" by defendant insufficient to establish scienter), *aff'd*, 928 F.3d 151 (1st Cir. 2019); *see also City of Miami Fire Fighters' and Police Officers Ret. Tr. v. Cerence Inc.*, 2024 WL 1258149, at *17 (D. Mass. Mar. 25, 2024) (Burroughs, J.) (resignations of individual defendants "neutral" with respect to the scienter analysis).

Plaintiffs rely solely on the timing of Mr. George's termination to try to link it to the accounting investigation. *See* SAC ¶ 191. The timing of employee departures or resignations,

however, does not give rise to an inference of scienter. *See Harrington v. Tetraphase Pharms. Inc.*, 2017 WL 1946305, at *7 (D. Mass May 9, 2017); *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 112–13 (D. Mass. 2014); *see also In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *29 (S.D.N.Y. Apr. 2, 2020) (allegation of "abrupt ouster" of CEO with no "succession plan in place" not evidence of CEO's scienter); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y 2018) ("The fact that Rio Tinto fired [individual defendant] says nothing of his state of mind."); *Tadros v. Celladon Corp.*, 2016 WL 5870002, at *13 (S.D. Cal. Oct. 7, 2016) ("[W]hether [individual defendant] was terminated . . . is not evidence of scienter on its own.").

Moreover, Plaintiffs ask the Court to infer that the press release announcing Mr. George's termination means something different than what it actually says. The announcement expressly states that Mr. George's termination was "without cause." SAC ¶ 189. Had Mr. George been involved in, or had knowledge of, the underlying misconduct, that would have provided grounds for a termination "with cause." The Company instead expressly thanked Mr. George for his "years of dedication" and "significant contributions to the Company's mission." *Id.* ¶ 190. And, most importantly, it explained that the termination decision "follow[ed] months of careful planning and deliberation by the Board," and that a Board committee had been "actively recruiting and interviewing CEO candidates" since May 2024—*i.e.*, well before the Audit Committee commenced its investigation into the Company's accounting practices and the use of extra-contractual terms and conditions. *See id.* ¶¶ 95, 190.

Conspicuously absent from the press release is any language connecting Mr. George's termination to the accounting investigation or the misconduct that Evolv had uncovered. *See id.* ¶¶ 189–90. In this context and given the actual language in the Company's press release, the mere timing of Mr. George's termination is not enough to give rise to a strong inference of scienter. *See*

-10-

*iRobot Corp.*, 527 F. Supp. 3d at 140–41 ("Absent any further particularized allegations, other than the timing of [the individual defendants' departures] aligning with alleged corrective disclosures, the complaint fails to allege sufficient facts to show that [individual defendants'] departures were tied to their knowledge or even participation in the alleged fraud.").

*Second*, Plaintiffs suggest Mr. George must have known (or was reckless in not knowing) of the improper accounting practices because of Evolv's pre-existing material weaknesses in its internal controls. *See* SAC ¶¶ 200–01. This again does not support an inference of scienter. *See Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 214 (D. Mass. 2017) (rejecting inference that "an internal control problem in one accounting area puts a company or its senior management on notice of internal control problems in all other aspects of the company's accounting procedures"). The SAC alleges that "certain accounting personnel were aware of these extra-contractual terms and conditions during affected periods" until "related allegations were raised internally in July 2024 and known to senior finance and accounting personnel," SAC ¶ 99, but does not name any of the finance and accounting personnel who were aware of these issues. And there is no allegation that Mr. George—who was not a member of the finance or accounting departments—knew of these issues until they were ultimately raised to the Board in September 2024. As the CEO and a signatory of Evolv's financial statements, Mr. George was entitled to rely on the accuracy of the financial statements he was signing absent any "red flags" to put him on notice that the filings contained any accounting irregularities. *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006). Without "specific allegations of reasonably available facts that should have put him on notice that the reported financial results were false," the fact that Mr. George signed the Company's filings cannot give rise to a strong inference of scienter. *Id.*

*Third*, Plaintiffs are left to once again invoke the core operations doctrine, claiming that

