**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE EVOLV TECHNOLOGY HOLDINGS INC. SECURITIES LITIGATION | Civil Action No. 1:24-cv-10761-ADB<br><br>Leave to File Granted On February 26, 2025 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GEORGE'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

GLOSSARY ................................................................................................................................ vii

INTRODUCTION  ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.    THE SAC STATES CLAIMS AGAINST GEORGE UNDER SECTION 10(b) OF THE
      EXCHANGE ACT.......................................................................................................... 2

      A.    The SAC Adequately Alleges False or Misleading Statements by George ............ 2

            1.    Statements And Risks About the Effectiveness Of Evolv Express Are
                  Actionable ................................................................................................... 3

            2.    Statements On Fox Business Are Actionable ........................................ 3

            3.    George Is Liable For The Remaining Alleged Statements ..................... 7

      B.    The SAC Adequately Alleges a Strong Inference of Scienter ............................... 8

II.   THE SAC ADEQUATELY ALLEGES A CLAIM UNDER SECTION 20(a) OF THE
      EXCHANGE ACT AGAINST GEORGE ...................................................................... 14

CONCLUSION ........................................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**

*Abramson v. NewLink Genetics Corp.*,
   965 F.3d 165 (2d Cir. 2020) ........................................................................ 4, 5, 6, 7

*Akamai Techs., Inc. v. Deutsche Bank AG*,
   764 F. Supp. 2d 263 (D. Mass. 2011) ..................................................................... 16

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
   532 F. Supp. 3d 189 (E.D. Pa. 2021) ..................................................................... 13

*Blank v. TriPoint Glob. Equities, LLC*,
   338 F. Supp. 3d 194 (S.D.N.Y. 2018) ....................................................................... 7

*Brill v. Invivyd, Inc.*,
   2024 WL 4228832 (D. Mass. Sept. 18, 2024) ........................................................... 6

*Brown v. Enstar Grp., Inc.*,
   84 F.3d 393 (11th Cir. 1996) ................................................................................... 16

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002) ...................................................................................... 14

*City of Brockton Ret. Sys. v. CVS Caremark Corp.*,
   2013 WL 6841927 (D.R.I. Dec. 30, 2013) ................................................................. 3

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*,
   2024 WL 1258149 (D. Mass. March 25, 2024) ..................................................... 9, 10

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*,
   46 F.4th 22 (1st Cir. 2022) ......................................................................................... 5

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) .................................................................................... 11

*Collier v. ModusLink Glob. Sols., Inc.*,
   9 F. Supp. 3d 61 (D. Mass. 2014) ....................................................................... 8, 10

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
   22 F.4th 1 (1st Cir. 2021) ........................................................................................... 3

*Crowell v. Ionics, Inc.*,
   343 F. Supp. 2d 1 (D. Mass. 2004) .......................................................................... 12

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018) .............................................................................. 10

*Derr v. Ra Med. Sys., Inc.*,
   2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) .................................................................. 12

*G.A. Thompson & Co. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981) ........................................................................................... 16

*Godinez v. Alere Inc.*,
   272 F. Supp. 3d 201 (D. Mass. 2017) .............................................................................. 14

*Goplen v. 51job, Inc.*,
   453 F. Supp. 2d 759 (S.D.N.Y. 2006) .............................................................................. 14

*Gray v. Alpha & Omega Semiconductor Ltd.*,
   2021 WL 4429499 (S.D.N.Y. Sept. 27, 2021) ................................................................. 12

*Harrington v. Tetraphase Pharm. Inc.*,
   2017 WL 1946305 (D. Mass. May 9, 2017) .................................................................... 10

*Harrison v. Dean Witter Reynolds, Inc.*,
   974 F.2d 873 (7th Cir. 1992) ........................................................................................... 16

*In re Adient plc Sec Litig.*,
   2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) .................................................................... 10

*In re Allaire Corp. Sec. Litig.*,
   224 F. Supp. 2d 319 (D. Mass. 2002) ............................................................................ 5, 7

*In re Apple Inc. Sec. Litig.*,
   2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .................................................................... 6

*In re Biogen Inc. Sec. Litig.*,
   193 F. Supp. 3d 5 (D. Mass. 2016) ................................................................................... 6

*In re Bos. Sci. Corp. Sec. Litig.*,
   646 F. Supp. 3d 249 (D. Mass. 2022) ............................................................................... 5

*In re Bos. Sci. Corp. Sec. Litig.*,
   686 F.3d 21 (1st Cir. 2012) ............................................................................................... 9

*In re Cannavest Corp. Sec. Litig.*,
   307 F. Supp. 3d 222 (S.D.N.Y. 2018) ............................................................................... 7

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022) ................................................................. 4

*In re Initial Pub. Offering Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003) .................................................................. 5

*In re Ocular Therapeutix, Inc. Sec. Litig.*,
2019 WL 1950399 (D. Mass. Apr. 30, 2019) ..................................................... 12

*In re OSG Secs. Litig.*,
12 F. Supp. 3d 622 (S.D.N.Y. 2014) ..............................................................10, 11

*In re Raytheon Sec. Litig.*,
157 F. Supp. 2d 131 (D. Mass. 2001) .................................................................. 8

*In re Sepracor, Inc. Sec. Litig.*,
308 F. Supp. 2d 20 (D. Mass. 2004) .................................................................... 6

*In re StockerYale Secs. Litig.*,
453 F. Supp. 2d 345 (D.N.H. 2006) ................................................................... 15

