**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE EVOLV TECHNOLOGIES HOLDINGS INC. SECURITIES LITIGATION | Case No. 1:24-cv-10761-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**(I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND**
**(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT.................................................................................. 2

II. NATURE OF THE ACTION .................................................................................. 3

III. PROCEDURAL HISTORY ................................................................................... 4

    A. The Lead Plaintiff Appointment Process and Lead Counsel's Investigation and Amended Complaints ................................................................ 4

    B. The Motions to Dismiss the SAC ............................................................... 5

    C. Mediation Efforts and Settlement Negotiation............................................ 6

IV. STANDARDS FOR PRELIMINARY APPROVAL.............................................. 7

V. ARGUMENT............................................................................................................ 8

    A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and *Grinnell* ......................................... 8

        1. Plaintiffs and Lead Counsel Adequately Represented the Class ...................... 8

        2. The Settlement is the Result of Arm's Length Negotiations............................ 9

        3. The Settlement is an Excellent Result in Light of its Benefits and the Risks of Continued Litigation............................................................. 9

            (a) Complexity, Expense and Duration of Litigation.............................. 10

            (b) Establishing Liability ....................................................................... 10

            (c) Risks to Proving Loss Causation and Damages................................ 11

            (d) Risks of Maintaining Class Action Status ....................................... 11

            (e) Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation .................................... 12

        4. The Relief Provided For The Class Is Adequate ......................................... 12

        5. The Settlement Treats all Settlement Class Members Equitably.................... 14

        6. The Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval ................................................................................ 14

    B. Certification of the Settlement Class is Appropriate.................................. 15

        1. The *S*ettlement Class Satisfies the Requirements of Rule 23(a).................... 15

        2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)................ 18

        3. The Court Should Appoint Lead Counsel as Class Counsel.......................... 19

    C. The Court Should Approve the Proposed Form and Method of Notice to the Settlement Class ...................................................................... 19

VI. CONCLUSION......................................................................................................... 20

i

## TABLE OF AUTHORITIES

### CASES

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) .................................................................................................... 18

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................... 18

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir.1985) .......................................................................................... 8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .................................................................................................... 18

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ..........................................................................................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .............................................................................. 7, 8, 10

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D.Mass.1998) ...................................................................................... 14

*Dahhan v. OvaScience, Inc.*,
2020 WL 2602138 (D. Mass. May 8, 2020) ............................................................... 17

*Dura Pharms., Inc., v. Broudo*,
544 U.S. 336 (2005) .....................................................................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) .................................................................................................... 18

*Grace v. Perception Tech. Corp.*,
128 F.R.D. 165 (D. Mass. 1989) ................................................................................. 16

*Hill v. State St. Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015) ................................................. 9, 10, 14, 20

*Hochstadt v. Bos. Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ..................................................................... 14, 17

*In re AVEO Pharms., Inc. Sec. Litig.*,
2017 WL 5484672 (D. Mass. Nov. 14, 2017) ............................................................. 16

*In re Bos. Sci. Corp. Sec. Litig.*,
   604 F. Supp. 2d 275 (D. Mass. 2009) ....................................................... 8, 16, 17, 19

*In re Credit Suisse-AOL Sec. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008) ........................................................................ 18

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
   275 F.R.D. 382 (D. Mass. 2011) ............................................................... 17, 18, 19

*In re Lupron Mktg. & Sales Pracs. Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ...................................................................... 12, 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ............................................................................... 7

*In re Ranbaxy Generic Drug App. Antitrust Litig.*,
   630 F. Supp. 3d 241 (D. Mass. 2022) ............................................................... 7, 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................... 14

*In re Sonus Networks, Inc. Sec. Litig.*,
   229 F.R.D. 339 (D. Mass. 2005) ...................................................................... 12

*In re Sonus Networks*, *Inc. Sec. Litig.*,
   247 F.R.D. 244 (D. Mass. 2007) ...................................................................... 16

*In re TelexFree Sec. Litig.*,
   475 F. Supp. 3d 15 (D. Mass. 2020) ................................................................ 20

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ............................................................................ 11

*Machado v. Endurance  Int'l Grp. Hldg.oldings, Inc.*,
   2019 WL 4409217 (D. Mass. Sept. 13, 2019) ................................................... 13

*Ouadani v. Dynamex Operations E., LLC*,
   405 F. Supp. 3d 149 (D. Mass. 2019) .............................................................. 16