Mr. George and other executives would have been aware of (i) "the particulars of transactions that constituted up to and over half of the entire Company's revenues," *see* SAC ¶ 186,[5] and (ii) "the parameters of its contracts with one its largest channel partners." *Id.* ¶ 195. This argument is no more persuasive or compelling than it is for the statements related to Evolv Express. *See Charles River*, 2024 WL 3258293, at *17; *see also Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49, 66 (D. Mass. 2022) ("Courts, however, have been hesitant to apply significant weight to 'core operations' allegations without other significant evidence of a defendant's intent or recklessness, or a 'plus factor.'"). Likewise, Plaintiffs' conclusory assertions that Mr. George must have known about the misconduct by virtue of his position as CEO of the Company, *see, e.g.*, SAC ¶ 186, does not hold up either. *See Wasson v. LogMeIn, Inc.*, 496 F. Supp. 3d 612, 638 (D. Mass. 2020) (Burroughs, J.); *see also In re Metawave Comm. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1077–79 (W.D. Wash. 2003) (finding that plaintiffs failed to allege that the individual defendants were aware of any of the "side letters" creating improper revenue recognition where "Plaintiffs rely solely on their own conclusions regarding when Defendants . . . became aware of the side letters").

In the absence of particularized allegations bearing on Mr. George's knowledge of issues with Evolv's sales practices or extra-contractual terms and conditions, no basis is offered in the SAC to support a strong inference of scienter on the part of Mr. George. Here, the simplest, most logical, and most compelling inference from the facts alleged in the SAC is that Mr. George did not learn of the issues that were the subject of the accounting investigation until the same time as the rest of the Board in September 2024. The alternative inference urged by Plaintiffs—that he somehow knew of or participated in the misconduct—makes little sense when he had nothing to

---

[5] Plaintiffs argument also rests on dubious math that $4-6 million in revenue spread across a two-year period somehow represents "over half" of Evolv's revenues. *See* SAC ¶¶ 185–86. In 2023 alone, the Company had over $80 million in revenue. *See* Luz Decl. Ex. 1 (2023 Form 10-K) at 72.

gain from it and where his ultimate departure from Evolv was part of a pre-existing decision to transition to new leadership. *See Sousa v. Sonus Networks, Inc.*, 261 F. Supp. 3d 112, 120 (D. Mass. 2017) (dismissing where the complaint did not allege "any of the telltale motives that have been found to strengthen an inference of scienter, such as insider stock sales or financial incentives far beyond the usual compensation packages"). The suggestion that Mr. George's termination was somehow related to the accounting investigation and its findings is also contradicted by the available allegations. *See In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073–74 (N.D. Cal. 2002) ("[I]t is unremarkable that [a company] would seek to change its management team" after a restatement of earnings, and for reasons unconnected to fraud.).

For these reasons, the SAC does not adequately plead that Mr. George made any of the challenged statements with the requisite "strong inference" of scienter, and the claims against him should be dismissed in their entirety.

## II.    THE SAC DOES NOT PLEAD ANY ACTIONABLE FALSE STATEMENTS OR OMISSIONS BY MR. GEORGE.

In addition to failing to plead scienter, Plaintiffs' claims against Mr. George fail for the independent reason that the SAC does not identify any actionable misstatements.

***Fox Business Interview.*** The SAC identifies a single statement actually made by Mr. George from a July 2021 Fox Business interview that is supposedly false and misleading.[6] Yet that statement cannot form the basis of a claim for securities fraud. As an initial matter, Plaintiffs misleadingly omit the question that Mr. George was responding to as well as the full text of his answer. The relevant part of the interview reads in full as follows:

> ***Liz Claman:***  Nice. I do want to ask a few other questions though. People have gotten smart. Criminals are smart. *They're now using 3D printed guns*. Can these

---

[6] *See* SAC ¶ 114. Plaintiffs challenge various other statements from Evolv's SEC filings that they attribute to Mr. George on the basis that he was a signatory to those filings. *See infra.* p. 16.

machines see that? *People also disassemble guns and they put them in different pieces so it looks like something else.* I mean, can you beat that?