*In re Stone & Webster, Inc., Sec. Litig.*,
414 F.3d 187 (1st Cir. 2005) .................................................................... 14, 15, 16

*In re U.S. Aggregates, Inc., Sec. Litig.*,
235 F. Supp. 2d 1063 (N.D. Cal. 2002) ..............................................................11

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016) ........................................................... 14, 15

*Kader v. Sarepta Therapeutics, Inc.*,
2016 WL 1337256 (D. Mass. Apr. 5, 2016) ....................................................... 13

*Karth v. Keryx Biopharmaceuticals, Inc.*,
6 F. 4th 123 (1st Cir. 2021) ................................................................................ 3

*Maher v. Durango Metals, Inc.*,
144 F.3d 1302 (10th Cir. 1998) .......................................................................... 16

*Metge v. Baehler*,
762 F.2d 621 (8th Cir. 1985) .............................................................................. 16

*Metzler Asset Mgmt. GmbH v. Kingsley*,
305 F. Supp. 3d 181 (D. Mass. 2018) ................................................................ 10

*Neely v. Bar Harbor Bankshares*,
    270 F. Supp. 2d 50 (D. Me. 2003) ................................................................... 15

*Paice v. Aldeyra Therapeutics, Inc.*,
    2025 WL 815065 (D. Mass. Mar. 14, 2025) ..................................................... 12

*Paracor Fin., Inc. v. Gen. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .......................................................................... 16

*Premca Extra Income Fund LP v. iRobot Corp.*,
    763 F. Supp. 3d 121 (D. Mass. 2025) .......................................................... 3, 10

*Press v. Quick & Reilly, Inc.*,
    218 F.3d 121 (2d Cir. 2000) ........................................................................... 13

*Quinones v. Frequency Therapeutics, Inc.*,
    106 F.4th 177 (1st Cir. 2024) ......................................................................... 12

*SEC v. Egan*,
    994 F. Supp. 2d 558 (S.D.N.Y. 2014) ............................................................... 9

*SEC v. e-Smart Techs., Inc.*,
    31 F. Supp. 3d 69 (D.D.C. 2014) ...................................................................... 8

*Servs. Ltd. Sec. Litig.*,
    915 F. Supp. 2d 450 (S.D.N.Y. 2013) ............................................................. 15

*Shash v. Biogen, Inc.*,
    84 F.4th 1 (1st Cir. 2023) ............................................................................... 14

*Simon v. Abiomed*,
    37 F. Supp. 3d 499 (D. Mass. 2014) .................................................................. 9

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) ....................................................... 12

*State Tchrs. Ret. Sys. of Ohio v. Charles River Labs. Int'l, Inc.*,
    2024 WL 3258293 (D. Mass. July 1, 2024) ....................................................... 6

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) ............................................................... 3

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001) ............................................................................. 12

v

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..................................................................................................... 8

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
    564 U.S. 135 (2011) ..................................................................................................... 7

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
    28 F. Supp. 3d 93 (D. Mass 2014) ............................................................................. 10

*Wasson v. LogMeIn, Inc.*,
    2021 WL 1080201 (D. Mass. Mar. 18, 2021) ........................................................... 14

## <u>STATUTES</u>

15 U.S.C. § 78t(a) ............................................................................................................. 14

## <u>REGULATIONS</u>

17 C.F.R. § 230.405 ......................................................................................................... 15

**GLOSSARY**

| Term | Definition |
|------|-----------|
| Additional Plaintiffs | Chris Williams, Tim R. Carrillo, and Chris Swanson |
| AI | Artificial intelligence |
| Board | The Board of Directors of Evolv Technologies Holdings, Inc. |
| Business Combination | Transaction through which Legacy Evolv became a wholly owned subsidiary of NewHold Investment Corp., a special purpose acquisition company, and was renamed Evolv |
| Class Period | June 28, 2021 to October 25, 2024 |
| Def. Br. | Memorandum of Law In Support of Motion to Dismiss (ECF 97) |
| Defendants | Evolv, George, Mark Donohue, Mario Ramos, Kevin Charlton, Thomas J. Sullivan, Charles Goldman, Charlie Baynes-Reid, Adam Deutsch, Marc Saiontz, Kathleen Harris, Brian Mathis, Neil Glat, Sezaneh Taherian |
| DHS | Department of Homeland Security |
| Evolv or the Company | Evolv Technologies Holdings, Inc. |
| Exchange Act | Securities Exchange Act of 1934 |
| Express | Evolv Express, which is a touchless screening system that purports to detect the size, shape, and composition of objects concealed on people as they walk through a scanner |
| FE | Former employee |
| FTC | Federal Trade Commission |
| FTC Complaint | SAC, Exhibit A |
| GAAP | Generally accepted accounting principles |
| George | Peter George |
| George Br. | Memorandum of Law in Support of Defendant Peter George's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint for Violations of Federal Securities Laws (ECF 96) |
| George Motion | Defendant Peter George's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint for Violations of Federal Securities Laws (ECF 95) |
| Individual Defendants | George, Mark Donohue, Mario Ramos, and Kevin Charlton |
| Lead Plaintiff | Robert Falk |
| Legacy Evolv | Evolv Technologies, Inc. d/b/a Evolv Technology, Inc. |