*Roberts v. TJX Companies, Inc.*,
   2016 WL 8677312 (D. Mass. Sept. 30, 2016) ............................................... *passim*

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ............................................................................. 9

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................................................................. 9


## RULES

FED. R. CIV. P. 23 ............................................................................................................... *passim*

Court-appointed Lead Plaintiff Robert Falk and additional plaintiffs Chris Williams, Tim R. Carrillo and Chris Swanson (collectively, "Plaintiffs"), on behalf of themselves and the proposed Settlement Class, respectfully submit this unopposed motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure seeking: (i) preliminary approval of the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated April 13, 2026 ("Stipulation"); (ii) preliminary certification of the proposed Settlement Class; (iii) approval of the form and manner of providing notice to Settlement Class Members; and (iv) a hearing date for the Court to consider (a) final approval of the Settlement, (b) approval of the proposed Plan of Allocation, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.[1]

## I.   PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants in exchange for a non-reversionary, all cash payment of $15,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.  This is an excellent result for the Settlement Class, representing a recovery of approximately 8.99% of the maximum damages related to the pending claims; more than two and half times the median recovery of 3.2% of estimated damages for securities class actions with similar damages settled in 2025.[2]  For this reason, and as further discussed herein, the Settlement is substantively fair.

The Settlement was also achieved in a procedurally fair manner. By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel, *inter alia*:

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the accompanying Declaration of Casey E. Sadler ("Sadler Declaration").  All references to "Ex. _" are to exhibits to the Sadler Declaration. Additionally, unless otherwise noted, internal citations and quotation marks are omitted and all emphasis is added.

[2] *See* Ex. 2 (Edward Flores, Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2025 Full-Year Review (NERA, Jan. 21, 2026)) ("NERA Report"), at 27 (Fig. 23).

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to interview former Evolv employees, and consulting with experts in the fields of accounting, loss causation, and damages;

- drafted two comprehensive amended complaints based on their research and investigation;

- engaged in substantial briefing opposing Defendants' two motions to dismiss;

- participated in a full-day, in-person mediation session overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS (the "Mediator"), which involved an exchange of written submissions concerning the facts of the case, liability and damages, and that resulted in a mediator's recommendation to settle the Action for $15 million; and

- conducted significant due diligence discovery to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle to resolve the Action, which included a review and analysis of over 100,000 pages of documents produced by Evolv concerning the matters alleged in the Second Amended Class Action Complaint, and two confirmatory interviews with key personnel.

As discussed in detail below, Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class. Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement and enter the [Proposed] Order Preliminarily Approving Class Action Settlement and Providing for Notice and Settlement Hearing (the "Preliminary Approval Order").[3]  Defendants do not oppose Plaintiffs' request.

## II.    NATURE OF THE ACTION

This is a securities class action asserting claims pursuant to (i) Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and (ii) Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") alleging that throughout the Settlement Class Period, Defendants made materially misleading statements and omissions to investors regarding the effectiveness of the Company's flagship product, Evolv Express; the nature of third-party testing; the use of extra-contractual terms in certain arrangements with customers and channel partners; and compliance with GAAP.  ECF No. 84,  ¶¶1, 15, 111-166.  As a result, Evolv's securities traded at artificially inflated prices, and the price declined when the truth was revealed.  *Id*. at ¶¶167-173.  Defendants deny Plaintiffs' allegations

---

[3] A proposed procedural schedule of events is attached to the Sadler Declaration as Ex. 3.

and have vigorously defended against the lawsuit.

## III.      PROCEDURAL HISTORY

### A.      The Lead Plaintiff Appointment Process and Lead Counsel's Investigation and Amended Complaints

On March 25, 2024, a class action complaint was filed by Gerald Raby in United States District Court for the District of Massachusetts (the "Court"), styled *Raby v Evolv Technologies Holdings, Inc.*, *et al.*, Case No. 1:24-cv-10761.  On September 20, 2024, the Court appointed Robert Falk to serve as Lead Plaintiff and approved his selection of Glancy Prongay & Murray LLP[4] to serve as Lead Counsel and Andrews DeValerio LLP as Liaison Counsel.  ECF No. 48.

Following their appointment, Lead Counsel conducted a comprehensive investigation into Evolv's allegedly wrongful acts, including: (a) review and analysis of regulatory filings made by Evolv with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Evolv; (c) review of other publicly available information concerning Evolv; and (d) interviews with former Evolv employees.  Lead Counsel also consulted with an expert on the subjects of loss causation and damages.