**Peter George:**   That's a great question. So in every case, both the 3D gun and if somebody disassemble it, we have the signatures for all the weapons in the world. And we'll always find that metal barrel that's required to actually do damage with a gun. So we'll always find it in those cases. So we've written the machine learning algorithms for all the guns, all the bombs, and all the large tactical knives in the world and our sensor system can identify those signatures quickly, send an alert, and we'll stop it before it gets into the venue. And then you asked a question earlier about professional sports. A lot of our professional sporting customers are pushing the perimeter out away from the stadium, so you'd come through our system out in the parking lot and then into the entryway. So that depth of defense is really, really important to building a very safe venue.[7]

Placed in its full and proper context, it is clear that Mr. George was not making a sweeping guarantee that Evolv Express will literally detect every weapon in every circumstance, as Plaintiffs try to suggest. Instead, he was responding to a specific question about the system's ability to detect the metal barrels of 3D-printed and disassembled weapons—which Plaintiffs do not challenge in the SAC. Mr. George then continued by explaining how Evolv had "written the machine learning algorithms for all the guns, all the bombs, and all the large tactical knives in the world" and how Evolv Express "can identify those signatures quickly." *See In re Bos. Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d 43, 55 (D. Mass. 1998) (noting that, in 10b-5 cases, statements are read in their "immediate context," *i.e.*, "the balance of what was said on the particular occasion, and the immediate circumstances in which the particular statement was made").

The SAC contains no particularized factual allegations that show how these statements were false or misleading—*i.e.*, Plaintiffs do not allege that Evolv had not actually written signatures for all the different types of weapons identified by Mr. George, nor do they allege that Evolv Express cannot detect those signatures. Rather, the only factual allegations that have any relationship to his statements are drawn from unconfirmed third-party reports about Evolv

---

[7] Luz Decl. Ex. 2 (Fox Business Transcript) at 5:9–6:11 (emphases added).

Express's supposed issues detecting certain types of weapons in certain, unspecified circumstances. *See* SAC ¶¶ 60–68.[8] These allegations standing alone are not enough to make Mr. George's general statements about the system's mechanics or capabilities false or misleading. *See In re Bos. Sci. Corp. Sec. Litig.*, 646 F. Supp. 3d 249, 277–78 (D. Mass. 2022) (no actionable statement where reorder rate for product was stated to be "quite high" when "Plaintiff [had] not pleaded that an order rate of one to two [] devices per month is not a high reorder rate"). And, in any event, the third-party reports cited in the SAC all post-date his statements during the Fox Business interview, so they do not provide any basis to conclude that the statements were false or misleading at the time they were made. *See City of Miami Fire Fighters' and Police Officers' Ret. Tr.. v. CVS Health Corp.*, 46 F.4th 22, 31 (1st Cir. 2022) (holding that plaintiffs had "fail[ed] to allege sufficiently specific facts about the state of the [] business at particular points in time" to show that "defendants made statements of fact that were false when made or misleadingly incomplete in light of contemporaneous circumstances").

If that were not already enough, no reasonable investor would find Mr. George's isolated statements false and misleading in light of Evolv's robust, contemporaneous disclosures concerning the risk that Evolv Express might not detect every weapon in every scenario. *See, e.g.*, SAC ¶ 112; *see also Brill v. Invivyd, Inc.*, 2024 WL 4228832, at *8 (D. Mass. Sept. 18, 2024) (reasonable investor would not read statement that product "will neutralize SARS-CoV-2 and all its known variants" as a guarantee in light of the press release from the company noting that the antibody "is *likely* to be just as effective" against the new variants); *Kader*, 2016 WL 1337256, at *17 (repeated warnings by company of FDA's concerns with its methodology undercut inference

---

[8] Indeed, many of these third-party reports relied upon by Plaintiffs focus on Evolv Express's ability to detect knives on certain sensitivity settings, *see, e.g.*, SAC ¶ 60 ("The system was incapable of detecting every knife on the sensitivity level observed during the exercise . . . ."), yet none of these reports are inconsistent with the Company's truthful claim that it was capable of detecting "large tactical knives" on certain settings.

that statements were false and misleading). Finally, Mr. George's statements cannot be false and misleading for the separate reason that they are quintessential examples of corporate puffery that, by definition, are not actionable under the securities laws. *See Charles River*, 2024 WL 3258293, at *11 (describing product as "high quality" is inactionable puffery); *Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d at 42 (statement that company had a "terrific product" is inactionable puffery).

*Evolv Express.* In addition to Mr. George's statement from the July 2021 Fox Business interview, Plaintiffs challenge a number of other statements from Evolv's SEC filings and other public announcements concerning Evolv Express. None of these statements is actionable either.