| Main Opposition or Main Opp. | Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, filed concurrently herewith |
|---|---|
| Mendell Decl. | Declaration of Nathaniel R. Mendell in Support of Defendants' Motion to Dismiss the Second Amended Complaint (ECF 91) |
| Motion to Dismiss or Motion | Defendants' Motion to Dismiss the Second Amended Complaint (ECF 90) |
| NCS4 | National Center for Spectator Sports Safety and Security |
| Plaintiffs | Robert Falk, Chris Williams, Tim R. Carrillo, and Chris Swanson |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| Registration Statement | Registration statement, its amendments, and prospectus filed in connection with the Business Combination |
| SAC | Plaintiffs' Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 84) |
| SEC | Securities & Exchange Commission |
| Securities Act | Securities Act of 1933 |
| Securities Act Individual Defendants | Kevin Charlton, Thomas J. Sullivan, Charles Goldman, Charlie Baynes-Reid, Adam Deutsch, Marc Saiontz, Kathleen Harris, Brian Mathis, Neil Glat, Sezaneh Taherian |

**INTRODUCTION**

As explained in the concurrently-filed Main Opposition, Plaintiffs' SAC easily states claims against Defendants—and George specifically—for making false and misleading statements in violation of Sections 10(b) and 20(a) of the Exchange Act. George's separate Motion does not show otherwise. Indeed, George largely rehashes the arguments made in Defendants' Motion.[1] George's arguments are especially unavailing here because he glides over the misconduct that took place in his midst and under his watch—and ignores that he was forced out of his positions as President, CEO, and director of Evolv due to his actions. In the end, George asks this Court to accept, at face value, self-serving claims that he "genuinely believed in the Company's mission" and had no "motive" to lie and never knew anything before he was fired. This is not believable.

As to falsity, the SAC alleges numerous material false or misleading statements made by George. *See* Main Opp. Sec. II. Any or all of these false statements are sufficient to ground a Section 10(b) claim against him. Indeed, one of the central misstatements in the case is one uttered by George on his Fox Business interview on July 23, 2021. ¶¶58, 114.[2] George tries to defend the truthfulness of the statement, arguing that it did not actually mean what he stated, and that it was puffery, but the challenged statement is certainly concrete enough to be actionable: can Express detect "all the large tactical knives" and "stop it before it gets into the venue?" As investigations by the FTC, independent agencies, and school districts confirm, the answer is unequivocally "no," rendering George's statements false. Likewise, George's signing of financial statements for periods later restated make him liable for the misstatements therein.

---

[1] Thus, Plaintiffs incorporate by reference the Exchange Act arguments made in their Main Opposition. George's arguments here fail for the same reasons.

[2] All citations to "¶" are to the SAC, unless otherwise noted. Unless otherwise stated, all emphasis is added, all citations and quotations are omitted, and all citations are cleaned up.

1

As to scienter, the SAC alleges a strong inference that George knew, or was at a minimum severely reckless, of the true capabilities of Express and of Evolv's financial results. *See* Main Opp. Sec. II.C. There are multiple indicia of scienter present, including Evolv's restatement, the admission of material weaknesses, the internal investigation into leadership issues and misconduct at senior levels of Evolv, the withholding of information from auditors, the public retractions and corrections, the suspicious termination and resignation of key executives (including George) and an FTC enforcement action that ended in an order of settlement and permanent injunction, among other things. This combination of allegations supports a strong inference of scienter against George under Section 10(b).

As to the control liability claim, the Motion is also easily denied, for once a primary violation is established, as it is here, there is no reason to delve too far into the "control" issue. The SAC alleges more than enough, and so the Section 20(a) claim should proceed to discovery too.

In sum, George's Motion, ECF No. 95, should be denied, except for the pre-June 2022 statements about revenue recognition policy (¶¶126-27) and financial results (¶¶131-36).[3]

**ARGUMENT**[4]

**I.     THE SAC STATES CLAIMS AGAINST GEORGE UNDER SECTION 10(b) OF THE EXCHANGE ACT**

The SAC states a claim against George for violations of Section 10(b) of the Exchange Act or SEC Rule 10b-5, including the elements of both falsity and scienter. ¶¶225-35.

**A.     The SAC Adequately Alleges False or Misleading Statements by George**

The SAC alleges a number of false or misleading statements by George during the Class

---

[3] In light of the restatement, Plaintiffs are withdrawing without prejudice allegations regarding the falsity of pre-June 2022 statements about revenue recognition policy (¶¶126-27), and pre-June 2022 statements about financial results (¶¶131-36).

[4] Plaintiffs refer to, and incorporate by reference, the Statement of Facts and Legal Standards section in their concurrently-filed Main Opp. as well as the discussion of the elements of an Exchange Act claim in the Main Opp.

2

Period. Any or all of them are sufficient to ground a Section 10(b) claim against George. *City of Brockton Ret. Sys. v. CVS Caremark Corp.*, 2013 WL 6841927, at \*4 (D.R.I. Dec. 30, 2013) (denial of dismissal warranted where "at least one allegedly false statement" sustained).