On November 20, 2024, Lead Plaintiff Falk filed and served the Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC") asserting claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act.  ECF No. 64.  Among other things, the FAC alleged Defendants materially misled investors regarding the effectiveness of the Evolv Express, failed to disclose the Company's use of extra-contractual terms and conditions in certain arrangements with customers and channel partners, and thereby misled investors about its financial metrics and compliance with GAAP.  The FAC further alleged the prices of Evolv's

---

[4] On February 2, 2026, Glancy Prongay & Murray LLP changed its name to Glancy Prongay Wolke & Rotter LLP. ("GPWR"). *See* ECF. No. 116.

securities were artificially inflated during the class period as a result of the forgoing, and declined when the truth was revealed. On December 13, 2024, the Court consolidated the related action *Buchan v. Evolv Tech. Holdings, Inc. et al*, 1:24-cv-12768 and *Raby v Evolv Tech. Holdings, Inc., et al.*, 1:24-cv-10761, as *In re Evolv Tech. Holdings, Inc. Securities Litigation*, 1:24-cv-10761. ECF Nos. 80-81.

On January 27, 2025, Plaintiffs filed and served the Second Amended Class Action Complaint ("SAC" or the "Complaint"). ECF No. 84. Like the FAC, the SAC assert claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act. The SAC also alleged among other things, that Defendants materially misled investors regarding the effectiveness of Evolv Express, failed to disclose the use of certain extra-contractual terms and conditions in certain arrangements with customers and channel partners, and misled investors about its financial metrics and compliance with GAAP, and that the prices of Evolv's securities were artificially inflated during the class period as a result and declined when the truth was revealed. The SAC also added various new allegations based on the Federal Trade Commission ("FTC")'s resolution of its inquiry into certain aspects of Evolv's prior marketing claims. Defendants continued to deny Plaintiffs' allegations and claims.

### B.    The Motions to Dismiss the SAC

On March 28, 2025, Defendants filed a motion to dismiss the Complaint. ECF Nos. 90-94, 97. Also on March 28, 2025, Defendant Peter George ("George") filed a separate motion to dismiss the Complaint. ECF No. 95-96, 98. Defendants argued, among other things, that the challenged statements about the effectiveness of Evolv Express were technically accurate and/or too generalized to state a claim, and that Defendants' statements regarding revenue recognition were not established to be false. ECF No. 97 at 12-19. Defendant George separately argued that, in addition to the foregoing, the challenged statements about Evolv's effectiveness attributed to George specifically were mere puffery, and/or accompanied by robust disclosures. ECF No. 96 at 13-18. Defendants also argued Plaintiffs failed to

plead loss causation and scienter. *Id.* at 19-29; ECF No. 96 at 4-13. On June 24, 2025, Plaintiffs filed their opposition to both motions to dismiss. ECF No. 103-105. Plaintiffs argued, among other things, that Evolv had in fact made misleading statements and omissions regarding Evolv Express, internal controls, and revenue recognition. ECF 103 at 9-10, 14-18; ECF No. 105 at 3-8. Plaintiffs also argued that scienter was adequately pled based on Evolv's admissions, the timing of corporate departures, former employee interviews, and the FTC enforcement action; and that the truth was revealed through a series of corrective disclosures and materialized risks. ECF No. 103 at 19-29; ECF No. 105 at 8-13.

### C.    Mediation Efforts and Settlement Negotiation

While Defendants' motions to dismiss were pending, on August 5, 2025, Plaintiffs' Counsel and Defendants' Counsel participated in a full-day, in-person mediation session with their agreed Mediator. In advance of that session, the Parties exchanged, and provided to the Mediator, statements that addressed liability and damages. At the end of the mediation session, the Mediator issued proposal to all Parties to settle the Action for $15,000,000, which was subsequently accepted by all Parties. After further negotiations, the Parties' agreement in principle to settle the Action was memorialized in a term sheet dated August 11, 2025 (the "Term Sheet") which set forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants for $15,000,000 for the benefit of the Settlement Class, subject to terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

As part of the Term Sheet and a condition of the Settlement, Defendants agreed to due diligence discovery to enable Plaintiffs to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle. On September 19, 2025, the Parties entered a stipulation providing for the confidential treatment of discovery materials produced by Defendants, and the use of such materials only in the context of this Settlement. From September 24, 2025 to November 4, 2025, Defendants produced

over 100,000 pages of documents concerning the matters at issue in the SAC. On March 3, 2026, Defendants made available a former senior Evolv employee who continues to consult for Evolv, as well as an employee of the financial firm AlixPartners, which assisted in the restatement core to this Action, to discuss the matters at issue in the SAC. After evaluating the discovery produced and conducting the two interviews, Lead Counsel concluded that it supports the fairness, reasonableness, and adequacy of the Parties' agreement in principle. The Parties continued to negotiate the Stipulation, which was executed on April 13, 2026.