The first set of challenged statements are nothing more than generic descriptions of Evolv's business and Evolv Express drawn from the Company's SEC filings.[9] It is axiomatic that these types of statements are not actionable under the securities laws. *See Wang Yan v. ReWalk Robotics Ltd.*, 330 F. Supp. 3d 555, 570–71 (D. Mass. 2018) (finding that statements in a registration statement describing "compelling clinical data" and a "breakthrough" product were "generic expressions of corporate optimism" that could not give rise to liability); *Toussaint v. Care.com Inc.*, 490 F. Supp. 3d 341, 350 (D. Mass. 2020) (finding company's statements regarding the "reliability of [its] safety and security measures" to be non-actionable as too "generalized"); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998–99 (N.D. Cal. 2007) (statements touting "high quality" and "reliable" service were non-actionable puffery that would not be likely to mislead a reasonable consumer); *see also* Evolv MTD Section I.A.4.

Next, Plaintiffs challenge statements from a March 2022 blog post authored by Richard Abraham, the Company's Senior Vice President of Technical Sales and Solutions, concerning third-party testing of Evolv Express.[10] As an initial matter, Mr. George was not the author of the

---

[9] *See* SAC ¶¶ 111, 113, 115–16.
[10] *See* SAC ¶ 118.

March 2022 blog post, nor do Plaintiffs allege that he was involved in any way in its publication. *See Blank v. TriPoint Global Equities, LLC*, 338 F. Supp. 3d 194, 213 (S.D.N.Y. 2018) (executives not liable for statements on company website where there were "no specific allegations that [they] were involved with the creation, development, or maintenance of the websites or the information contained thereon"). In any event, Plaintiffs do not allege with particularity that any part of the blog post is false or misleading. *See* Evolv MTD Section I.A.2.

Plaintiffs also challenge a series of statements relating to the designation of Evolv Express as a Qualified Anti-Terrorism Technology by the U.S. Department of Homeland Security (the "SAFETY Act Designation").[11] Again, Mr. George is not alleged to have had any role in making a single one of the challenged statements. *See* SAC ¶ 120. And there is nothing false or misleading about Evolv's factually accurate statements concerning Evolv Express's SAFETY ACT Designation. *See CVS Health Corp.*, 46 F.4th at 32–33 ("For accurate figures to mislead, plaintiffs would need to point us to some more concrete and inaccurate conclusions that those figures would invite . . . ."); *see also* Evolv MTD Section I.A.3.

Lastly, Plaintiffs assert that various risk disclosures made by the company relating to the reliability and testing of Evolv Express were false and misleading.[12] Such disclosures are only actionable, however, when the warned-of risk had already occurred or the defendants knew "with certainty" that it would materialize at the time the disclosures were made. *See Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F. 4th 123, 138 (1st Cir. 2021); *see also iRobot Corp.*, 2025 WL 307247, at *24 (no liability for risk disclosure statements where plaintiffs "[did] not demonstrate that risk had begun to materialize or that there was a near certainty of risk at the time of the disclosures"). Plaintiffs do not allege that to be the case for any of the challenged risk statements.

---

[11] *See* SAC¶¶ 120–22.
[12] *See* SAC ¶¶ 112–13, 121–22 124–25.

*See* Evolv MTD Section I.A.5.

**Accounting Investigation.** Plaintiffs also challenge three categories of statements that they claim were rendered false and misleading by the Company's disclosure of its accounting investigation and anticipated restatement covering the periods between the second quarter of 2022 and the second quarter of 2024: (i) certain statements from Evolv's SEC filings concerning its revenue recognition policies;[13] (ii) Evolv's financial results for fiscal year 2020 (as reported in the Company's IPO registration statement) through the second quarter 2024;[14] and (iii) certain statements concerning unrelated material weaknesses with Evolv's internal controls.[15] But these statements also are not adequately alleged to be false and misleading. *First*, Plaintiffs do not allege how the Company's statements concerning its revenue recognition policies were false and misleading—*i.e.*, they do not allege that the Company was following different policies or procedures than those that were disclosed. And the mere fact that the Company misapplied its policies because of undisclosed, extra-contractual arrangements does not render its policy statements false and misleading. *See* Evolv MTD I.B. *Second*, Plaintiffs do not allege any facts to support an inference that Evolv's 2020 financials presented in its registration statement or its reported financials for 2021 and the first quarter of 2022 were false and misleading. As for the remaining periods actually covered by the Company's anticipated restatement, Plaintiffs do not allege with particularity which financial metrics in which periods were misstated or by what amounts. This is insufficient under the securities laws. *See Greebel v. FTP Software, Inc.*, 194 F. 3d 185, 203 (1st Cir. 1999) ("[A] general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation."); *see also*

---

[13] *See* SAC ¶¶ 126–29.
[14] *See id.* ¶¶ 131–56.
[15] *See id.* ¶¶ 157–65.