### 1. Statements And Risks About the Effectiveness Of Evolv Express Are Actionable

Evolv's Registration Statement, 2021 10-K, 2022 10-K, and 2023 10-K were materially misleading for claiming that Express could "reliably" detect weapons. *See* Main Opp. Sec. II.B.1. George incorrectly argues that they are nothing more than "generic" descriptions of Evolv and Express, George Br. at. 16, but they are concrete, verifiable representations of fact, not vague generalities. *See* Main Opp. Sec. II.B.1.; *see also Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 7-8 (1st Cir. 2021) (statements that product "improves performance for backing up virtual environments and makes us really competitive" were actionable as they "plainly implied some better performance" and its "***ability to perform*** was a significant part of the mix of information"). Though *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) (George Br. at 16) concluded "reliable" and "high quality" were not factual representations, the statements here cited specific facts to purportedly substantiate Defendants' claim that Express was "reliable," such as that it could detect "large knives while ignoring harmless items like phones and keys." ¶111.[5] But Express fell woefully short. ¶103. The risk disclosures are also actionable because, unlike in the cases cited by George, the risks had already materialized.[6]

### 2. Statements On Fox Business Are Actionable

In one of the central misrepresentations in the case, George went on national television in

---

[5] George's other authorities are distinguished in the Main Opposition.

[6] *Compare* Main Opp. at Sec. I.D.; *with Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F. 4th 123, 138 (1st Cir. 2021) (insurance risk had not materialized because insurance had not decided not to reimburse patients); *Premca Extra Income Fund LP v. iRobot Corp.*, 763 F. Supp. 3d 121, 155-56 (D. Mass. 2025) (risk of regulatory review of merger had not materialized as merger was unlikely to occur at the time of the statements), *appeal filed.*

July 2021 and assured investors that "for all the guns, all the bombs, and all the large tactical knives in the world and our sensor system can identify those signatures quickly, send an alert, and will stop it before it gets into the venue." ¶114. This statement obviously misrepresented Evolv's capabilities,[7] making it actionable. *See Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 178 (2d Cir. 2020) (answer to question actionable where "sheer volume of competing facts required [defendant] to either speak less confidently . . . or to disclose to existence of [competing] studies").[8]

George argues that Plaintiffs "misleadingly omit the question that [he] was responding to as well as the full text of his answer." George Br. at 13. But while the analyst's question was directed to "3D printed guns" and "disassemble[d] guns," George expanded his answer beyond the analyst's question to include knives and other weapons. *Id*. Regardless, even if George's answer were limited to "3D printed guns," Plaintiffs allege that the Express was not capable of detecting them. ¶66.

George claims that the statement was not a "sweeping guarantee," but this flies in the face of his statement, where he literally stated that "***in every case,*** both the 3D gun and if somebody disassemble it, we have the signatures for ***all*** the weapons in the world. And we'll ***always*** find the metal barrel that's require to actually do damage with a gun. So we'll ***always*** find it in those cases." ¶114. Because he used terms like "every," "all," and "always," George's statements are categorically definitive statements about the then-existing capabilities of a commercialized product, so he was required to make his disclosures accurate and fulsome. *See Abramson*, 965 F.3d

---

[7] *E.g.* ¶60 ("Express failed to detect large knives 42% of the time")*; see also* ¶64 ("detected some knives at a rate of 0% with a 53% rate overall" and detected knives over 5 inches only 58% of the time); ¶61 ("knives were not consistently detected" by the Express); ¶85 ("former employees confirmed that Express could not detect knives").

[8] Contrary to Defendants' suggestion, there is no bright-line rule that media interviews "cannot be considered guarantees." *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 186 (W.D.N.Y. 2022) (CEO's predictions about likelihood of company's receipt of government loan were opinion where they were couched in conditional language like "assuming that everything stays normal" and "you never know") (Def. Br. at 12-13).

at 177 (specificity and authority of CEO's statement as to "***all*** the major studies" misleadingly suggested that ***no*** study contradicted his position); *see also In re Bos. Sci. Corp. Sec. Litig.,* 646 F. Supp. 3d 249, 282-84 (D. Mass. 2022) (claim that product was "growth driver and strategic investment" actionable because serious product deficiencies existed).

Defendants also challenge the third-party reports that Plaintiffs use to show Express was not as effective as claimed, characterizing them as "unconfirmed" accounts of "supposed issues." George Br. at 14-15; Def. Br. at 13. But these reports include the NCS4 report that Evolv openly touted after it deleted adverse details about Express's shortcomings. ¶¶61, 106, 118. Moreover, the findings *have* been confirmed by the FTC and by several former employees. ¶¶70, 81-87, 102-107, 184; *see, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) (crediting reports through intensive investigations by state and federal agencies and corroborated by news agencies and former employees).[9] George also argues that his statements were not false when made because these reports post-date the Fox Business interview, George Br. at 15, but it is "highly unlikely" that the product worked as George claimed in July 2021 and somehow stopped working later. *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 330 (D. Mass. 2002) ("highly unlikely" that "product worked properly in December, but did not in January").

George incorrectly argues that the misleading nature of his statements would be nullified by Evolv's risk disclosures. George Br. at 15. Effective risk warnings must be specific to the alleged misrepresentations, but the risks George cites are in the Registration Statement and were

---

[9] To the extent George argues that "none of these reports" are inconsistent with the claim the Express can detect large knives on certain settings (George Br. at 15 n.8) this is incorrect. The FTC alleged increasing the systems sensitivity settings promoted a 50% false alarm rate (¶102) and stated Express "missed weapons and falsely alerted for harmless personal items despite the use of various sensitivity settings." ¶13. By contrast, the parties in Defendants' cited authority agreed that the business value declined during the class period but disputed *when* it occurred. *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 31-33 (1st Cir. 2022) (Def. Br. at 13; George Br. at 15).

not made during the Fox Business interview. *See In re Sepracor, Inc. Sec. Litig.*, 308 F. Supp. 2d 20, 34 (D. Mass. 2004) (risk warnings must be "sufficiently tailored" to preclude liability). Regardless, even if investors were on notice of the cited risks when viewing George's oral representations, they are not effective because the disclosures were themselves misleading. *See* Main Opp., Secs. I.D.; II.B.1.; *Brill v. Invivyd, Inc.*, 2024 WL 4228832, at *8 (D. Mass. Sept. 18, 2024) (claims that vaccine "will neutralize . . . known variants" was not actionable because article also "convey[ed] a lack of certainty") (George Br. at 15).