## IV.    STANDARDS FOR PRELIMINARY APPROVAL

A class action settlement must be presented to the Court for approval, and it should be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009) (a "district court can approve a class action settlement only if it is fair, adequate and reasonable"). Under Rule 23(e)(2), the factors to consider when determining if a settlement is fair, reasonable, and adequate are:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    the proposal treats class members equitable relative to each other.

For "supplemental guidance concerning the factors to be considered in assessing the fairness of a settlement, many courts in this Circuit have looked to those set forth by the Second Circuit Court of Appeals in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) [("Grinnell")]." *In re Ranbaxy Generic Drug App. Antitrust Litig.*, 630 F. Supp. 3d 241, 244 (D. Mass. 2022). Thus, the *Grinnell* factors utilized to evaluate

the propriety of a class action settlement, certain of which overlap with Rule 23(e)(2), are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[5] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *In re Ranbaxy Generic Drug App. Antitrust Litig.*, 630 F. Supp. 3d at 245 (evaluating settlement based on factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## V.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and *Grinnell*

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court consider whether "class representatives and class counsel have adequately represented the class." To establish adequacy, the movant must show "first that the interests of the representative party will not conflict with the interests of the class members," and "second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985).

Plaintiffs satisfy both prongs. Plaintiffs suffered losses as a result of Defendants' allegedly wrongful conduct in the same manner as the Settlement Class. Thus, Plaintiffs' interest in obtaining the largest possible recovery is aligned with the Settlement Class. *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (adequacy satisfied where claims did not conflict with interests of

---

[5] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

class).  Plaintiffs also diligently oversaw and communicated with Lead Counsel concerning the case, supporting their adequacy.  *Hill v. State St. Corp.*, 2015 WL 127728, at *7 (D. Mass. Jan. 8, 2015) (that lead plaintiffs "were well informed about the strengths and weaknesses of the case at the time the Settlement was achieved" supports approval).  Additionally, Plaintiffs retained counsel highly experienced in securities litigation, who have a long and successful track record of representing investors in such cases.  *See* ECF No. 19, Ex. D., Lead Counsel résumé).  As the "[P]arties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."  *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000).

### 2.    The Settlement is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length."  Here, the Parties engaged in arm's-length settlement negotiations with a mediator with substantial experience in complex securities class actions, and this supports the conclusion that the Settlement is fair and achieved free of collusion.  *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (Burroughs, J.) ("participation of an experienced mediator[ ] supports the Court's finding that the Settlement is fair, reasonable, and adequate"); *see also Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("Melnick's role in the settlement negotiations overcomes any hesitation this court might have about approving a settlement").

### 3.    The Settlement is an Excellent Result in Light of its Benefits and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal."[6]  As discussed below,

---

[6] Rule 23(e)(2)(C)(i) incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); risks of establishing liability and damages (fourth and fifth factors); risks of maintaining class action status through the trial (sixth factor); and range

9

each of these factors supports preliminary approval.

### (a)    Complexity, Expense and Duration of Litigation

"This was a complex securities class action" and "[t]he complexity of this case and the expense and delay that would result if this case were litigated through further motion practice, trial and appeals strongly support approval of the Settlement." *Hill*, 2015 WL 127728, at *7.  Though Plaintiffs and Lead Counsel believe their claims have merit, the expense and duration of continued proceedings, as well as the substantial hurdles faced in establishing liability, loss causation, and damages (discussed further below), create significant risk.  Were the litigation to continue, a potential recovery, if any, would occur years from now.  By contrast, the Settlement provides an immediate and substantial recovery.