Evolv MTD I.B. *Third*, the Company's truthful disclosures concerning unrelated material weaknesses in its internal controls are not made false and misleading because the Company had to restate its financials for certain periods. *See* Evolv MTD I.B.

Accordingly, the claims against Mr. George should be dismissed for the independent reason that Plaintiffs fail to allege that any of the challenged statements in the SAC were false and misleading.

### III.   PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING A CLAIM FOR CONTROL PERSON LIABILITY AGAINST MR. GEORGE.

Plaintiffs' Section 20(a) claim against Mr. George for control person liability also must be dismissed. To plead a violation of Section 20(a), Plaintiffs must show "(1) an underlying violation of the same chapter of the securities laws by the controlled entity and (2) control of the primary violator by defendant with culpable participation." *Akamai Techs., Inc. v. Deutsche Bank AG*, 764 F. Supp. 2d 263, 266 (D. Mass. 2011) (quotation marks omitted).[16] Because the SAC fails to plead a primary Section 10(b) violation against Evolv or any Individual Defendant, the Section 20(a) claim against Mr. George also necessarily fails. *See ACA Financial Guaranty Corp.*, 512 F.3d at 67–68 ("The plain terms of section 20(a) indicate that it only creates liability derivative of an underlying securities violation. . . . Here, there was no underlying 10b-5 violation. The section 20(a) claim must fail."); *see generally* Evolv MTD.

Further, the Section 20(a) claim against Mr. George should be dismissed for the independent reason that Plaintiffs have not alleged that he was a culpable participant in the alleged

---

[16] The First Circuit has not decided whether "culpable participation" is an element of a Section 20(a) claim. *See Dahhan v. OvaScience, Inc.*, 2021 WL 2186466, at *6 n.5 (D. Mass. May 28, 2021); *see also Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (declining to decide whether "culpable participation" is an element of Section 20(a) claim). Other circuits, however, require that plaintiffs plead facts to support a defendant's culpable participation to state a claim under Section 20(a). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484–85 (3d Cir. 2013). And courts in this district also have adopted the "culpable participation" requirement. *See Akamai Techs.*, 764 F. Supp. 2d at 266; *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 246–47 (D. Mass. 2011).

fraud. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016). As discussed above, Plaintiffs fail to demonstrate that Mr. George acted with scienter with respect to any of the challenged statements. Instead, they rely solely on Mr. George's position as a senior executive at Evolv, and his general access to company information, as sufficient to establish his personal liability for securities fraud. It is not. Plaintiffs' failure to allege facts demonstrating a "strong inference" of scienter on the part of Mr. George means that they have not alleged his culpable participation in any wrongdoing by the Company, as required to maintain a claim of control person liability. *See In re Lottery.com, Inc. Sec. Litig.*, 2025 WL 605485, at *36 (S.D.N.Y. Feb. 25, 2025) (dismissing Section 20(a) claims against individual defendants for failure to plead culpable participation on the basis that the complaint failed to plead scienter under Section 10(b) against the same defendants); *Virtus Inv. Partners*, 195 F. Supp. 3d at 542 (similar). For this additional reason, the SAC fails to state a claim under Section 20(a).

## CONCLUSION

For the reasons above, as well as the additional reasons set forth in the Evolv MTD filed contemporaneously herewith, Mr. George respectfully requests that the Court dismiss the claims against him with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

Dated:  March 28, 2025

Respectfully submitted,


PETER GEORGE


By his attorneys,

*/s/ Jennifer B. Luz*

R. Todd Cronan (BBO No. 542466)
Jennifer B. Luz (BBO No. 657739)
Brendan Blake (BBO No. 710755)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
RCronan@goodwinlaw.com
JLuz@goodwinlaw.com
BBlake@goodwinlaw.com

-21-

## CERTIFICATE OF SERVICE

I, Jennifer B. Luz, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 28, 2025.

/s/ Jennifer B. Luz
Jennifer B. Luz