Contrary to his assertion, George's statements are not puffery because, like the other challenged statements, they convey concrete, verifiable representations of fact that can be proven or disproven. *See* Main Opp., Sec. II.B.1. In contrast, George cites cases where mere "subjective, optimistic statements" were dismissed as puffery. *State Tchrs. Ret. Sys. of Ohio v. Charles River Labs. Int'l, Inc.*, 2024 WL 3258293, at *11 (D. Mass. July 1, 2024) ("high quality" macaques), *appeal filed*; *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 42 (D. Mass. 2016) ("terrific product"). Whether Express detects weapons as George claimed is verifiable, not subjective.

Though Defendants do not say it outright, they cite cases analyzing whether opinions are misleading. Def. Br. at 12. George's statements on Fox were not mere opinions. Given the context in which he spoke, the level of specificity, and the authority with which the statement it was made, investors would reasonably understand the statement to be a factual declaration—as Defendants' own cases confirm. *Abramson*, 965 F.3d at 175 (statements by knowledgeable co-founder speaking in professional capacity "was not framed like a statement of opinion"); *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *5 (N.D. Cal. Nov. 4, 2020) (in context of analyst question "how he 'sees the trajectory there for the business,'" CEO's answer was representation about actual competitive pressure). Even if it were an opinion, it failed to provide context and facts needed to make the

6

statement not misleading. *Abramson*, 965 F.3d at 175 ("statement of opinion, without providing critical context, implied facts that can be proven false").

### 3.      George Is Liable For The Remaining Alleged Statements

**Express Efficacy.** The March 23, 2022 statements about NCS4 testing and statements about the SAFETY Act Designation are actionable for the reasons discussed in Sections II.B.3-4 of the Main Opposition. George resists liability by claiming he is not the maker of these statements. George Br. at 16-17; *see generally Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011) ("maker" of statement is "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it").

However, corporate officials *were* deeply involved with drafting the NCS4 report which resulted in the blog post. ¶61 ("Evolv employees had been allowed to make "tracked changes" to the report - deleting certain sections"). At the motion to dismiss stage, it is reasonable to infer that George, as President and CEO, was one of these employees. *Allaire*, 224 F. Supp. 2d at 341 ("To permit the individual defendants to cause false communications to issue to investors, yet escape liability because investors, prior to discovery, cannot identify who generated the press release, would be inconsistent with the intent and functions of the securities laws."); *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 241 (S.D.N.Y. 2018) (group pleading doctrine still applies post-*Janus* and allows presumption that written statements like press releases are made by all individuals with direct involvement in the everyday business of the company) (collecting cases); *cf. Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 213 (S.D.N.Y. 2018) (corporate officials would have no involvement in drafting vague statements on website) (George Br. at 17). George is also liable for the SAFETY Act designation statements because they were made in multiple reports that he signed. ¶¶120-122; *In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 152

(D. Mass. 2001) (reasonable to presume that annual or quarterly reports are collective actions of signatory officers); *see also SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69, 80 (D.D.C. 2014) ("Courts have consistently held that the signer of a corporate filing is its 'maker' . . . .").

**Financial Statements.** George parrots the arguments made by the other Defendants, which are already addressed in Section II.B.5-7 of the Main Opposition. George claims that the SAC does not allege "that [Evolv] was following different policies or procedures than those that were disclosed," George Br. at 18, but does not explain why this is relevant particularly where Evolv admitted it failed to follow GAAP and ASC 606. ¶¶95, 98, 99. Geroge also claims that the restatement itself does not render these statements false or misleading, George Br. at 18, but this is semantic and does not compel a different result. *Id.*

### B.    The SAC Adequately Alleges a Strong Inference of Scienter

Taken collectively, the allegations in the SAC plead with particularity that George knew, was at least reckless, as to the falsity of his statements during the Class Period.[10]

The inference begins with the black-and-white falsities propagated by Defendants. George himself went on Fox Business and made one of the central misrepresentations in the case, *i.e.*, that Express detected "all [] weapons" and "all . . . large tactical knives in the world," when he knew Express did not reliably detect knives, ¶¶58, 66, 85, 102-04, as in it "truly, truly could not" detect knives, Mendel Decl., ECF No. 91, Ex. O at 3. As explained in Section II.C. of the Main Opposition, this contributes to the inference of scienter.

---

[10] George includes separate scienter sections for the product efficacy statements and the restatement-related statements, *compare* George Br. 5-8 at *with id*. at 8-13, further trying to "pick[] apart" Defendants' holistic scienter allegations. *Collier v. ModusLink Glob. Sols., Inc*., 9 F. Supp. 3d 61, 76 (D. Mass. 2014). Defendants view all of the scienter allegations and arguments collectively, as required by *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007). George suggests that the product efficacy statements and the restatement-related statements have nothing to do with each other, but he refuses to make the obvious connections between overstating Express's capabilities, aggressively pushing the product in sales, and recognizing that revenue early. This is all one fraud.