### (b)    Establishing Liability

"The proposed [$15] million Settlement must be considered in light of the risks of establishing liability and damages in the Action." *Id.* at *9.  At the time the Settlement was reached the motions to dismiss were pending.  While Plaintiffs believe they demonstrated Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued their statements were technically accurate and that the revenue recognition statements were not established as false.  ECF No. 97 at 12-19.  Further, Defendants argued that scienter was not adequately alleged as Defendants did not possess information contradicting their public statements, and the size of the restatement failed to provide an inference of scienter.  ECF No. 97 at 22-29.  While Plaintiffs and Lead Counsel strongly disagreed, the arguments were not meritless, and had litigation continued there is no guarantee that the Court or a jury would have adopted Plaintiffs' view.  Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *Roberts*, 2016 WL 8677312, at *7 (that "Plaintiffs, regardless of the merits of their claims, face a real risk in establishing liability at trial" favors settlement).

---

of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at 463.

### (c)    Risks to Proving Loss Causation and Damages

Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages as to their claims under the Exchange Act.  *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").  Defendants argued that Plaintiffs may not recover for *any* of the disclosures alleged in the SAC.  Defendants argued the market already knew the information reported on May 23, 2023 and March 13, 2024.  ECF No. 97 at 19-20 *citing Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 at 89 (1st Cir. 2014) (a claim based on an "event [that] was not actually a new disclosure will necessarily fail.").  Second, Defendants argued the government investigations announced October 12, 2023 and February 19, 2024 only put "investors on notice of a potential future disclosure of fraudulent conduct."  ECF No. 97 at 21 *quoting Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014), *as amended* (Sept. 11, 2014).  Finally, Defendants argued the restatement was not a corrective disclosure for the full class period.  ECF No. 97 at 22.  Had Defendants prevailed on their arguments, damages could have been effectively eliminated.

Further, in order to resolve all disputed issues regarding damages and loss causation, the Parties would have relied on expert testimony.  This creates further litigation risk because Plaintiffs could not be certain whether a jury would accept the views of their experts.  *See Roberts*, 2016 WL 8677312, at *7 ("uncertainty involving the method of calculating damages weighs in favor of finding a settlement agreement fair, reasonable, and adequate, and this Court does as well.").

### (d)    Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* Sec. V.B., *infra*), the class has not yet been certified, and Plaintiffs are aware that if the case continued to be litigated there is a risk the Court could disagree, or that the class period could be shortened based on decisions related to falsity, scienter, and loss causation.  Even if the Court were to

certify the class, "the court may decertify [it] at anytime before final judgment." *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 348 (D. Mass. 2005) (decertifying class action where sole class representative withdrew). Thus, the risks and uncertainty surrounding class certification support preliminary approval, as Defendants likely would have challenged it, and even had they not, it could be decertified at any time before final judgement. *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. at 348; *Roberts*, 2016 WL 8677312, at *7 (noting "numerous examples of cases in which certification ultimately failed" supports approval).

### (e)  Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The Court must also consider the reasonableness of the settlement, weighing "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005). Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and a jury trial, the total *maximum* damages potentially available would be approximately $166.9 million. The $15 million Settlement Amount therefore represents a recovery of 8.99%, more than two and a half times the 3.2% median settlement value for securities class actions with comparable maximum damages. *See* Ex. 2 (NERA Report) at 27 (Fig. 23). Thus, the Settlement is an excellent result considering the significant risks of continued litigation.

### 4.  The Relief Provided For The Class Is Adequate

Courts must also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P.

12

23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):**  The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  Here, Epiq Class Action & Claims Solutions, Inc., the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing like the method here is standard in securities class action settlement and has been found to be effective and necessary as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Notice and Postcard Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% on behalf of all Plaintiffs' Counsel to compensate them for the services they have rendered on behalf of the Settlement Class.  A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  *See, e.g.*, *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019) (awarding 33⅓% of settlement fund and stating "[t]he amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases"); *Esposito v. Amer. Renal Assoc. Hldgs, Inc. et al*, No. 16 Civ. 11797 (D. Mass. June 15, 2018) (Burroughs, J.) (33%).  Importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with

respect to attorneys' fees.  *See* Ex. 1 (Stipulation) at ¶16.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased over a certain threshold of securities request exclusion.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *In re Bos. Sci. Corp. Sec. Lit.*, No. 20 Civ. 12225 (D. Mass. April 23, 2024) (Burroughs, J.) (approving settlement with confidential opt-out provision).