8

This case is also different from most in that it is not based primarily on *what Plaintiffs say* about misconduct within Evolv or misstatements made by the Company; it is based in large part on *what Evolv admits* to be its own misconduct and misstatements.[11] Evolv has admitted "**inaccura[cies]**" and "**misstatements**" in its financial statements, ¶¶95, 98, and "**misconduct**" within the Company, ¶¶95, 187, 195, including the "**with[holding]**" of material information from its audit committee and outside auditor, ¶¶10, 95. Withholding information from auditors is itself strong indication of fraud. *See SEC v. Egan*, 994 F. Supp. 2d 558, 567 (S.D.N.Y. 2014) (finding it indicative of conscious misbehavior). Regardless of whether George was one of the "senior finance and accounting personnel" found at fault by the internal investigation, all of those people reported to him and George was terminated as President and CEO. ¶¶95, 99, 188. Evolv has also conceded that these alleged statements were likely to "confuse[] or appeared to generalise [Express's] capabilities at the time" and edited them after they were scrutinized by news agencies. *See* Mendel Decl., Ex. T at 4; ¶74 (updated press release to indicate Express has not been "validated" by UK company). These admissions are not merely "circumstantial evidence," and even if they were, they would still form a strong basis for scienter. *See City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, 2024 WL 1258149, *17 (D. Mass. March 25, 2024); *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012) (direct evidence includes "admissions, internal records *or* witnessed discussions"); *Simon v. Abiomed*, 37 F. Supp. 3d 499, 522 (D. Mass. 2014) ("[P]laintiffs are entitled to allege (and try to prove) a circumstantial case."); *cf.* George Br. at 9.

The inference of scienter is strengthened by George's termination, just five days after the announcement of the need for a restatement, with no permanent replacement, right in the midst of

---

[11] George complains that the SAC does not plead scienter because it does not cite specific documents, George Br. at 8, but this is not required at the pleading stage, particularly given the pre-discovery posture.

FTC and SEC investigations into deceptive statements and board investigations into leadership issues and misconduct at senior levels of the Company. ¶¶11, 96-97. Suspicious terminations can contribute to a strong inference of scienter, as admitted in Defendant's own law. *See Cerence*, 2024 WL 1258149, *17 (George Br. at 9) ("[I]t is true that an abrupt resignation can weigh in favor of finding scienter[.]"); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018) (George Br. at 10) (same); *accord Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 65, 76 (D. Mass. 2014) (scienter supported by investigations that "culminated in the resignation" of key executives). George's authorities, in which there were no other facts to suggest the departure was suspicious, are thus distinguishable. *Harrington v. Tetraphase Pharm. Inc.*, 2017 WL 1946305, *7 (D. Mass. May 9, 2017) (executive departures four months after relevant events); *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 112-13 (D. Mass 2014) (no facts to corroborate inference of suspicion from termination; *Metzler Asset Mgmt. GmbH v. Kingsley*, 305 F. Supp. 3d 181, 219 (D. Mass. 2018) (similar). Though Evolv's announcement did not directly tie George's termination to the ongoing investigation, the timing supports a reasonable inference that they are related. *See In re OSG Secs. Litig.*, 12 F. Supp. 3d 622, 633 n.84 (S.D.N.Y. 2014) (suspicious that executive resigned the same day as regulatory event); *cf. In re Adient plc Sec Litig.*, 2020 WL 1644018, at *29 (S.D.N.Y. Apr. 2, 2020) (no facts to suggest retiring officer was "ousted") (George Br. at 10). George's claim that the termination was "unrelated" is unavailing because the board's "months" of deliberation were still squarely during the period right after the announcement of the FTC and SEC investigations. *See iRobot Corp.*, 763 F. Supp. 3d at 160 ("This is not a situation where an officer or director was pushed out of the company after an internal investigation, findings of fraud or misfeasance.") (George Br. at 5, 17), Whether his termination was officially "without cause," George Br. at 9-10, is not determinative where the termination takes place immediately in

10

the wake of a restatement and in the midst of external and internal investigations into deceptive conduct and financial misconduct. *See OSG*, 12 F. Supp. 3d at 633 n.84 (rejecting "pretextual" explanation for resignation). Overall, in context, the termination supports an inference of scienter.[12]

The inference of scienter is further strengthened by allegations of FTC and SEC investigations, and particularly the FTC investigation that ripened into an enforcement action, *i.e.*, a complaint, settlement order, and permanent injunction. George incorrectly dismisses these as mere allegations about Evolv's marketing materials. George Br. at 6-7 & n.4. First, Evolv's marketing materials are coextensive with the misstatements alleged here, so the FTC's findings are probative of the misleading nature of George's statements to investors. *See* FTC Complaint, ¶¶2, 32; *see also* ¶¶102-09. Second, the FTC "banned [Evolv] from ***making unsupported claims*** about its products' ability to detect weapons by using artificial intelligence" and required it "to give certain K-12 school customers the option to cancel their contracts." Mendell Decl., Ex. I at 1. These penalties following a regulator's investigation weighs in favor of scienter at the pleading stage. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 683 (6th Cir. 2005) (scienter supported by "quick settlement" of "ancillary lawsuit charging fraud").