### 5.    The Settlement Treats all Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed in the proposed Notice (Ex. A-1 to the Stipulation), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See Conley v. Sears, Roebuck & Co.,* 222 B.R. 181, 185 (D.Mass.1998) ("fund of $25 million to be distributed in *pro rata* shares to the members of the Settlement Class"); *Hill*, 2015 WL 127728, at *11 ("Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of" claims).

### 6.    The Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval

*Grinnell* provides several factors not coextensive with Rule 23(e)(2) to assist the Court in assessing the fairness of a settlement.  These factors also support preliminary approval.

**The Stage of the Proceedings:**  This factor examines whether the settlement was reached "at a stage where both the court and counsel are able to evaluate the merits of the claims."  *Hochstadt v. Bos.*

*Sci. Corp.*, 708 F. Supp. 2d 95, 108 (D. Mass. 2010).   Here, Plaintiffs conducted an extensive investigation into Evolv prior to filing the two amended complaints, including, *inter alia*: interviewing former employees, analyzing the Company's myriad SEC filings, and consulting with various experts. The Parties also submitted substantial briefing relating to the motions to dismiss, and exchanged detailed mediation briefs.   Moreover, before finalizing the Stipulation, Plaintiffs obtained over 100,000 pages of documents from Defendants concerning the matters alleged in the SAC, which Lead Counsel analyzed and used to interview a former senior Evolv employee and a senior employee of a financial services firm that assisted in conducting the restatement core to this case, to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle to resolve the Action.   That the "[P]arties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement" including "extensive informal discovery" supports preliminary approval.  *Roberts*, 2016 WL 8677312, at *6.

**The Ability of Defendants to Withstand a Greater Judgment:** Evolv is an emerging technology company, but a "defendant's ability to withstand a greater judgment does not on its own suggest that the settlement is unfair."  *Roberts*, 2016 WL 8677312, at *8.  Even if Defendants had "classic deep pockets," this factor would be "neutral."  *Lupron Mktg. Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005).

**B.    Certification of the Settlement Class is Appropriate**

In addition to the factors outlined above which favor approval of the Settlement, certification of the Settlement Class is appropriate under FED. R. CIV. P. 23(a) and 23(b).

**1.    The *Settlement* Class Satisfies the Requirements of Rule 23(a)**

Rule 23(a) states that, in order to certify a class, it must be found that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.   Here,

Plaintiffs satisfy the requirements of Rule 23(a).

**Numerosity:** Rule 23(a)(1)'s numerosity requirement is presumed for classes larger than 40 members and, in securities fraud actions, where large numbers of shares were outstanding and traded during the relevant period. *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 160 (D. Mass. 2019) (numerosity is a "low threshold that typically can be satisfied with a showing that the class is comprised of at least 40 members"); *In re Sonus Networks*, *Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007) ("in a securities class action, a plaintiff can generally demonstrate numerosity on the basis of a large number of shares outstanding and traded."). According to Evolv's Form 10-K for the fiscal year 2023: as of February 28, 2024 (during the class period), Evolv had 152,182,633 shares outstanding. Further, approximately 158 million Evolv shares were traded publicly during the relevant period. ¶175. Thus, "numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

**Common Questions:** Securities class actions easily satisfy commonality where, as here, "the statements Plaintiffs allege were misleading … were made to all of the class members." *In re AVEO Pharms., Inc. Sec. Litig.*, 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017). A "single common legal or factual issue can suffice to satisfy the requirement." *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d at 281. The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements were materially false and misleading; (ii) whether Defendants statements omitted material information; (iii) whether Defendants acted with scienter; (iv) whether the price of Evolv securities was artificially inflated during the Settlement Class Period due to alleged misrepresentations and omissions; (v) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer losses when the truth was revealed; and (vi) whether the Individual Defendants controlled Evolv during the Settlement Class Period. Courts routinely certify classes in securities cases

16

involving these common questions. *See Dahhan v. OvaScience, Inc.*, 2020 WL 2602138, at \*3 (D. Mass. May 8, 2020) (commonality where misstatements were all "distributed to all the class members during the class period resulting in an artificially inflated stock price").

**Typicality:** Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class members, are based on the same legal theory, and would be proven by the same set of operative facts, and damages can be calculated on a class-wide basis; as such, typicality is satisfied. *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d at 282 (typicality found where plaintiff "purchased [] stock at a time when the price was alleged to have been artificially inflated due to defendants' misleading statements, and was subsequently harmed by the drop in stock price"). The typicality requirement does not require the plaintiff's claims to be "precisely aligned as to all issues." rather it "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class." *Hochstadt*, 708 F. Supp. 2d at 103.