George claims that the FTC settlement order is not reflective of his scienter because he was not individually named as a defendant, George Br. at 6, but this means nothing. No individuals were named—it was brought against the Company. *See* FTC Complaint. Moreover, this argument unavailingly deflects from the fact that George presided over Evolv as President, CEO, and director during the period of alleged wrongdoing. *See Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,

---

[12] George hints that termination is not indicative of scienter because he may have been fired for poor performance. *See* George Br. at 13 (citing *In re U.S. Aggregates, Inc., Sec. Litig.*, 235 F. Supp. 2d 1063, 1073-74 (N.D. Cal. 2002)). But that inference is unavailable where Evolv itself linked the misstatements to misconduct. ¶¶95, 98.

11

250 F.3d 87, 101 (2d Cir. 2001) ("A corporation can only act through its employees and agents . . . ."). It strains credulity to suggest that he was unaware of the true state of Express or of the misleading nature of the Company's claims. *Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at *7 (S.D. Cal. Mar. 24, 2021) ("unclear" which of these positions had "greater interest" over sole product's efficacy issues, "but it would be absurd to suggest that any of those officers was ignorant of the situation"). George's cases are distinguishable because there was only an investigation that had not ripened into regulatory action. *In re Ocular Therapeutix, Inc. Sec. Litig.*, 2019 WL 1950399, at *31 (D. Mass. Apr. 30, 2019); *Gray v. Alpha & Omega Semiconductor Ltd.*, 2021 WL 4429499, at *12 (S.D.N.Y. Sept. 27, 2021).

All of this is supplemented and fortified by the core operations inference. Under the core operations doctrine, "facts critical to a business's core operations . . . may be attributed to the company and its officers." *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 19 (D. Mass. 2004).[13] "Though the sweep of that doctrine is contested, it simply reflects the commonsense assumption that executives are likely to know more about things central to their business." *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *5 (S.D.N.Y. Feb. 5, 2024). George cites case law supposedly requiring the pleading of a "plus" factor. *See* George Br. at 7, 12. But the requirement has never been endorsed by the First Circuit and has little to recommend it. In any case, the SAC alleges additional significant evidence of recklessness or "plus" factors here in the form of admissions, internal and external investigations, terminations and resignations, a restatement, and all of the other factors discussed here and elsewhere. *See* Main Opp. Sec. II.C..

---

[13] Geroge cites cases in which courts declined to infer that officers knew the intricacies of every drug trial. *Quinones v. Frequency Therapeutics, Inc.*, 106 F.4th 177, 184 (1st Cir. 2024); *Paice v. Aldeyra Therapeutics, Inc.*, 2025 WL 815065, at *9-10 (D. Mass. Mar. 14, 2025) (George Br. at 7). Here, Plaintiffs request the commonsense inference that George, the President and CEO who presided over Express even before the Business Combination, was knowledgeable about Express's real capabilities, which is reasonable especially in light of allegations of internal knowledge of wrongdoing and the withholding of information from auditors.

12

The FE allegations strengthen the overall inference of scienter. George basically ignores the statements made by FEl through FE5, who provide important allegations on the internal function of Evolv and internal knowledge of problems with Express, just because they do not mention him specifically. *Id*. But FE allegations solidify the notion that there were serious problems with Express, the problems were well-known within Evolv, and George was well-placed to know them. ¶¶81-87. George nitpicks statements made by FE6 for not alleging a confession or smoking gun. George Br. at 5.[14] But that is not required. When considered together, the former employee testimony contributes to the inference of scienter here.

George attempts to disclaim "knowledge relating to [] product capabilities," George Br. at 5, but this is absurd for an established CEO, particularly when the question is not about some obscure detail but about the core functionality of his lead product. This newfound ignorance is also contradicted by the fact that George previously spoke out on behalf of Evolv on topics such as "[how Evolv] uses AI-powered security to detect weapons," ¶¶58, 114, the very same topic that interested the FTC, *see* George Br. at 6 (citing ¶102). Knowledge on an issue can be imputed where an executive "held himself out to investors as knowledgeable" on that same topic, as George did here. *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 228 (E.D. Pa. 2021). George claims that the SAC alleges no "specific meeting" or "specific conversation" in which he "was told" about the falsity of his statement. George Br. at 5-6. But all cases are different, and witnessed discussions are not required to plead fraud. *See Shash v. Biogen, Inc.*, 84 F.4th 1, 15 (1st Cir. 2023) (noting that complaints satisfying the scienter standard "generally" include

---

[14] George cites *Kader v. Sarepta Therapeutics, Inc.*, 2016 WL 1337256, at *18 (D. Mass. Apr. 5, 2016) (George Br. at 8), for the notion that robust disclosures can undermine an inference of scienter. But it is not clear that this is true. *See Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 130 (2d Cir. 2000) ("[W]e have never held that [] disclosures [in a prospectus] may, as a matter of law, negate allegations of fraudulent intent."). In any case, the risk disclosures here are themselves misleading.

"admissions, internal records *or* witnessed discussions"). George cites *Wasson v. LogMeIn, Inc.*, 2021 WL 1080201, at \*9 (D. Mass. Mar. 18, 2021), but that case hinged on whether a VP of investor relations was aware of the specific conversation that rendered his statements false—here, it is about a CEO's knowledge of the basic capabilities of his lead product.[15] *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006) (George Br. at 11), held mere signatures insufficient to infer scienter, but no one has alleged that here. For all these reasons, a strong inference of scienter is alleged.