**Adequacy:** Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Adequacy requires showing "the interests of the representative party will not conflict with the interests of the class members" and that counsel "is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 391 (D. Mass. 2011). As explained in Sec. V.A.1., *supra*, Plaintiffs and Lead Counsel are adequate. Like all Settlement Class Members, Plaintiffs purchased Evolv securities, were "injured in the same manner as all other class members due to defendants' allegedly false and misleading statements," and are united in a "common interest" of the best possible recovery. *Id*. at 391. Second, Plaintiffs and Lead Counsel have already substantially advanced class interests, and Lead Counsel are qualified and experienced, as demonstrated by achieving a highly favorable Settlement despite the vigorous advocacy of opposing counsel.

17

### 2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that (i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Both requirements are satisfied here.

**Common Questions Predominate:** Predominance exists where the common questions are "amenable to common proof." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 25 (D. Mass. 2008). Predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Predominance "does not require complete uniformity," only a "a sufficient constellation of common issues." *In re Evergreen Sec. Litig.*, 275 F.R.D. at 392.  Here, predominance has been satisfied as there are common questions of law and fact involving violations of the federal securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions. *Amchem*, 521 U.S. at 625.

The elements of falsity, materiality, scienter, and loss causation are all subject to class wide proof and are not required to be established at class certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (error to require securities plaintiff to show loss causation as a condition of class certification).  "Whereas the remaining elements are easily amenable to common proof, reliance is typically proven on an individual basis." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. at 25.  Here, Plaintiffs satisfies class wide reliance through the presumption of reliance established under the fraud-on-the-market theory under *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988), as well as Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

**Class Action is Superior:**  Rule 23(b)(3) also requires Plaintiffs to demonstrate that class resolution will be "superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3).  Here, "all of [the Rule 23(b)(3)] factors weigh in favor of class certification because the costs of individual actions would be prohibitive when weighed against the individual recoveries." *In re Evergreen Sec. Litig.*, 275 F.R.D. at 393.  Courts have long recognized "class actions are particularly appropriate for securities litigation because it may be the only practicable means of enforcing investor's rights." *Id.*  "[G]iven the size of the proposed class in this case, it is clear that piecemeal adjudication of claims covering substantially similar issues would be an inefficient allocation of court resources." *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d at 287.  In sum, the proposed Settlement Class meets all the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

### 3.     The Court Should Appoint Lead Counsel as Class Counsel

A court that certifies a class must also appoint class counsel.  *See* FED. R. CIV. P. 23(g).  This Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).  GPWR was appointed Lead Counsel in September 2024.  As set forth in Sec. III., *supra*, Lead Counsel devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter.  As explained in Sec. V.A.1., *supra*, GPWR has substantial experience prosecuting securities class actions.  Therefore, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.

### C.     The Court Should Approve the Proposed Form and Method of Notice to the Settlement Class

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail by first-class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation) to all potential Settlement Class Members who can be identified with reasonable effort,

as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Ex. A-1 to the Stipulation) and the Claim Form (Ex. A-2 to the Stipulation) will be posted on a website to be developed for the Settlement. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online.[7] The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

The Postcard Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill*, 2015 WL 127728, at *15; *In re TelexFree Sec. Litig.*, 475 F. Supp. 3d 15, 17 (D. Mass. 2020) (finding that notice given to settlement class "provided due and adequate notice of these proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice").

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant the requested relief.

---

[7] Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.

Dated: April 13, 2026                    Respectfully submitted,


                            */s/ Joseph D. Cohen*

**GLANCY PRONGAY WOLKE & ROTTER LLP**
Joseph D. Cohen (admitted pro hac vice)
Casey E. Sadler (admitted pro hac vice)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcohen@glancylaw.com
csadler@glancylaw.com

*Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**ANDREWS DEVALERIO LLP**
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
P.O. Box 67101
Telephone: (617) 999-6473
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

*Liaison Counsel for Plaintiffs*


**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Telephone: (310) 914-5007
fcruz@frankcruzlaw.com

*Additional Counsel for Plaintiff Chris Swanson*

21

## PROOF OF SERVICE

I hereby certify that on this 13th day of April, 2026, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Joseph D. Cohen*
Joseph D. Cohen