## II.   THE SAC ADEQUATELY ALLEGES A CLAIM UNDER SECTION 20(a) OF THE EXCHANGE ACT AGAINST GEORGE

Section 20(a) imposes joint and several liability on persons in control of entities that violate securities laws. 15 U.S.C. § 78t(a). A Section 20(a) claim has two elements: "(i) an underlying violation of . . . the securities laws by the controlled entity, . . . and (ii) control of the primary violator by the defendant." *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 194 (1st Cir. 2005). Once the first element is pleaded, dismissal on the second is generally inappropriate, as Defendant's own law admits: "Whether a person is a 'controlling' person is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (George Br. at 20); *see also In re Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) (same). Here, the SAC easily satisfies both elements of a 20(a) claim.

As discussed herein, the SAC *does* allege a primary violation, and thus satisfies the first element. As to the second element, control, it is adequately alleged as to George. SEC regulations

---

[15] Defendants cite *Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 214 (D. Mass. 2017) (George Br. at 11), for the proposition that a problem "in one accounting area" does not put one on notice of problems "in all other aspects of the company's accounting procedures." But in *Alere*, notice of a corporate taxation issue did not put one on notice of a later revenue recognition issue. *Id*. Here, both the earlier material weakness, ¶¶157-65, and the later one, ¶¶95, 200, both relate to revenue and revenue recognition. Thus, George was on notice.

define "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. "Officers and directors possess such potential ability to control." *Neely v. Bar Harbor Bankshares*, 270 F. Supp. 2d 50, 53 (D. Me. 2003). So do those who sign regulatory filings on a company's behalf. *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013) ("Generally, signing a financial statement filed by the company is enough to establish control over those who wrote the statement, as well as the content of the statement."). Moreover, the SAC plausibly alleges that George had control over Evolv. George "was President and [CEO] of [Evolv] and its corporate predecessor," Legacy Evolv. George Br. at 1. He helped negotiate the de-SPAC transaction. ¶32. In his own words, he "oversaw" the Company. George Br. at 1. This is more than enough to plead active participation in Evolv's day-to-day operations, as George's own authority confirms. *Virtus*, 195 F. Supp. 3d at 542 (CEO who spoke on behalf of company and signed filings had requisite control) (George Br. at 20). To the extent that "[Defendant] base[s] [his] motion . . . on plaintiffs' failure to allege facts establishing their direct involvement in drafting or issuing the . . . press releases," Plaintiffs need not make such allegations to state a Section 20(a) claim. *In re StockerYale Secs. Litig.*, 453 F. Supp. 2d 345, 361 (D.N.H. 2006).

While George claims that the SAC fails to allege control person liability because it does not allege "culpable participation," George Br. at 19-20, Plaintiffs are not required to plead it. As George concedes, the First Circuit has never held culpable participation to be a required element under Section 20(a). *See Stone & Webster*, 414 F.3d at 194 (stating plain two-element test). The Motion claims that "[o]ther circuits" require it, citing the Second and Third Circuits, George Br. at 19 n.16, but it conveniently ignores that at least six other Circuits do not, including the Fifth,

15

Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.[16] The formulation of the two-element test offered in *Akamai Techs., Inc. v. Deutsche Bank AG*, 764 F. Supp. 2d 263 (D. Mass. 2011) (George Br. at 19),[17] is thus *not* the standard one: *Stone & Webster* has the classic formulation. 414 F.3d at 194. George offers no reason for this Court to adopt the minority view. Even assuming *arguendo* culpable participation was required, George's central position as CEO within Evolv, the admitted misconduct, and all of the other indicia of control and scienter suffice.[18]

## CONCLUSION

Defendant's Motion, ECF No. 95, should be denied in full, except for the pre-June 2022 statements about revenue recognition policy and financial results that Plaintiffs' have withdrawn. If the Motion is granted, Plaintiffs request leave to file a third consolidated amended complaint. *See* Main Opp. Sec. III.

Respectfully submitted,

Dated: June 24, 2025

*/s/ Daryl Andrews*
**ANDREWS DEVALERIO LLP**
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

*Liaison Counsel for Plaintiffs*

---

[16] *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998); *Paracor Fin., Inc. v. Gen. Cap. Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996); *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 878, 881 (7th Cir. 1992); *Metge v. Baehler*, 762 F.2d 621, 630-31 (8th Cir. 1985); *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 957-58 (5th Cir. 1981).

[17] Notably, *Deutsche Bank AG* also found control liability claims adequately pleaded, finding it was "premature" to challenge control at the pleading stage. 764 F. Supp. 2d at 269. The same should hold true here.

[18] Geroge errs in equating "culpable participation" with scienter. *Stone & Webster*, 414 F.3d at 194 ("Unlike Rule 10b-5, § 20(a) does not on its face obligate the plaintiff to plead or prove scienter (or any other state of mind) on the part of the controlling persons named as a defendant."). Thus, even if the Court finds that George did not act with scienter for Section 10(b) liability, he is still liable as a control person under Section 20(a).

16

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Casey E. Sadler (admitted *pro hac vice*)
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
csadler@glancylaw.com
prajesh@glancylaw.com

*Counsel for Plaintiffs and Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Telephone: (310) 914-5007
fcruz@frankcruzlaw.com

*Additional Counsel for Plaintiff Chris Swanson*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June 2025, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Daryl Andrews
Daryl Andrews

.

18